## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **IN RE: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION** | Case No. 3:24-cv-00757-E |
| *This Document Relates to All Cases* | MDL DOCKET NO. 3:24-md-03114-E |

---

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH <u>INCORPORATED MEMORANDUM OF LAW</u>

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND .........................................3

   A. The Data Incidents ........................................................................................3

      1. AT&T 1 Data Incident ............................................................................3

      2. AT&T 2 Data Incident ............................................................................4

   B. Settlement Negotiations and Consolidation ..................................................5

III.  MATERIAL TERMS OF THE SETTLEMENT .................................................7

   A. The Settlement Classes ..................................................................................7

   B. The Settlement Funds and Escrow Accounts .................................................8

   C. Settlement Class Member Benefits ................................................................9

      1. Documented Loss Cash Payment ..........................................................10

      2. Tiered Cash Payments ...........................................................................11

         a. Tier 1 Cash Payment .......................................................................12

         b. Tier 2 Cash Payment .......................................................................12

         c. Tier 3 Cash Payment .......................................................................12

      3. Pro Rata Distribution of Cash Payments ...............................................13

      4. Security Enhancements ..........................................................................14

   D. Notice to the Settlement Classes .................................................................14

   E. Claim Process ...............................................................................................16

   F. Disposition of Residual Funds .....................................................................17

   G. Settlement Administrator .............................................................................17

   H. Opt-out and Objection Procedures ..............................................................18

   I. Release of Claims .........................................................................................20

   J. Attorneys' Fees, Costs, and Service Awards ...............................................20

IV.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............21

   A. Legal Standards For Preliminary Approval ..................................................22

B. The Settlement Warrants Preliminary Approval..............................................25

  1. Plaintiffs and Counsel have Adequately Represented the Class.
(Fed. R. Civ. P. 23(e)(2)(A))......................................................................25

  2. The Settlement Was Negotiated at Arm's Length and Without
Fraud or Collusion (Fed. R. Civ. P. 23(e)(2)(B))......................................26

  3. The Relief Provided to the Settlement Classes is Fair, Reasonable,
and Adequate (Fed. R. Civ. P. 23(e)(2)(C))...............................................27

    a. The Settlement Accounts for the Risks, Costs, and Delay of Trial
and Appeal (Fed. R. Civ. P. 23(e)(2)(C)(i)).........................................29

    b. Method of Processing Claims and Distributing Relief is
Effective (Fed. R. Civ. P. 23(e)(2)(C)(ii)) ...........................................32

    c. The Proposed Attorney's Fees and Timing of Payment Are
Reasonable (Fed. R. Civ. P. 23(e)(2)(C)(iii)) ......................................33

    d. No Other Agreements Made in Connection with the Proposal
(Fed. R. Civ. P. 23(e)(2)(C)(iv)) ..........................................................33

  4. The Settlement Treats Settlement Class Members Equitably
(Fed. R. Civ. P. 23(e)(2)(D)).......................................................................34

  5. The Remaining Reed Factors Also Support Preliminary Approval .........35

V. THE SETTLEMENT CLASSES SHOULD BE PROVISIONALLY
CERTIFIED .........................................................................................................36

A. The Rule 23(a) Requirements Are Satisfied...................................................37

  1. Numerosity .................................................................................................37

  2. Commonality ..............................................................................................38

  3. Typicality ...................................................................................................39

  4. Adequacy of Representation.......................................................................40

B. The Rule 23(b)(3) Requirements are Satisfied...............................................41

  1. Predominance .............................................................................................41

  2. Superiority ..................................................................................................42

VI. THE COURT SHOULD APPOINT THE CLASS REPRESENTATIVES,
CLASS COUNSEL, AND SETTLEMENT ADMINISTRATOR......................43

VII.    THE COURT SHOULD APPROVE THE NOTICE PROGRAM, NOTICES, CLAIM PROCESS, AND CLAIM FORMS ...................................44

VIII.   ALL STATE COURT ACTIONS AND ARBITRATIONS RELATED TO THE DATA INCIDENTS SHOULD BE ENJOINED AND STAYED..............48

IX.    PROPOSED SCHEDULE AND POST-SETTLEMENT EVENTS ..................51

X.    CONCLUSION..................................................................................................52

CERTIFICATE OF CONFERENCE ....................................................................54

CERTIFICATE OF WORD COUNT ....................................................................54

CERTIFICATE OF SERVICE ..............................................................................54

# **TABLE OF CITATIONS**

## **Cases**                                                                 **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................. 36, 42, 43

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ........................................................................... 42

*Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*,
   398 U.S. 281 (1970) ..................................................................... 49, 51

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ............................................................................. 32

*Casey v. Doctor's Best, Inc.*,
   No. 8:20-cv-01325-JLS-JDE, 2022 WL 1726080 (C.D. Cal. Feb. 28, 2022) ..... 44

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ........................................................ 21, 35

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. Feb. 21, 2007) ........................................... 22

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ........................................................................... 45

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   No. 02-CV-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ........... 22, 33

*Feder v. Elec. Data. Sys. Corp.*,
   429 F.3d 125 (5th Cir. 2005) ........................................................ 25, 40

*Frey v. First Nat'l Bank Sw.*,
   602 F. App'x 164 (5th Cir. 2015) ....................................................... 39

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ............................................ 28, 29, 33, 35

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
   No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) ............... 30

*In re Cap. One Consumer Data Sec. Breach Litig.*,
    MDL No. 1:19-md-2915 (AJT/JFA), 2022 WL 18107626
    (E.D. Va. Sept. 13, 2022) ................................................................... 28

*In re Chicken Antitrust Litig. Am. Poultry*,
    669 F.2d 228 (5th Cir.1982)................................................... 22, 35

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    424 F. Supp. 3d 456 (E.D. La. 2020) .................................................. 24

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ............................................................... 35

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014)............................................... 24, 38, 43

*In re Diet Drugs*,
    282 F.3d 220 (3d Cir. 2002)............................................... 49, 50, 51

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    289 F. Supp. 3d 1322 (J.P.M.L. 2017)................................................ 43

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021)........................................... 28, 33, 34

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ......................................Passim

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
    517 F.3d 220 (5th Cir. 2008)................................................................ 33

*In re Oil Spill by Oil Rig Deepwater Horizon*,
    910 F. Supp. 2d 891 (E.D. La. 2012) ........................................... 22, 35

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
    310 F.R.D. 300 (E.D. La. 2015)........................................... 25, 42, 44

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    No. 1:17- md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ................. 31

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   309 F.R.D. 482 (D. Minn. 2015) .......................................................................... 37

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   No. 14-2522, 2017 WL 2178306 (D. Minn. May 17, 2017) .............................. 35

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   MDL No. 14-2522 (PAM/JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015)
   *rev'd and remanded for further analysis*, 847 F.3d 608 (8th Cir. 2017) ....... 31, 46

*In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*,
   No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ......... 28

*In re T-Mobile Customer Data Sec. Breach Litig.*,
   No. 4:21-MD-03019-BCW, 2023 WL 11878508 (W.D. Mo. June 29, 2023) .... 28

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019) .............................................................................. 30

*In re Yahoo! Inc. Customer Data Breach Litig.*,
   No. 16-MD-02752-LHK, 2020 WL 4212811
   (N.D. Cal. July 22, 2020) ....................................................................... 28, 29, 46

*Jenkins v. Raymark Indus., Inc.*,
   782 F.2d 468 (5th Cir. 1986) ............................................................................... 41

*Jenkins v. Trustmark Nat'l Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) ...................................................................... 22

*Klein v. O'Neal*, Inc.,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) .................................................... 27, 32, 33

*Kostka v. Dickey's Barbecue Rests., Inc*.,
   No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D. Tex. Oct. 14, 2022)
   *report and recommendation adopted*, 2022 WL 16821665
   (N.D. Tex. Nov. 8, 2022) ......................................................................... 26, 37, 40

*Kostka v. Dickey's Barbecue Rests.*,
   No. 3:20-CV-03424-K, 2023 WL 3914266 (N.D. Tex. June 6, 2023) ............... 33

*Logan v. Marker Grp., Inc.*,
   No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) ................... 30

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................. 40

*McMorris v. Carlos Lopez & Assocs., LLC*,
   995 F.3d 295 (2d Cir. 2021) ............................................... 30

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ............................................................. 45

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ......................................... 37, 39

*ODonnell v. Harris Cnty.*,
   No. H-16-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) ......................... 24

*ODonnell v. Harris Cnty.*,
   No. H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ..................... 21, 26

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) ............................................ 21

*Plante v. StoryBuilt, LLC*,
   No. 1:23-CV-01021-DAE, 2025 WL 751442 (W.D. Tex. Jan. 7, 2025)
   *adopting report and recommendation*, 2025 WL 521838
   (W.D. Tex. Feb. 18, 2025) ............................................. 45, 46

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ............................................. 24

*Stirman v. Exxon Corp.*,
   280 F.3d 554 (5th Cir. 2002) ............................................. 39

*Torres v. S.G.E. Mgmt., L.L.C.*,
   838 F.3d 629 (5th Cir. 2016) ............................................. 42

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................. 30

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ............................................. 23

*United States v. Allegheny-Ludlum Indus., Inc.*,
   517 F.2d 826 (5th Cir. 1975) ................................................................... 21

*Vaughn v. Am. Honda Motor Co.*,
   627 F. Supp. 2d 738 (E.D. Tex. 2007) ..................................................... 27

*Wal-Mart Stores v. Dukes*,
   564 U.S. 338 (2011) ................................................................................. 38

*Welsh v. Navy Fed. Credit Union*,
   No. 5:16-CV-1062-DAE, 2018 WL 7283639 (S.D. Tex. Aug. 20, 2018) .......... 37

## **Rules**

Fed. R. Civ. P. 5(b) ...................................................................................... 55

Fed. R. Civ. P. 23(a) ................................................................... 1, 3, 36, 37, 43

Fed. R. Civ. P. 23(a)(1) ................................................................................ 37

Fed. R. Civ. P. 23(a)(2) ................................................................................ 38

Fed. R. Civ. P. 23(a)(3) ........................................................................... 39, 40

Fed. R. Civ. P. 23(a)(4) ........................................................................... 40, 43

Fed. R. Civ. P. 23(b)(3) ......................................................................*Passim*

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................... 45

Fed. R. Civ. P. 23(e) ....................................................................... 22, 23, 24

Fed. R. Civ. P. 23(e)(1)(b) ............................................................................ 45

Fed. R. Civ. P. 23(e)(2) ........................................................................... 24, 25

Fed. R. Civ. P. 23(e)(3) ................................................................................ 33

Fed. R. Civ. P. 23(e)(2)(A) ...................................................................... 3, 25, 26

Fed. R. Civ. P. 23(e)(2)(B) ...................................................................... 3, 26, 27

Fed. R. Civ. P. 23(e)(2)(C) ................................................................. 3, 27

Fed. R. Civ. P. 23(e)(2)(C)(i) ............................................................. 3, 30

Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................ 3, 32

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................... 3, 33

Fed. R. Civ. P. 23(e)(2)(C)(iv) ........................................................... 3, 33

Fed. R. Civ. P. 23(e)(2)(D) ................................................................. 3, 34

Fed. R. Civ. P. 23(g)(l)(A)-(B) ................................................................. 43

## **Statutes**

28 U.S.C. § 1651 ........................................................................................ 48

28 U.S.C. § 1651(a) ................................................................................... 48

28 U.S.C. § 2283 ................................................................................. 48, 49

## **Other Authorities**

Manual for Complex Litigation, § 21.632 (4th ed. 2004) ........................................23

4 William B. Rubenstein & Herbert B. Newberg, *Newberg and Rubenstein on Class Actions* § 13.1 (6th ed.) ..........................................................23

4 William B. Rubenstein & Herbert B. Newberg, *Newberg and Rubenstein on Class Actions* §§ 15.9-.15 (6th ed.) .................................................33

Plaintiffs,[1] individually, and on behalf of the Settlement Class, pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e), submit this Unopposed Motion for Preliminary Approval of Class Action Settlement, which is supported by the Joint Declaration of AT&T 1 Class Counsel ("AT&T 1 Joint Decl."), Joint Declaration of AT&T 2 Class Counsel ("AT&T 2 Joint Decl."), and Declaration of Jeanne Finegan of Kroll Settlement Administration ("Admin Decl.") attached as ***Exhibits B-D***, respectively.

## I.    INTRODUCTION

AT&T is in the business of providing wireless communication services, including voice, data, and messaging to consumers in the United States. AT&T 1 Joint Decl. ¶ 3; AT&T 2 Joint Decl. ¶ 2. AT&T's customers provide AT&T with personal and sometimes sensitive private information. *Id*. In two separate Data Incidents, cybercriminals accessed AT&T's network and unlawfully accessed information belonging to tens of millions of AT&T's customers. AT&T 2 Joint Decl. ¶ 3.

Following the Data Incidents, lawsuits were filed by individuals and MDLs were created in this Court and the District of Montana to oversee all pretrial proceedings for litigation related to each incident. AT&T 1 Joint Decl. ¶ 5, 13; AT&T 2 Joint Decl. ¶ 4. To avoid the risk and expense of protracted litigation, the Parties

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached hereto as ***Exhibit A***.

decided to conserve their resources for the benefit of the Settlement Classes and to focus their efforts on early resolution. AT&T 2 Joint Decl. ¶ 5. After extensive investigation and arm's-length negotiations—including a formal mediation before an experienced class action data breach mediator—the Parties reached a fair, reasonable, and adequate class-wide Settlement that provides exceptional relief for the Settlement Classes. *Id*. The Settlement creates two non-reversionary all cash Settlement Funds totaling $177,000,000 ($149,000,000 for the benefit of the AT&T 1 Settlement Class and $28,000,000 for the benefit of the AT&T 2 Settlement Class) that will be used to pay Cash Payments to Settlement Class Members; all Settlement Administration Costs; and any Court-awarded attorneys' fees, costs, and Service Awards. Agreement ¶¶ 39, 52.

The Court should find the Settlement is within the range of reasonableness necessary to grant Preliminary Approval and enter an order: (1) granting Preliminary Approval; (2) provisionally certifying the Settlement Class for settlement purposes; (3) appointing Plaintiffs as Class Representatives; (4) appointing Mark Lanier, Chris Seeger, Shauna Itri, Jean Martin, James Cecchi, and Sean Modjaard as AT&T 1 Class Counsel and J. Devlan Geddes, Raph Graybill, John Heenan, Jeff Ostrow, and Jason S. Rathod as AT&T 2 Class Counsel; (5) appointing Kroll Settlement Administration LLC as the Settlement Administrator; (6) approving the Notices and the Notice Program; (7) approving the Claim Forms and the Claim Process; (8)

establishing the opt-out and objection procedures and deadlines; (9) scheduling a Final Approval Hearing at which time the Court will consider whether to grant Final Approval of the Settlement and the Applications for Attorneys' Fees, Costs, and Service Awards; and (10) enjoining and staying the filing and prosecution of all state court and arbitration proceedings related to the Data Incidents.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Data Incidents

#### 1.    AT&T 1 Data Incident

On March 30, 2024, AT&T announced that AT&T-specific fields were contained in a data set released on the dark web. AT&T 1 Joint Decl. ¶ 4. Specifically, that information included some customer names, addresses, telephone numbers, Social Security numbers, and/or dates of birth. *Id*. Following AT&T's announcement of the AT&T 1 Data Incident, numerous lawsuits were filed against AT&T in state and federal courts nationwide. *Id*. ¶ 5. In June 2024, the JPML consolidated these lawsuits in an MDL before Judge Ada E. Brown in the Northern District of Texas. (ECF No. 79).

On August 14, 2024, the Court appointed Lead Counsel, a Plaintiff Executive Committee, and a Plaintiff Steering Committee for the AT&T 1 Action, authorizing them to conduct pretrial proceedings and settlement negotiations. (ECF No. 165). Counsel engaged experts to support their efforts, conducted a detailed investigation

of the factual and legal claims, and interviewed hundreds of consumers in preparation for filing their master consolidated complaint. AT&T 1 Joint Decl. ¶ 8-10.

### 2. AT&T 2 Data Incident

On July 12, 2024, AT&T announced a separate data incident that occurred in April 2024, where certain limited call log data had been illegally downloaded from an AT&T workspace on a third-party cloud platform hosted by Snowflake. AT&T 2 Joint Decl. ¶ 7. The data set included some combination of telephone numbers, counts of telephone calls, aggregate call durations for a day or month, and for a small subset of individuals one or more cellular site identification numbers associated with calls. *Id.* It did not include any content of calls or texts, customer names, Social Security numbers, dates of birth or other personal or financial information. *Id.* Following this announcement, lawsuits were filed against Snowflake and various Snowflake clients, including AT&T entities. *Id.* These lawsuits were consolidated in a hub-and-spoke MDL in the District of Montana before Judge Brian Morris on October 4, 2024. *Id.*

On November 19, 2024, Judge Morris appointed Plaintiffs' Leadership Counsel for the AT&T 2 Action, authorizing them to litigate pretrial proceedings and conduct settlement negotiations. (Snowflake ECF No. 255). AT&T 2 Plaintiffs' Leadership Counsel engaged experts, conducted a detailed investigation, and

interviewed hundreds of individuals in preparation for filing an amended complaint in the Montana District and the consolidated complaint here. AT&T 2 Joint Decl. ¶ 8.

### B.    Settlement Negotiations and Consolidation

In early December 2024, retired United States District Judge W. Royal Furgeson, Jr., the Special Master appointed to the AT&T 1 Action, asked AT&T 1 Class Counsel to consider exploring potential early resolution of the AT&T 1 Action. AT&T 1 Joint Decl. ¶ 14. Concurrently, AT&T's Counsel inquired whether AT&T 2 Class Counsel would also be interested in pursuing early resolution. AT&T 1 Joint Decl. ¶ 15; AT&T 2 Joint Decl. ¶ 9.

All Parties subsequently agreed to separately mediate their disputes before Robert Meyer, an experienced data breach and complex case mediator, at JAMS in Los Angeles. AT&T 1 Joint Decl. ¶ 16; AT&T 2 Joint Decl. ¶ 10. In advance of the mediation, the Parties met separately with the mediator and exchanged confidential information concerning the nature and scope of the respective Data Incidents, including the number of people and data elements potentially implicated. *Id*. The Parties exchanged detailed mediation briefs outlining their positions on liability, damages, class certification, and settlement-related issues. *Id*.

The Parties separately mediated their disputes with Mr. Meyer from March 17-19, 2025. *Id*. After three days of mediation and vigorous, hard-fought

5

negotiations, the Parties reached separate agreements in principle, subject to confirmatory discovery. *Id.* Thereafter*,* AT&T provided Class Counsel with confidential detailed information about the Data Incidents, AT&T's subsequent investigations into the incidents, the data elements involved, and the security enhancements implemented to help insulate AT&T from future incidents, and agreed to make someone with intimate familiarity with the facts and data concerning AT&T 1 and AT&T 2 claims for an interview. AT&T 1 Joint Decl. ¶ 19; AT&T 2 Joint Decl. ¶ 11.

For the next 10 weeks, the Parties negotiated the terms of the detailed Agreement, including the Notice Program and Claims Process. AT&T 1 Joint Decl. ¶ 20; AT&T 2 Joint Decl. ¶ 12. The Parties signed the Agreement on May 30, 2025. AT&T 2 Joint Decl. ¶ 13.

As part of these negotiations, the Parties decided it would conserve judicial resources and be in the best interest of the Settlement Classes to settle both actions together in this Court. AT&T 1 Joint Decl. ¶ 21; AT&T 2 Joint Decl. ¶ 14.On May 19, 2025, plaintiffs in the Snowflake MDL filed a second amended representative class complaint against several defendants, including AT&T. (Snowflake ECF No. 427). The amended complaint included only those claims and classes that are part of the Settlement. AT&T 2 Joint Decl. ¶ 15. It no longer included claims for non-AT&T customers due to AT&T 2 Class Counsel's belief that the claims are not viable. *Id.*

On May 30, 2025, plaintiffs and the AT&T defendants in the Snowflake MDL moved the Snowflake MDL Court to stay the action pending the approval of this Settlement in this Court. (Snowflake ECF No. 444).

On the same day, AT&T 1 Plaintiffs and AT&T 2 Plaintiffs filed the Complaint in this Action. Plaintiffs allege violations of the federal Communications Act, Satellite Home Viewer Extension and Reauthorization Act, and the Cable Television Consumer Protection Act. (ECF No. 281). Plaintiffs further allege common law negligence and breach of implied contract causes of action and seek declaratory and injunctive relief. *See* generally Complaint.

## III. MATERIAL TERMS OF THE SETTLEMENT

**A.     The Settlement Classes** - The Settlement creates two settlement classes: the AT&T 1 Settlement Class and the AT&T 2 Settlement Class.

The AT&T 1 Settlement Class is defined as:

> [A]ll living persons in the United States whose AT&T 1 Data Elements were included in the AT&T 1 Data Incident.

Agreement ¶ 37. Excluded from the AT&T 1 Settlement Class are (a) AT&T, any entity in which AT&T has a controlling interest, and AT&T's officers, directors, legal representatives, successors, subsidiaries, and assigns; (b) any judge, justice, or judicial officer presiding over this Action, and the members of their immediate families and judicial staff; (c) any persons who have Released Claims relating to the AT&T 1 Data Incident and/or the AT&T 1 Action prior to Final Approval; and (d)

any persons who timely opt out of the AT&T 1 Settlement Class. *Id*.

The AT&T 2 Settlement Class is defined as:

AT&T Account Owners or Line or End Users whose AT&T 2 Data Elements were involved in the AT&T 2 Data Incident.

*Id.* ¶ 50. Excluded from the AT&T 2 Settlement Class are (a) AT&T, any entity in which AT&T has a controlling interest, and AT&T's officers, directors, legal representatives, successors, subsidiaries, and assigns; (b) any judge, justice, or judicial officer presiding over this Action, and the members of their immediate families and judicial staff; (c) any persons who have Released Claims relating to the AT&T 2 Data Incident and/or the AT&T 2 Action prior to Final Approval; and (d) any persons who timely opt-out of the AT&T 2 Settlement Class. *Id*.

**B.    The Settlement Funds and Escrow Accounts** - The Settlement provides for two Settlements Funds. *Id.* ¶¶ 39, 52. The AT&T 1 Settlement Class Fund consists of a non-reversionary all cash $149,000,000 fund for the benefit of the AT&T 1 Settlement Class, and the AT&T 2 Settlement Class Fund consists of a non-reversionary all cash $28,000,000 fund for the benefit of the AT&T 2 Settlement Class. *Id*. The Settlement Funds will be used to pay the Settlement Class Member Benefits, Court-approved attorneys' fees, costs, and Service Awards, and the Settlement Administration Costs applicable to the action for which it was established. Agreement ¶ 123. In other words, all AT&T 1 Action related Settlement Class Member Benefits, attorneys' fees, costs, Service Awards, and Settlement

8

Administration Costs shall be payable out of the AT&T 1 Settlement Fund, and all AT&T 2 Action related Settlement Class Member Benefits, attorneys' fees, costs, Service Awards, and Settlement Administration Costs shall be payable out of the AT&T 2 Settlement Fund. AT&T 1 Joint Decl. ¶ 23; AT&T 2 Joint Decl. ¶ 16.

There will be two Escrow Accounts, one for each Settlement Fund. Agreement ¶¶ 33, 46. The Settlement Administrator will establish the Escrow Accounts and AT&T will fund or cause to be funded both accounts. *Id.* ¶¶ 118-119. Within 15 days of Preliminary Approval, AT&T shall fund or cause to be funded the amounts sufficient to cover the Settlement Administrator's estimated Settlement Administration Costs necessary to effectuate Notice and otherwise administer the respective actions. *Id.* ¶ 118. Within 15 days of the Effective Date, AT&T shall fund or cause to be funded the remaining amounts of the Settlement Funds in the AT&T 1 Settlement Fund and the AT&T 2 Settlement Fund, less the amounts paid following Preliminary Approval. *Id.* ¶ 119.

**C.      Settlement Class Member Benefits -** All Settlement Class Members are entitled to a Cash Payment. *Id.* ¶ 127. Cash Payments are either a (1) a Documented Loss Cash Payment; or (2) a Tiered Cash Payment. *Id.* ¶¶ 127-134. Documented Loss Cash Payments are cash payments for out-of-pocket losses related to Data Incidents. *Id.* ¶¶ 128-131. Detail on the type of documentation required to support a Claim for Documented Loss Cash Payments is in paragraph 131 of the

Agreement, and in the Long Form Notice and on the Claim Forms. *Id*., Exhibits 6-9. Tiered Cash Payments are *pro rata* cash payments from the Net Settlement Funds, in which the Tier (1, 2, or 3), and the corresponding amount of the cash payment, are related to the type of information the Settlement Class Member had impacted in the Data Incidents. Agreement ¶¶ 127, 132-134. Some Settlement Class Members are entitled to submit a Claim for a Documented Loss Cash Payment only, while others are eligible to choose either a Documented Loss Cash Payment or a Tiered Cash Payment. *See* generally § V. Some Settlement Class Members are Overlap Settlement Class Members, meaning their information was impacted in both Data Incidents. *Id*. ¶ 90. Those Settlement Class Members may submit Claims for Cash Payments from both the AT&T 1 Net Settlement Fund and the AT&T 2 Net Settlement Fund. *Id*. ¶ 130.

### 1. Documented Loss Cash Payment

*AT&T 1 Settlement Class Members* – All AT&T 1 Settlement Class Members are eligible to submit a Claim for a Documented Loss Cash Payment in the maximum amount of $5,000, upon presentment of documentation fairly traceable to the AT&T 1 Data Incident. *Id*. ¶ 128. The losses must have occurred from 2019 and after. *Id*. ¶ 68.

*AT&T 2 Settlement Class Members* – All AT&T 2 Settlement Class Members are eligible to submit a Claim for a Documented Loss Cash Payment in the maximum

amount of $2,500, upon presentment of documentation fairly traceable to the AT&T 2 Data Incident. *Id*. ¶ 129. Losses must have occurred from April 14, 2024, and after. *Id*. ¶ 68. AT&T 2 Account Owners may submit a Claim for themselves for up to $2,500, and if they have multiple AT&T lines on their account, they may submit additional Claims for up to $2,500 each on behalf of any Line User or End User that incurred documented losses that are fairly traceable to the AT&T 2 Data Incident. ¶ 129; AT&T 2 Joint Decl. ¶ 17. Line Users or End Users may also submit Claims on their own behalf. *Id*. However, an Account Owner and their End or Line User may not both submit a Claim related for documented losses in connection with the same line. AT&T 2 Joint Decl. ¶ 17.  In the event that were to happen, the End User's or Line User's Claim will be superior to the Account Owner's Claim.

***Overlap Settlement Class Members*** – Overlap Settlement Class Members may submit Claims for Documented Loss Cash Payments related to each of the Data Incidents, upon presentment of separate and distinct documentation fairly traceable to each Data Incidents. Agreement ¶ 130.

### 2.  Tiered Cash Payments

As an alternative to a Documented Loss Cash Payment, AT&T 1 Settlement Class Members and AT&T 2 Account Owners are entitled to submit a Claim for a Tiered Cash Payment. *Id*. ¶  127. Tiered Cash Payments are *pro rata* cash payments from the Net Settlement Funds. *Id*. ¶¶ 111, 113, 115. There are three tiers of

payments. *Id.* ¶¶ 130-132. The tiers are based upon the sensitivity of the information implicated in the Data Incident. *Id.* ¶¶ 112, 114, 116. Tiers 1 and 2 are for AT&T 1 Settlement Class Members. *Id.* ¶¶ 112, 114. Tier 3 is for AT&T 2 Account Owners. *Id.* ¶ 116. AT&T 1 Settlement Class Members and AT&T 2 Account Owners' Notices will include a unique identifier indicating their respective Tier Settlement Class. AT&T 2 Joint Decl. ¶ 18.

### a.    Tier 1 Cash Payment

A Tier 1 Settlement Class Member is an AT&T 1 Settlement Class Member whose Social Security number was implicated in the AT&T 1 Data Incident. Agreement 110. Tier 1 Cash Payments shall be a *pro rata* share of the AT&T 1 Net Settlement Fund that results in a Tier 1 Cash Payment being equal to five times the amount of a Tier 2 Cash Payment. *Id.* ¶ 132.

### b.    Tier 2 Cash Payment

A Tier 2 Settlement Class Member is an AT&T 1 Settlement Class Member who did not have their Social Security number implicated in the AT&T 1 Data Incident. *Id.* ¶ 112. Tier 2 Cash Payments shall be a *pro rata* share of the AT&T 1 Net Settlement Fund that results in a Tier 2 Cash Payment being equal to one-fifth the amount of a Tier 1 Cash Payment. *Id.* ¶ 133.

### c.    Tier 3 Cash Payment

All AT&T 2 Settlement Class Member Account Owners are Tier 3 Settlement

12

Class Members. *Id*. ¶ 116. Tier 3 Cash Payments will be equal for all AT&T 2 Settlement Class Member Account Owners and will be an equal *pro rata* share of the AT&T 2 Net Settlement Fund. *Id*. ¶¶ 115, 134.

### 3. Pro Rata Distribution of Cash Payments

All Cash Payments will be based on *pro rata* distributions of the applicable Net Settlement Funds. *Id*. ¶ 135. For purposes of calculating the *pro rata* increase or decrease for the AT&T 1 Documented Loss Cash Payment for Valid Claims, if the aggregate amount of all approved AT&T 1 Documented Loss Cash Payments exceeds $25,000,000, then the value of the Documented Loss Cash Payment to be paid to each AT&T 1 Settlement Class Member shall be reduced, on a *pro rata* basis, such that the aggregate value of all Documented Loss Cash Payments equals $25,000,000. *Id*. ¶ 136. All such determinations shall be performed by the Settlement Administrator.

The Settlement Administrator will first pay approved Claims for Documented Loss Payments related to the respective Actions out of each respective Net Settlement Fund. *Id*. ¶ 137. Thereafter, the amount of the Net Settlement Funds remaining after all Documented Loss Payments are applied (up to $25,000,000 for AT&T 1) shall be distributed by the Settlement Administrator on a *pro rata* basis. *Id*. AT&T 2 Settlement Class Members will receive a *pro rata* distribution from the AT&T 2 Net Settlement Fund. *Id*. AT&T 1 Settlement Class Members will receive

a *pro rata* distribution from the AT&T 1 Net Settlement Fun. AT&T 1 Tier 1 Settlement Class Members shall receive five times more than AT&T 1 Tier 2 Settlement Class Members out of the AT&T 1 Settlement Fund. *Id*.

### 4. Security Enhancements

AT&T has undertaken or will undertake specific, reasonable steps to further secure customer information. Within 30 days of Preliminary Approval, AT&T will provide Plaintiffs with a confidential written attestation outlining those steps. *Id*. ¶ 138.

### D.     Notice to the Settlement Classes

The Parties have agreed on a comprehensive Notice Program, which includes Email Notice, Reminder Email Notice, Postcard Notice, Publication Notice, Long Form Notice, a Settlement Website, and a Settlement telephone line for frequently asked questions. *Id.* § IX; *See generally* Admin Decl.

Within 10 days of Preliminary Approval, AT&T will provide the Settlement Administrator with the Class Lists containing, if available, Settlement Class Members' names, email addresses, and physical addresses, as well as a description of the Settlement Class Members' information implicated in the Data Incidents. Agreement ¶ 148. Within 45 days of receipt of the Class Lists, the Settlement Administrator will commence the Notice Program by activating the Settlement Website, initiating the Publication Notice, starting to send Email Notice to the

14

AT&T 1 Settlement Class and to the AT&T 2 Settlement Class Members who for which email addresses are maintained by Defendants. *Id.* § IX. Publication Notice shall be made for the purpose of creating awareness of the Settlement for all Settlement Class Members, including those for which the Defendants do not maintain email addresses or physical addresses. *Id.* ¶ 152; AT&T 2 Joint Decl. ¶ 19. The Settlement Administrator will send Postcard Notices to those AT&T 1 Settlement Class Members whose Email Notice either bounces back or is otherwise undeliverable. Agreement ¶ 151. Twenty days before the Opt-Out and Objection Deadline, a Reminder Email Notice will be sent to all Settlement Class Members who had not submitted a Claim or opt-ed-out by that date. *Id.* ¶ 150. The Long Form Notice shall also be posted on the Settlement Website and made available by mail upon request to the Settlement Administrator. *Id.* ¶ 77.

Settlement Class Members may review the Long Form Notice, key documents and dates, and obtain answers to frequently asked questions on the Settlement Website. *Id*. ¶ 109. By calling a toll-free telephone number, Settlement Class Members can also receive answers to frequently asked questions and request the Long Form Notice and Claim Form. *Id*. ¶ 145.e.

The Notices will inform the Settlement Classes of the Settlement's general terms, including a description of the Action, who is in the Settlement Classes, and what claims will be released. *Id.* ¶ 153 and Exhibits 1-6. All Notices shall include,

among other information: a description of the Settlement's material terms; how to submit a Claim Form; the Claim Form Deadline; the deadlines to opt-out of or object to the Settlement and/or Application/s for Attorneys' Fees, Costs and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. *Id.*

### E.    Claim Process

To receive a Cash Payment, Settlement Class Members must accurately and timely submit a Claim Form by the Claim Deadline. *Id.* § XII. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail sent to the Settlement Administrator at the address on the Claim Form. *Id.* ¶ 164. The Settlement Administrator will review all Claim Forms to determine their validity and eligibility. *Id.* ¶ 165. The Claim Process includes procedures for the Settlement Administrator to identify and reject duplicate Claims; to take any reasonable steps to prevent fraud and abuse; to send a Notice of Deficiency to a Settlement Class Member whose Claim Form was rejected for containing incomplete or inaccurate information, and/or omitting required information in the Claim Form, allowing for the submission of information to validate the Claim; and to reduce or reject a Claim. *Id.* ¶¶ 165-170. The Settlement Administrator will provide Settlement Class Members who submitted Valid Claims with their Settlement Class Member Benefits

16

no later than 60 days after the Effective Date. *Id.* ¶ 173. Cash Payments will be made

electronically or by paper check. *Id.* ¶ 174. Account Owners who submit Claims on

behalf of Line or End Users will receive payment for those Claims. Greater detail on

the Claims Process is in Section IX of the Agreement.

### F.    Disposition of Residual Funds

The Settlement is designed to exhaust the Settlement Funds. *Id.* ¶ 182. In the

event there are funds remaining in the Settlement Funds, including from uncashed

checks, within 45 days following the 180-day check negotiation period, and further

distribution to the Settlement Class Members is not economically feasible, the Parties

will confer regarding the appropriate distribution to be presented to the Court for

approval. *Id.* Under no circumstances shall any amount of the Settlement Funds revert

back to Defendants. *Id.*

### G.    Settlement Administrator

The proposed Settlement Administrator, Kroll, is a well-respected third-party

administrator that has significant experience with data breach settlements. AT&T 1

Joint Decl. ¶ 24; AT&T 2 Joint Decl. ¶ 20. The Settlement Administrator shall

effectuate the Notice Program, handle the Claims Process, administer the Settlement

Funds, and distribute the Settlement Class Member Benefits. *Id.* § VIII. Additional

duties and responsibilities are specified in the Agreement. *Id.* Kroll estimates that

Settlement Administration Costs will be $4,371,099 for the AT&T 1 Action and

17

$1,082,086 for the AT&T 2 Action. AT&T 2 Joint Decl. ¶ 20.

### H.    Opt-out and Objection Procedures

The Email Notice, Reminder Notice, Postcard Notice, and Publication Notice will direct Settlement Class Members to the Settlement Website to review the Long Form Notice for the opt-out and objection procedures. *Id*. ¶ 155. The opt-out and objection procedures are also in the Agreement and will be listed in the Court's Preliminary Approval Order, both of which will also be published on the Settlement Website. *Id.* §§ X-XI.

Consistent with the Settlement's opt-out procedures, Settlement Class Members who do not wish to participate in the Settlement may opt-out up until the Opt-Out Deadline, which is 45 days before the initial scheduled Final Approval Hearing date. *Id.* ¶ 156. During the Opt-Out Period, Settlement Class Members may mail their written opt-out requests to the Settlement Administrator and Class Counsel. *Id*. The request must include: (a) the Settlement Class Member's full legal name; (b) the Settlement Class Member's address, all AT&T telephone number(s) involved in the AT&T 1 Data Incident or AT&T 2 Data Incident, current telephone number, and email address; (c) the identity of the Settlement Class Member's counsel, if represented; (d) a handwritten "wet" signature of the Settlement Class Member; (e) the name and number of the case; (f) if the individual is a former AT&T customer the Settlement Class Member's AT&T account number(s) or an attestation

that the former customer is unable to obtain their AT&T account number(s); and (g) a statement clearly indicating the individual wishes to be excluded from the Settlement Class for the purposes of the Settlement. Requests for exclusion furthermore must be made on an individual basis and request exclusion only for that one individual whose personal signature appears on the request; "mass," "class," or other purported group opt-outs, or opt-outs signed by counsel, are not permitted and are not effective. Any individual in the Settlement Classes who does not timely and validly request to opt out shall be bound by the terms of this Agreement even if he or she does not submit a Valid Claim, and even if he or she has pending, or subsequently initiates, litigation, arbitration, or any other proceeding against Defendants relating to the Released Claims. Individuals in the Settlement Classes who timely and validly opt out of the Settlement do not release their individual claims and will not obtain any benefits under the Settlement. *Id.* ¶ 157. Any Settlement Class Member who does not timely opt-out shall be bound by the Agreement even if that Settlement Class Member does not submit a Claim Form. *Id.*

The Agreement and Long Form Notice also specify how Settlement Class Members may object to the Settlement and/or the Application/s for Attorneys' Fees, Costs, and Service Awards. *Id.* § XI and Exhibit 6 thereto. Objections must be mailed to the Clerk of the Court and filed on the Court's docket, as well as to Class Counsel, AT&T's Counsel, and to the Settlement Administrator. *Id.* ¶ 158. To be considered

by the Court, the objection must be submitted no later than the last day of the Objection Period, which is 30 days before the initial scheduled Final Approval Hearing. *Id.* The full list of objection requirements are in the Agreement and Long Form Notice, and will be in the Preliminary Approval Order, all of which will be on the Settlement Website. *Id.* ¶¶ 159-160 and Exhibit 6 thereto.

### I.    Release of Claims

Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement Class will be bound by the Settlement terms, including the Releases discharging the Released Claims against the Released Parties. *Id.* § XVI. The Released Claims are narrowly tailored to apply only to claims arising out of or relating to the Data Incidents. AT&T 1 Joint Decl. ¶ 23; AT&T 2 Joint Decl. ¶ 21.

### J.    Attorneys' Fees, Costs, and Service Awards

As part of the Motion for Final Approval, which will be filed 60 days before the initial scheduled Final Approval Hearing (and 15 days before the Opt-Out and Objection Deadlines) AT&T 1 Class Counsel and AT&T 2 Class Counsel will file their Application/s for Attorneys' Fees, Costs, and Service Awards. Agreement ¶ 79. They may file jointly or separately. *Id.* ¶ 178. Any awards for attorneys' fees, costs, or Service Awards shall be payable out of the respective Settlement Funds. *Id.* In other words, AT&T 1 Class Counsel and the AT&T 1 Plaintiffs who are Class Representatives will be paid their attorneys' fees, costs, and Service Awards out of

the AT&T 1 Settlement Fund, and AT&T 2 Class Counsel and the AT&T 2 Plaintiffs who are Class Representatives will be paid their attorneys' fees, costs, and Service Awards out of the AT&T 2 Settlement Fund. Class Counsel intend to seek Court-approval for attorneys' fees of up to one-third of the Settlement Funds, reimbursement for reasonable litigation costs, and Service Awards in the amount of $1,500 each for the Plaintiffs who are appointed as Class Representatives. *Id.* ¶¶ 178-179.

The Settlement is not contingent on approval of the Service Awards, and if the Court grants amounts other than what is requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 180. The Notices will inform the Settlement Class Members that Class Counsel intend to seek up to one-third of the Settlement Funds, plus costs, and Service Awards in the amount of $1,500 each.

## IV.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

"Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (citing *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 846 (5th Cir. 1975)). Settlements "contribute greatly to the efficient utilization of our scarce judicial resources," *id.*, and are favored by "strong judicial policy," *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *ODonnell v. Harris Cnty.*, No. H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019). Accordingly, there is a "strong

presumption" in favor of finding a proposed settlement fair, reasonable, and adequate, particularly when they have been reached by experienced counsel, with the assistance of a third-party neutral, after a meaningful exchange of information. *See id.* at *9 (citing *Erica P. John Fund, Inc. v. Halliburton Co*., No. 02-CV-1152-M, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (quoting *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig*., 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012))); *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891, 931 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) (collecting cases); *accord Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 301 (S.D. Miss. 2014) (quoting *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir.1982)) ("The Rule 23(e) analysis should be 'informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement.'"). Settlements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"—rather, "compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. Feb. 21, 2007).

## A.    Legal Standards For Preliminary Approval

Federal Rule of Civil Procedure 23(e) requires court approval for any class

action settlement. Courts typically employ a two-step process. First, at the preliminary approval stage, the court makes a preliminary evaluation of the fairness, reasonableness, and adequacy of the proposed settlement. Second, after notice to the class and an opportunity for class members to object or opt out, the court holds a final approval hearing to make a final determination on whether the settlement is fair, reasonable, and adequate. *See* 4 William B. Rubenstein & Herbert B. Newberg, *Newberg and Rubenstein on Class Actions* § 13.1 (6th ed.); Manual for Complex Litigation, § 21.632 (4th ed. 2004); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012).

Under the 2018 amendments to Rule 23(e), a court may approve a settlement only after finding that it is "fair, reasonable, and adequate." In making this determination, the Court must consider whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

   (i)   the costs, risks, and delay of trial and appeal;

   (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv)  any agreement [made in connection with the proposal]; and

23

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Before the 2018 Rule 23(e) amendments, the Fifth Circuit developed its own

six *Reed* factors:

(1)  existence of fraud or collusion behind the settlement;

(2)  complexity, expense, and likely duration of the litigation;

(3)  stage of the proceedings and the amount of discovery completed;

(4)  probability of plaintiffs' success on the merits;

(5)  range of possible recovery and certainty of damages; and

(6)  opinions of class counsel, class representatives, and absent class members.

*See Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *In re Deepwater Horizon*, 739 F.3d at 820; *ODonnell v. Harris Cnty.*, No. H-16-1414, 2019 WL 6219933, at *8-9 (S.D. Tex. Nov. 21, 2019). These factors align with and complement the Rule 23(e) factors and should be considered together when evaluating the proposed Settlement. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 484-85 (E.D. La. 2020) (*Reed* factors are consistent with Rule 23(e) factors); Fed. R. Civ. P. 23(e)(2), Committee Notes to 2018 amendments ("The goal of this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

In granting preliminary approval, the Court determines that it will "likely" be

able to grant final approval under Fed. R. Civ. P. 23(e)(2) and certify the Settlement

Classes.[2] Here, the Court should find it is likely to conclude the Settlement is fair,

reasonable, and adequate under both the Rule 23(e)(2) and *Reed* factors, and grant

Preliminary Approval to allow Notice to issue to the Settlement Classes.

**B.    The Settlement Warrants Preliminary Approval**

**1.    Plaintiffs and Counsel have Adequately Represented the Class. (Fed. R. Civ. P. 23(e)(2)(A))**

Plaintiffs and proposed Class Counsel have adequately represented the

Settlement Classes. As with Federal Rule of Civil Procedures 23(a)'s adequacy of

representation requirement (addressed *infra*), plaintiffs must establish: (1) there is

no antagonism or conflict of interest between the class representatives and other

members of the class; and (2) counsel and the class representatives are competent,

willing, and able to protect the interests of absent class members. *See Feder v. Elec.*

*Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, the Settlement Classes

are all potentially affected by the same Data Incidents as Plaintiffs, and thus the

proposed Class Representatives have common interests. Plaintiffs have ably

represented the Settlement Class, maintaining contact with Class Counsel, reviewing

and approving pleadings, assisting in the investigation of the Actions, remaining

---

[2] The preliminary approval standard is not as stringent as final approval standard. *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.* at 314-15.

available for consultation throughout mediation, reviewing the Settlement documents, and answering Class Counsel's questions. AT&T 1 Joint Decl. ¶ 26; AT&T 2 Joint Decl. ¶ 22.

Proposed Class Counsel vigorously pursued the Settlement Classes' interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. AT&T 1 Joint Decl. ¶¶ 7-11; AT&T 2 Joint Decl. ¶ 23. To do so, they leaned on their extensive data breach litigation experience to thoroughly investigate the factual and legal claims, draft comprehensive complaints and other court filings, engage experts to evaluate the litigation and further support their clients' claims, and conduct informal discovery during the course of settlement negotiations. *Id.* As such, Fed. R. Civ. P. 23(e)(2)(A) supports Preliminary Approval.

## 2. The Settlement Was Negotiated at Arm's Length and Without Fraud or Collusion (Fed. R. Civ. P. 23(e)(2)(B))

"The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-cv-03424-K, 2022 WL 16821685, at *10 (N.D. Tex. Oct. 14, 2022), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022) (citing *ODonnell*, 2019 WL 4224040, at *9). Three days of contentious and arm's-length negotiations between experienced counsel, facilitated by Mr. Meyer, a respected, neutral mediator, with substantial data breach experience,

lead to the Settlement, after pre-mediation exchanges of information and briefs. AT&T 1 Joint Decl. ¶ 18; AT&T 2 Joint Decl. ¶ 24. There is no evidence of fraud or collusion; rather, the record shows the Parties engaged in hard-fought, arm's-length negotiations to reach this Settlement. *See Klein v. O'Neal*, Inc., 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010). *See also Heartland*, 851 F. Supp. 2d at 1063-64 (arms-length negotiations over multiple mediation sessions with experienced mediator supported data breach settlement approval).

Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the Settlement's finer points in the Agreement, resolving vigorous disagreements. AT&T 1 Joint Decl. ¶ 20; AT&T 2 Joint Decl. ¶ 25. Moreover, the proposed Settlement does not favor any Settlement Class Member over any other, weighing against any evidence of fraud or collusion and favoring approval. *See Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007). Accordingly, the presumption of reasonableness should apply here, and both Fed. R. Civ. P. 23(e)(2)(B) and the first *Reed* factor are satisfied.

### 3. The Relief Provided to the Settlement Classes is Fair, Reasonable, and Adequate (Fed. R. Civ. P. 23(e)(2)(C))

The third and most important Rule 23(e)(2)(c) factor weighs heavily in favor of granting Preliminary Approval and overlaps with the second, fourth, and fifth *Reed* factors. The Settlement provides substantial monetary and non-monetary benefits to the Settlement Classes. The $177,000,000 non-reversionary Settlement

27

Fund represents a significant recovery for the Settlement Classes, particularly given the risks and uncertainties of continued litigation, and compares very favorably with the following approved common fund data breach settlements from around the country, given the types of data involved in the Data Incidents and class size: *See In re T-Mobile Customer Data Sec. Breach Litig.*, No. 4:21-MD-03019-BCW, 2023 WL 11878508, at *3 (W.D. Mo. June 29, 2023) ($350,000,000 for 100,000,000 class members), *rev'd on other grounds*, 111 F.4th 849 (8th Cir. 2024); *In re Cap. One Consumer Data Sec. Breach Litig.*, MDL No. 1:19-md-2915 (AJT/JFA), 2022 WL 18107626, at *1, 6 (E.D. Va. Sept. 13, 2022) ($190,000,000 for 98,000,000 class members); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1257-58 (11th Cir. 2021) ($380,500,000 for 147,000,000 class members); *In re Yahoo! Inc. Customer Data Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *10 (N.D. Cal. July 22, 2020) ($117,500,000 for 194,000,000 class members); *In re Experian Data Breach Litig.*, No. 8:15-cv-01592 AG (DFMx), ECF No. 322 (C.D. Cal. May 10, 2019) ($22,000,000 for 15,000,000 class members); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ($115,000,000 for 79,200,000 class members); *In re Target Corp Customer Data Sec. Breach Litig.*, No. 0:14-MD-02522, ECF No. 791 (D. Minn. May 17, 2017) ($10,000,000 for 97,500,000 class members); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *5 (N.D.

Ga. Aug. 23, 2016) ($13,000,000 for 61,000,000 class members).

For Settlement Class Members who suffered documented losses, the Settlement provides reimbursement of up to $5,000 per AT&T 1 Settlement Class Member and up to $2,500 per AT&T 2 Settlement Class Member which is comparable to or exceeds the relief provided in other data breach settlements. For AT&T 1 Settlement Class Members and AT&T 2 Account Owners who do not elect a Documented Loss Cash Payment, the Settlement provides alternative tiered Cash Payments. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 318 (approving data breach settlement providing both out-of-pocket expense reimbursement and alternative compensation options); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *11 (same).

Additionally, AT&T has undertaken or will undertake specific, reasonable steps to further secure customer information that benefits AT&T customers. Within 30 days of Preliminary Approval, AT&T will provide Plaintiffs with a written attestation outlining those steps. Agreement ¶ 138. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212822, at *10-11 (approving settlement with monetary and non-monetary relief, including practice changes and larger information security budget).

### a. The Settlement Accounts for the Risks, Costs, and Delay of Trial and Appeal (Fed. R. Civ. P. 23(e)(2)(C)(i))

The Settlement provides immediate relief while avoiding the significant risks,

29

costs, and delay of continued litigation. Absent settlement, the Parties would face lengthy and expensive litigation of complex factual and legal issues, including class certification, discovery, dispositive motions, experts, trial, and potential appeals. AT&T 1 Joint Decl. ¶ 28; AT&T 2 Joint Decl. ¶ 26. This process could take several years, during which time Settlement Class Members would receive no benefits. *Id.*

Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles—even just to make it past the pleading stage. Such litigation is notoriously complex, risky, and time-consuming. Courts have differed on dismissal of and class certification in data breach cases, and the law governing data breach claims continues to evolve. *See, e.g., Logan v. Marker Grp., Inc.*, No. 4:22-CV-00174, 2024 WL 3489208, at *1, 13 (S.D. Tex. July 18, 2024) (dismissing all but one claim); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221, at *28 (D.S.C. May 14, 2024) (denying class certification); *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 75 (D.C. Cir. 2019) (dismissing some claims but allowing others to proceed); *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 303 (2d Cir. 2021) (establishing a multi-factor test for Article III standing in data breach cases); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435-47 (2021) (clarifying standing requirements in cases involving risk of future harm). Plaintiffs dispute the Defendants' defenses, but success at class certification and trial is far from certain.

Moreover, there is no guarantee Plaintiffs would prevail on their claims or, if they did, that they would recover more than the Settlement provides. *See Heartland*, 851 F. Supp. 2d at 1065 (discussing "significant challenges" to recovery in data breach litigation); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) (discussing risks and uncertainties in data breach litigation); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015) ("legal issues involved [in data breach litigation] are cutting-edge and unsettled, so that many resources would necessarily be spent litigating substantive law as well as other issues."), *rev'd and remanded for further analysis*, 847 F.3d 608 (8th Cir. 2017). Consequentially, the Settlement Agreement reflects the Parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. AT&T 1 Joint Decl. ¶ 28; AT&T 2 Joint Decl. ¶ 27.

Plaintiffs believe strongly in their claims, and at the same time they understand that the great number of uncertainties and the substantial delay in a final litigated resolution weigh in favor of an immediate, guaranteed resolution of the litigation that provides substantial relief. *Id.* As such, the current Settlement strikes an appropriate balance between Plaintiffs' "likelihood of success on the merits" and "the amount and form of the relief offered in the settlement." *See Carson v. Am.*

31

*Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Given these risks and uncertainties, the substantial relief provided by the Settlement is adequate and reasonable. *See Klein*, 705 F. Supp. 2d at 654-56 (approving settlement where continued litigation "would be complex, expensive, and lengthy, with an uncertain probability of success for the plaintiffs").

### b.  Method of Processing Claims and Distributing Relief is Effective (Fed. R. Civ. P. 23(e)(2)(C)(ii))

The proposed Claim Process for Documented Loss Cash Payments or Alternative Tiered Cash Payments is straightforward and accessible via an easy-to-complete Claim Form available online or by mail. The proposed Settlement Administrator, Kroll Settlement Administration LLC, is a well-established and respected settlement administration firm with extensive experience in data breach settlements.[3] *See* https://www.kroll.com/en/services/settlement-administration. The Settlement Administrator will review claims and provide a Notice of Deficiency, giving Settlement Class Members an opportunity to cure. The Notice Program also calls for the Settlement Administrator to address duplicate and fraudulent Claims. Courts have approved similar claims processes in data breach settlements. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1271-72; *In re Anthem*,

---

[3] Plaintiffs' counsel obtained multiple bids to meet the needs of this case and minimize the costs of notice and administration, which will be paid from the Settlement Funds. Kroll will implement a robust notice program designed to reach as many Settlement Class Members as possible and provide them with clear information about the Settlement and their rights. *See In re Pool Prods.*, 310 at 319 (concluding notice program was sufficient and highlighting role of professional claims administrator).

327 F.R.D. at 333. Additionally, Cash Payments will be made electronically or by paper check to Settlement Class Members with Valid Claims.

### c. The Proposed Attorney's Fees and Timing of Payment Are Reasonable (Fed. R. Civ. P. 23(e)(2)(C)(iii))

Moreover, as the Motion for Final Approval will detail, the one-third of the common Settlement Funds for attorneys' fees is regularly granted in the Fifth Circuit. *See, e.g., Kostka v. Dickey's Barbecue Rests.*, No. 3:20-CV-03424-K, 2023 WL 3914266, at *3 (N.D. Tex. June 6, 2023); *Erica P. John Fund, Inc.*, 2018 WL 1942227, at *10; *Klein*, 705 F. Supp. 2d at 675. Importantly, the fee request will be subject to Court review and approval, and Settlement approval is not conditioned on the Court's approval of the Application/s for Attorneys' Fees, Costs, and Service Awards. Settlement Class Members will have an opportunity to object to the fee request. *See In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008); *Newberg and Rubenstein on Class Actions* §§ 15.9-.15. Attorneys' fees will be paid to Class Counsel within 15 days of the Effective Date.

### d. No Other Agreements Made in Connection with the Proposal (Fed. R. Civ. P. 23(e)(2)(C)(iv))

The only other agreement required to be identified under Federal Rule of Civil Procedure 23(e)(3) is the confidential agreement pursuant to which Defendants have the option to terminate the Agreement, within 15 days after the end of the Opt-Out Period, if a specified number of Settlement Class Members opt-out of the Settlement.

Agreement ¶ 190. At the Court's request, the Parties will submit that agreement for *in camera* inspection.

> ### 4. The Settlement Treats Settlement Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D)).

The Settlement treats Settlement Class Members equitably relative to each other, offering Documented Loss Cash Payments or alternative tiered Cash Payments, the former based on Documented Losses fairly traceable to one or both of the Data Incidents, and the latter to ensure Settlement Class Members who do not claim Documented Losses receive benefits commensurate with the potential harm faced based on the elements of Private Information that may have been accessed in the Data Incidents. Settlement Class Members who had their Social Security numbers exposed (Tier 1) will receive higher payments than those who had other information exposed (Tier 2), reflecting the greater risk of potential harm associated with the exposure of Social Security numbers. Similarly, Account Owners in the AT&T 2 Settlement Class (Tier 3) will receive payments based on the exposure of their call-related records.

This fair and equitable approach is consistent with other data breach settlements, as it recognizes that members of the different Settlement Classes faced different levels of potential risk, while providing meaningful relief to all. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1273-74 (affirming approval of settlement that provided different benefits based on whether class

members had already experienced identity theft); *In re Anthem*, 327 F.R.D. at 332-33 (same); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2017 WL 2178306, at *3 (D. Minn. May 17, 2017) (approving settlement with different benefits for different categories of class members). *See also In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 957 (approving settlement with different compensation levels based on type and extent of injury).

### 5. The Remaining *Reed* Factors Also Support Preliminary Approval.

The remaining *Reed* factors also support Preliminary Approval and the Court's conclusion that it is likely to grant Final Approval. As to the third factor (stage of the litigation and available discovery), the Settlement was reached only after extensive investigation by the Parties and an informal exchange of information such that Class Counsel could fully understand the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. Where Parties possess ample information with which to evaluate the merits of competing positions, a lack of formal discovery will not prevent preliminary approval of a settlement. *Cotton,* 559 F.2d at 1332; *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d at 241 (formal discovery not "a necessary ticket to the bargaining table" where the parties and court are adequately informed to determine the settlement's fairness) (*citing In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)).

The sixth factor (opinions of class counsel, class representatives, and absent

class members) is most appropriately examined after the Settlement Class has been issued Notice and absent Settlement Class Members have a chance to respond. But there is no reason to expect legitimate antagonism to the Settlement. Plaintiffs and Defendants approve of its terms, as do proposed Class Counsel, based on their deep experience litigating data breach and other class actions. AT&T 1 Joint Decl. ¶ 28; AT&T 2 Joint Decl. ¶ 28. The Settlement's valuable relief makes it fair, reasonable, adequate, and worthy of Preliminary Approval. *Id.*

Thus, these additional *Reed* factors weigh in favor of approving the proposed Settlement. Accordingly, the Court should grant Preliminary Approval.

## V. THE SETTLEMENT CLASSES SHOULD BE PROVISIONALLY CERTIFIED.

For settlement purposes only, Plaintiffs request the Court provisionally certify the Settlement Classes, which satisfy all Rule 23(a) and (b)(3) requirements. Under Rule 23(a), a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. Additionally, under Rule 23(b)(3), a class may be maintained where the predominance and superiority elements are met. When evaluating certification of a settlement class, manageability is not a concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Despite the necessarily rigorous analysis of certain prongs at the preliminary approval stage, class actions are regularly certified for settlement. In fact, data

incident cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. 2019). *See also, e.g.*, *Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-cv-03424-K, 2022 WL 16821685, at *1 (N.D. Tex. 2022), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022); *Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *1, 18 (S.D. Tex. Aug. 20, 2018); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 490 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1960 (S.D. Tex. 2012). This case is no different.

### A.    The Rule 23(a) Requirements Are Satisfied

#### 1.    Numerosity

The Settlement Classes easily satisfy numerosity. The AT&T 1 Data Incident affected tens of millions of AT&T customers. The AT&T 2 Data Incident affected tens of millions of individuals whose call records were compromised. AT&T 1 Joint Decl. ¶ 4; AT&T 2 Joint Decl. ¶ 29. Given these large numbers, joinder of all Settlement Class Members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ("the size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement").

## 2.    Commonality

The Settlement Classes meet commonality. Fed. R. Civ. P. 23(a)(2). Every question need not be common; rather, the questions linking class members must be substantially related to the resolution of the litigation and capable of generating common answers "apt to drive the resolution of the litigation." *Heartland*, 851 F. Supp. 2d at 1052-54 (quoting *Wal-Mart Stores v. Dukes,* 564 U.S. 338, 350 (2011) and finding commonality satisfied in data breach case where common questions included whether defendant had a duty to implement security measures and whether it breached that duty). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d at 810-11. Multiple questions of law and fact are common to each class, including:

- whether Defendants had duties to protect Settlement Class Members' Private Information;

- whether Defendants breached that duty;

- whether Defendants knew or should have known that their data security systems were inadequate;

- whether Defendants' conduct violated state or federal consumer protection laws;

- whether Settlement Class Members were harmed as a result of the Data

Incidents; and

- whether Settlement Class Members are entitled to damages and other non-monetary relief.

The answers to these questions would be the same for all Settlement Class Members, thus satisfying commonality. *See Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 169 (5th Cir. 2015) (finding commonality satisfied where putative class members' claims depend on a "common course of conduct that provides a class-wide basis for deciding significant common issues of law and fact").

### 3. Typicality

Rule 23(a)(3) typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Heartland*, 851 F. Supp. 2d at 1054. "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); *see also Mullen*, 186 F.3d at 625 (same). Plaintiffs' claims are typical of the other Settlement Class Members because their personal information was involved in the AT&T 1 Data Incident and/or call information was involved in the AT&T 2 Data Incident, and the cybersecurity protocols Defendants had (or did not have) in place to protect their data is at issue. AT&T 1 Joint Decl. ¶ 27; AT&T 2 Joint Decl. ¶ 30. All Plaintiffs have Article III standing. *See also Kostka*, 2022 WL 16821685 at *4 (citing *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (when class action settles at pleading stage, court only considers whether named plaintiffs plausibly alleged minimum Article III standing requirements, as Plaintiffs did in their Complaints). Plaintiffs' claims arise from the same events and are based on the same legal theories as those of each of the respective Settlement Classes. *See* Fed. R. Civ. P. 23(a)(3); *Heartland*, 851 F. Supp. 2d at 1054-55 (typicality satisfied in data breach case where class representatives' claims arose from single course of conduct by defendant and a single set of legal theories).

### 4.    Adequacy of Representation

Plaintiffs must be able to provide fair and adequate representation. Plaintiffs must establish: (1) there is no antagonism or conflict of interest between the class representatives and other settlement class members; and (2) counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. Fed. R. Civ. P. 23(a)(4); *Feder*, 429 F.3d at 130. *See also Heartland*, 851 F. Supp. 2d at 1055-57 (finding adequacy satisfied in data breach case where class representatives and class counsel had same interests, suffered the same injuries, and had no conflicts of interest). Plaintiffs and proposed Class Counsel (AT&T 1 Class Counsel and AT&T 2 Class Counsel) will fairly and adequately protect the interests of the Settlement Classes. AT&T 1 Joint Decl. ¶ 26; AT&T 2 Joint Decl. ¶ 31. Plaintiffs' interests are aligned with the Settlement Classes as they seek relief

arising out of the same Data Incidents. *Id.* The Settlement will make all of them eligible for the same Settlement Class Member Benefits. *Id.* Further, proposed Class Counsel have hundreds of years of combined experience as class action litigators, including data breach litigation, and are well suited to advocate for the Settlement Classes. *See* AT&T 1 Joint Decl. ¶¶ 1-2.; AT&T 2 Joint Decl. Exhibits 1-5. Moreover, they have put their collective experience to use in negotiating an early-stage settlement guaranteeing immediate relief. *Id.*

## B. The Rule 23(b)(3) Requirements are Satisfied

Rule 23(b)(3) provides class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." This inquiry is two-fold.

### 1. Predominance

First, "[i]n order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc*., 782 F.2d 468, 472 (5th Cir. 1986). The central common issues in the Actions—whether Defendants had duties to protect Settlement Class Members' Private Information, whether Defendants breached those duties, and whether Settlement Class Members were harmed as a result—predominate over any individual issues. *See* FED. R. CIV. P. 23(b)(3); *Amchem*, 521 U.S. at 623 (predominance "tests whether proposed classes

are sufficiently cohesive to warrant adjudication by representation"); *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 635-36 (5th Cir. 2016) (en banc) (common questions of law or fact to predominate over any questions affecting only individual members); *Heartland*, 851 F. Supp. 2d at 1058-59 (predominance satisfied in data breach case).

Plaintiffs are not required to prove each element of their claims is "susceptible to classwide proof." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (citation omitted). Moreover, state law variations are rightly viewed as creating primarily manageability concerns, which under *Amchem*, 521 U.S. at 620, the Court need not consider in the settlement context. *See, e.g., In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 310 F.R.D. 300, 311-12 (E.D. La. 2015).

### 2. Superiority

Second, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual Settlement Class Members likely have little interest in controlling separate actions, given the amount of damages any individual Settlement Class Member might recover compared to the substantial cost of litigating individual claims. Moreover, class treatment will achieve economies of scale, conserve judicial resources, and ensure consistent adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-17 (discussing superiority requirement); *In re Deepwater Horizon*, 739 F.3d at 818-19 & n.30 (affirming superiority finding where court considered Rule 23(b)(3) factors).

The superiority requirement is met in cases like this one because individual actions would be inefficient and impractical. *See Heartland*, 851 F. Supp. 2d at 1059-60 (superiority satisfied in data breach case with millions of class members despite state law variations, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Equifax Inc. Customer Data Sec. Breach Litig.,* 289 F. Supp. 3d 1322, 1325-26 (J.P.M.L. 2017) (finding centralized proceedings appropriate for data breach involving more than 145 million consumers).

Thus, with Rule 23(a) and 23(b)(3) satisfied, the Settlement Classes should be certified.

## VI.  THE COURT SHOULD APPOINT THE CLASS REPRESENTATIVES, CLASS COUNSEL, AND SETTLEMENT ADMINISTRATOR

Based on the foregoing arguments regarding Rule 23(a)(4) adequacy of representation, the Plaintiffs and their counsel will fairly and adequately protect the Settlement Classes' interests, and the Court should appoint them as Class Representatives and Class Counsel, respectively. Proposed Class Counsel also meet the requirements of Federal Rule of Civil Procedure 23(g)(l)(A)-(B) by identifying and investigating potential claims in the Actions; applying their extensive experience to litigate data breach class actions; applying their knowledge of applicable law; and devoting extensive resources to represent the Settlement Classes, which resources will continue to be expended through the Settlement approval process and thereafter

to ensure all Settlement terms are implemented.

The proposed Settlement Administrator is a well-established and respected settlement administration firm. *See* generally Admin Decl. Kroll has extensive experience in data breach settlements, which was directly involved in designing the robust Notice Program and Claim Process and preparing the Notices and Claim Forms that it will implement following Preliminary Approval. *See In re Pool Prods.*, 310 F.R.D. at 319 (concluding that notice program was sufficient and highlighting role of professional claims administrator); *see also Casey v. Doctor's Best, Inc.*, No. 8:20-cv-01325-JLS-JDE, 2022 WL 1726080, at *12 (C.D. Cal. Feb. 28, 2022) (approving Kroll as administrator based on its experience). Plaintiffs' counsel obtained multiple bids to meet the needs of this case and minimize the Settlement Administration Costs, which will be paid from the Settlement Funds. Thus, Kroll should be appointed to perform the Settlement Administrator duties described in Section VIII of the Agreement and as ordered in the Preliminary Approval Order. This includes implementation of the Notice Program designed to reach as many Settlement Class Members as possible through different, but complimentary forms of Notice providing them with clear information about the Settlement and their rights.

## VII. THE COURT SHOULD APPROVE THE NOTICE PROGRAM, NOTICES, CLAIM PROCESS, AND CLAIM FORMS

Rule 23(e)(1)(b) obligates the court to "direct notice in a reasonable manner

to all class members who would be bound by" a proposed Settlement. For a Rule 23(b)(3) class, notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The threshold requirement for class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, the proposed settlement, and the class members' rights to opt-out or to object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974).

The proposed Notice Program, described in detail above and in the Agreement, is designed to satisfy Rule 23(c)(2)(B) and the *Manual for Complex Litigation* to provide the best notice practicable to Settlement Class Members. *See generally* Admin Decl.; Agreement, Exhibits 1-6. *See also Plante v. StoryBuilt, LLC*, No. 1:23-CV-01021-DAE, 2025 WL 751442, at *7 (W.D. Tex. Jan. 7, 2025) (discussing notice requirements under Rule 23(c)(2)(B) and citing cases approving notice by mail and email among other methods), *adopting report and recommendation*, 2025 WL 521838 (W.D. Tex. Feb. 18, 2025). It includes Email Notice, Reminder Email Notice, Postcard Notice, Long Form Notice, Publication

Notice, a Settlement Website, and a dedicated telephone line for frequently asked questions. Agreement § IX. Direct Email Notice or Postcard Notice is included for those Settlement Class Members for which Defendants maintain email and postal addresses. A post office box will also be maintained to receive communications for Settlement Class Members, including Claim Forms, opt-out requests, and objections. *Id.* ¶ 145.c.

Courts have approved similar notice programs in data breach cases. *See, e.g., Plante*, 2025 WL 751442, at *7; *In Re MGM Int'l Resorts Data Breach Litig.*, No. 2:2—cv-00376-GMN-NJK (ECF Nos. 244, 251); *In re Target Corp. Customer Data Sec. Breach Litig.*, 2015 WL 7253765, at *2-3 (approving notice program involving direct email, publication, and website); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *19 (approving notice program with email, publication, and website components). The combination of direct notice via email and mail, publication notice, a settlement website, and a toll-free telephone line ensures that Settlement Class Members will receive the best notice practicable under the circumstances.

The Notices are clear and straightforward, defining the Settlement Classes and the Settlement's essential terms, including, among other information: a description of the material Settlement terms; how to submit a Claim Form; the Claim Deadline; the last day of the Opt-Out Period to opt-out of the Settlement Classes; the last day

of the Objection Period for Settlement Class Members to object to the Settlement and/or the Applications for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date, time, and location; the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information; the dedicated post office box address; and Class Counsel's contact information. The Settlement Administrator, with assistance from Class Counsel and Defendants' Counsel will insert the correct dates and deadlines in the Notice before the Notice Program commences, as specified in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator will update the Settlement Website to reflect the new date.

When approving the Notice Program, the Court should also approve the opt-out and objection procedures and requirements described above, in the Agreement, in the Long Form Notice, and on the Settlement Website, which are fair and reasonable to ensure they are timely and validly submitted for the Court's consideration prior to the Final Approval Hearing with sufficient and complete information. These procedures and requirements are regularly approved in class action settlements.

Finally, the Courts should approve the Claim Process and Claim Forms detailed above, in the Agreement, on the Settlement Website, and on the Claim Forms, which are reasonable and necessary to implement the process to claim and

later distribute Settlement Class Member Benefits. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Forms. These procedures and requirements are regularly approved in class action settlements, and include reasonable procedures to validate claims, identify duplicates claims, and exclude fraudulent claims, if submitted.

## VIII.  ALL STATE COURT ACTIONS AND ARBITRATIONS RELATED TO THE DATA INCIDENTS SHOULD BE ENJOINED AND STAYED

In addition to Preliminary Approval, Plaintiffs respectfully request this Court issue an injunction staying all state court and arbitration proceedings related to the Data Incidents that are the subject of this Settlement, pursuant to the All Writs Act, 28 U.S.C. § 1651, and the "necessary in aid of jurisdiction" exception to the Anti-Injunction Act, 28 U.S.C. § 2283. This relief is necessary to protect this Court's jurisdiction over this nationwide Settlement and to prevent interference with the orderly administration of the Settlement during the Notice and Opt-Out Period.

The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The authority granted by the All Writs Act is limited by the Anti-Injunction Act, which prohibits federal courts from enjoining state court proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28

U.S.C. § 2283. The "necessary in aid of jurisdiction" exception applies when an injunction is necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case "as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970). Importantly, this exception is particularly applicable in complex multidistrict litigation involving nationwide class actions where the federal court is approaching the final stages of settlement, especially where there is a conditionally certified class and a preliminarily approved settlement. *See In re Diet Drugs*, 282 F.3d 220, 235 (3d Cir. 2002) ("[M]aintaining the federal court's flexibility and authority to decide such complex nationwide cases makes special demands on the court that may justify an injunction otherwise prohibited by the Anti-Injunction Act.") (internal quotation marks omitted). As the Third Circuit noted in *In re Diet Drugs*, in complex cases where a settlement has received conditional approval, "the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court." *Id*. at 236.

The Actions present precisely the type of complex, nationwide class action justifying an injunction under the "necessary in aid of jurisdiction" exception. This MDL involves two separate Data Incidents affecting tens of millions of individuals. The proposed Settlement represents the culmination of extensive investigation,

arm's-length negotiations, and a formal mediation. Preliminary Approval will result in the implementation of the comprehensive Notice Program, a Claim Process for millions of potential Claimants, and the administration of Settlement Funds totaling $177,000,000. This is precisely the type of "complicated, comprehensive settlement" for which an injunction against parallel proceedings is appropriate. *Id.*

Parallel state court proceedings and arbitrations would substantially interfere with this Court's jurisdiction and ability to effectively manage the Settlement process for the following reasons: Parallel proceedings would create confusion among Settlement Class Members about their rights and options, potentially undermining the effectiveness of the Court-approved Notice Program. *Id.* at 236-37 (allowing parallel proceedings would create confusion as to class members' status in the "dueling lawsuits"). Parallel proceedings could result in inconsistent rulings on identical legal and factual issues, threatening the integrity of this Settlement. The complex interrelationship between the various Settlement Class Member tiers and benefits requires consistent administration. If certain Settlement Class Members were permitted to pursue parallel claims while others were bound by the Settlement, it would disrupt the carefully balanced negotiated framework. The Settlement contains provisions that give Defendants certain termination rights based on the number of opt-outs. Parallel proceedings could artificially manipulate these numbers, potentially jeopardizing the entire Settlement. *See id.* at 237 n.13 (noting

vulnerability of settlement with termination provisions tied to opt-out numbers). Finally, allowing parallel proceedings would result in duplicative litigation in numerous forums, wasting judicial resources and potentially delaying relief to Settlement Class Members. Consolidating all claims within this Settlement promotes judicial economy and ensures the efficient resolution of claims. These concerns make clear that the parallel proceedings would "seriously impair the federal court's flexibility and authority" to manage this complex Settlement. *Atlantic Coast Line*, 398 U.S. at 295.

Consistent with *In re Diet Drugs*, 282 F.3d at 238-39, the requested injunction is narrowly tailored to the needs of this case and satisfies considerations of federalism and comity, by only enjoining parallel court and arbitration proceedings related to the Data Incidents to preserve the status quo during the critical Notice and Opt-Out Period without unduly interfering with those proceedings. The injunction will not prevent Settlement Class Members from individually opting-out of the Settlement. The injunction will be temporary in nature, lasting only until the Court's decision to grant Final Approval. Settlement Class Members who timely opt-out will be free to pursue their individual claims in other forums.

## IX.  PROPOSED SCHEDULE AND POST-SETTLEMENT EVENTS

Consistent with the Agreement, Plaintiffs propose the schedule below. Plaintiffs request the Final Approval Hearing be scheduled for the **week of January**

**12, 2026**, or soon thereafter based upon the Court's availability.

| Class Lists delivered to Settlement Administrator | 10 days after Preliminary Approval |
|---|---|
| Notice Program Commencement | Within 45 days of Preliminary Approval |
| Notice Program is Complete | 45 days before the initial scheduled Final Approval Hearing date |
| Deadline to file Motion for Final Approval and Application/s for Attorneys' Fees, Costs, and Service Awards | 60 days before the initial scheduled Final Approval Hearing date |
| Opt-Out Deadline | 45 days before the initial scheduled Final Approval Hearing date |
| Objection Deadline | 45 days before the initial scheduled Final Approval Hearing date |
| Reminder Email Deadline | 20 days prior to Deadline to Submit Claim Forms |
| Deadline to Respond to Objections | 15 days before the initial scheduled Final Approval Hearing date |
| Deadline to Submit Claim Forms | 15 days before the initial scheduled Final Approval Hearing date |
| Final Approval Hearing | _____, 2026, at ____ am/pm CST. |

## X.    CONCLUSION

Plaintiffs respectfully request the Court: (1) preliminarily approve the Settlement; (2) provisionally certify the Settlement Classes for settlement purposes; (3) appoint Plaintiffs as Class Representatives; (4) appoint Mark Lanier, Chris Seeger, Shauna Itri, Jean Martin, James Cecchi, and Sean Modjaard as AT&T 1 Class Counsel, and J. Devlan Geddes, Raph Graybill, John Heenan, Jeff Ostrow, and Jason S. Rathod as AT&T 2 Class Counsel;; (5) appoint Kroll Settlement

Administration LLC as the Settlement Administrator; (6) approve the Notices and the Notice Program; (7) approving the Claim Form and the Claim Process; (8) establish the opt-out and objection procedures and deadlines; (9) schedule the Final Approval Hearing; and (10) enjoin and stay all other parallel state court and arbitration proceedings. The proposed Preliminary Approval Order is attached as ***Exhibit E***.

Dated: May 30, 2025.                              Respectfully submitted,

*/s/ W. Mark Lanier*
W. Mark Lanier
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, Texas 77064
Tel: (713) 659-5200
mark.lanier@lanierlawfirm.com

Shauna Itri
**SEEGER WEISS, LLP**
325 Chestnut Street, Suite 917
Philadelphia, PA 19106
sitri@seegerweiss.com

James E. Cecchi
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
jcecchi@carellabyrne.com

Jean Sutton Martin
**MORGAN & MORGAN**

*/s/ Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 332-4200
ostrow@kolawyers.com

John Heenan
**HEENAN & COOK**
1631 Zimmerman Trail
Billings, Montana 59102
Tel: (406) 839-9091
john@lawmontana.com

Raphael Graybill
**GRAYBILL LAW FIRM, PC**
300 4th Street North
Great Falls, Montana 59401
Tel: (406) 452-8566
raph@graybilllawfirm.com

J. Devlan Geddes
**GOETZ, GEDDES & GARDNER P.C.**
35 N. Grand Ave.
Bozeman, Montana 59715

**COMPLEX LITIGATION GROUP**
201 N Franklin Street 6th Floor
Tampa, Florida 33602
Tel: (813) 559-4908
jeanmartin@forthepeople.com

Sean S. Modjarrad
**MODJARRAD ABUSAAD & SAID**
212 W Spring Valley Road
Richardson, Texas 75081
Tel: (972) 789-1664
smodjarrad@mas.law

*Proposed AT&T 1 Class Counsel*

Tel: (406) 587-0618
devlan@goetzlawfirm.com

Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H St NE, Suite 302
Washington DC 20002
Tel: (202) 470-3520
jrathod@classlawdc.com

*Proposed AT&T 2 Class Counsel*

## CERTIFICATE OF CONFERENCE

I hereby certify Plaintiffs and Defendants conferred regarding the relief requested, and this motion is unopposed.

*/s/ W. Mark Lanier*
W. Mark Lanier

## CERTIFICATE OF WORD COUNT

I hereby certify the word count for this filing (excluding case caption, table of contents, table of authorities, signature block, and certificates) is 12,271 words.

*/s/ W. Mark Lanier*
W. Mark Lanier

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was served on all counsel of record on May 30, 2025, via CM/ECF, in accordance with Fed. R. Civ. P. 5(b).

*/s/ W. Mark Lanier*
W. Mark Lanier

54