# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| IN RE: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 3:24-cv-00757-E |
| | MDL DOCKET NO. 3:24-md-03114-E |
| *This Document Relates to All Cases* | |

## MOTION TO INTERVENE AND IN OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**PLEASE TAKE NOTICE** that before the Honorable Judge Ada Brown, Movants Osa Massen, Audrey Jones, and Susan Savala bring this motion to intervene for the purpose of asserting their objections to inclusion in the "AT&T 1"[1] Settlement Class and to the Settling Parties' request for Preliminary Approval of Class Action Settlement. This motion is supported by the following memorandum of points and authorities, all pleadings and papers filed herein, and any other matters properly before the Court.

Movants respectfully request an opportunity to present an oral argument before the Court.

Dated: June 13, 2025

By: */s/ Sarah E. Hillier*
Sarah E. Hillier
Gibbs Mura LLP
Attorney for Movants

---

[1] Movants seek to intervene to object only to the proposed settlement of claims alleged in the "AT&T 1 Action," as defined in the proposed Settlement Agreement, not claims alleged in the "AT&T 2 Action." *See* Settlement Agreement, Dkt. # 283-1 at ¶¶ 27, 40.

i

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES...........................................1

I.    INTRODUCTION................................................................................1

II.   BACKGROUND.................................................................................2

III.  ARGUMENT......................................................................................3

      A.    Intervention is Proper Here ........................................................4

      B.    The Proposed Settlement Violates Both Arbitration Claimants' Rights
            and Rule 23(a) ..........................................................................5

            1.    Settlement would impair Arbitration Claimants' right to pursue
                  their claims under the Customer Service Agreement and violate
                  the FAA. ........................................................................5

            2.    The proposed settlement cannot satisfy the requirements for
                  preliminary approval under Rule 23. ..................................8

            3.    The settlement agreement's wet ink opt-out provision does not
                  address  the threat to Arbitration Claimants' rights. ......................12

IV.   CONCLUSION AND REQUEST FOR RELIEF ........................................15

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Abernathy v. DoorDash, Inc.*,
   438 F. Supp. 3d 1062 (N.D. Cal. 2020)..................................................................3

*Ahlbrand v. Keeley*,
   1998 WL 2001152 (Mich. App. Jan. 9, 1998) ......................................................7

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ..............................................................................................10

*Arena v. Intuit, Inc.*,
   2021 WL 834253 (N.D. Cal. Mar. 5, 2021) .......................................... 11, 13, 14

*Arnold v. Directtv, Inc.*,
   2012 WL 266452 (E.D. Mo. Jan. 30, 2012) .....................................................5, 7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................1, 6

*Barnett v. Countrywide Credit Indus.*,
   2002 WL 1023161 (N.D. Tex. May 21, 2002) ......................................................9

*Brumfield v. Dodd*,
   749 F.3d 339 (5th Cir. 2014) .................................................................................4

*Eaton v. Ascent Res.-Utica, LLC*,
   2024 WL 1458457 (S.D. Ohio Apr. 4, 2024).......................................................8

*In re BP, PLC Sec. Litig.*,
   758 F. Supp. 2d 428 (S.D. Tex. 2010)..................................................................12

*In re Joint E. & S. Dist. Asbestos Litig.*,
   982 F.2d 721 (2d Cir. 1992), *opinion modified on reh'g*, 993 F.2d 7
   (2d Cir. 1993) .............................................................................................. 10, 11

*In re Joint E. & S. Dist. Asbestos Litig.*,
   14 F.3d 151 (2d Cir. 1994) ..................................................................................11

*In re Oil Antitrust Litig.*,
   570 F.3d 244 (5th Cir. 2009) .................................................................................4

**Page(s)**

*In re Piper Funds, Inc., Institutional Government Income Portfolio Litigation*,
   71 F.3d 298 (8th Cir. 1995) ................................................................6, 7

*In re T-Mobile Customer Data Security Breach Litigation*,
   2023 WL 11878508 (W.D. Mo. June 29, 2023), *rev'd in part on other
   grounds*, 111 F.4th 849 (8th Cir. June 11, 2024) ...........................................8, 15

*In re Trans Union Corp. Privacy Litig.*,
   2009 WL 4799954 (N.D. Il. Dec. 9, 2009), *modified and remanded*, 629 F.3d
   741 (7th Cir. 2011) ............................................................................10

*Jones v. Halliburton Co.*,
   583 F.3d 228 (5th Cir. 2009) ...................................................................5

*Kindred Nursing Centers L.P. v. Clark*,
   137 S.Ct. 1421 (2007) ..........................................................................6

*Marra v. AT&T Services, Inc.*,
   2:25-cv-00012-BMM (D. Mont. Oct. 17, 2024) ...................................................2

*Morangelli v. Chemed Corp.*,
   2010 WL 11622886 (E.D.N.Y. June 15, 2010)..................................................8, 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ...............................................................................5

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
   732 F.2d 452 (5th Cir. 1984)..................................................................4

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ............................................................................5

*Perry v. Thomas*,
   482 U.S. 483 (1987) ............................................................................6

*Philips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ...........................................................................12

*Piambino v. Bailey*,
   610 F.2d 1306 (5th Cir. 1980) ........................................................... 11, 12

iv

**Page(s)**

*Rockwell v. AT&T, Inc.*,
   3:25-cv-00004-RSH-MSB (S.D. Cal. Apr. 11, 2025).............................................2

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994) ..................................................................................4

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984) ...................................................................................................6

*Stott v. Capital Financial Services, Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011)...........................................................................7

**Statutes**

9 U.S.C. §2 ................................................................................................... 2, 5, 6

9 U.S.C.A. §§ 1–16 ..........................................................................................1, 5

28 U.S.C. § 2072(b) ..............................................................................................5

Cal. Civ. Code § 1798.150 .................................................................................12

**Rules**

Fed. R. Civ. P. 23 ...................................................................................... 1, 2, 3, 5

Fed. R. Civ. P. 24(a)(2)........................................................................................4

**Other**

6 James Moore, et al., *Moore's Federal Practice* § 24.03[3][a] (3d ed. 2008).........4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Nearly 15 years ago, Defendant AT&T persuaded the Supreme Court that consumers would be "*better off* under their arbitration agreement with AT&T than they would have been as participants in a class action . . .." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). Now, AT&T wants to force Movants and other consumers who are pursuing claims in arbitration ("Arbitration Claimants") pursuant to the company's Customer Service Agreement to settle their claims in a class action—the very mechanism AT&T ridiculed in *Concepcion*. Unfortunately for AT&T, both claimants' contractual and statutory rights and the Federal Rules of Civil Procedure prevent such duplicity.

Arbitration Claimants have a contractual right to arbitration, and a district court may not enjoin this right without violating the Federal Arbitration Act. *See* 9 U.S.C.A. §§ 1–16. Furthermore, class representatives' claims must be typical of the class and the class representatives must protect the interests of the class. Fed. R. Civ. P. 23(a). These requirements are essential to protecting the due process rights of absent class members such as the Arbitration Claimants. The proposed settlement would impermissibly place Arbitration Claimants in the same class as users who either opted out of arbitration or have willingly waived their contractual right to arbitration, violating the typicality and adequacy of representation requirements of

1

Rule 23(a). These individuals should be excluded from the definition of the AT&T 1 Settlement Class. These individuals also have a distinct and valuable claim under the California Consumer Privacy Act ("CCPA") arising out of the same facts that would be waived in any settlement.

## II.    BACKGROUND

AT&T's relationship with its customers is governed by a Customer Service Agreement ("CSA"). *See, e.g.,* Exhibit B. Since 2001 or earlier, all iterations of the CSA include a "Dispute Resolution" provision which contains a binding arbitration clause. These arbitration clauses are expressly subject to the Federal Arbitration Act, 9 U.S.C. §2 ("FAA"). The CSA is binding on the customer and on AT&T. AT&T routinely compels arbitration when customers seek to litigate claims against it. *See, e.g.*, *Rockwell v. AT&T, Inc.,* 3:25-cv-00004-RSH-MSB, ECF 7 (S.D. Cal, Apr. 11, 2025); *Marra v. AT&T Services, Inc.*, 2:25-cv-00012-BMM, ECF 1-3 (D. Mont., Oct. 17, 2024).

Following the procedures set forth by AT&T and laid out in the CSA, thousands of individuals have notified AT&T of their intentions to file arbitrations pursuant to AT&T's mandatory arbitration clause. These Arbitration Claimants have retained counsel who have been in ongoing communication with AT&T since October 2024. The Arbitration Claimants and AT&T engaged in a formal mediation where counsel for Arbitration Claimants also provided AT&T with a list of every

2

individual who had retained the undersigned counsel and intended to file an arbitration. Decl. of S. Hillier ¶ 3, Exhibit A.

AT&T now seeks to waive its mandatory arbitration clause for the purposes of settlement *only*. But AT&T cannot reverse course and avoid its obligations to arbitrate with the Arbitration Claimants by lumping them in with the settlement class. It is "the irony upon irony" that AT&T now "wishes to resort to a class-wide lawsuit, the very device it denied to [its customers], to avoid its duty to arbitrate." *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020).

AT&T's customer service agreements unequivocally state that "all disputes and claims … except for claims arising from bodily injury or death" must be resolved by binding arbitration rather than in court. AT&T now seeks to create a new "settlement" exception that gives it the right to resolve disputes currently noticed to be arbitrated through a class-wide settlement. No such exception exists. The Arbitration Claimants respectfully request that this Court require AT&T to honor its CSA and allow the Arbitration Claimants to resolve their claims in arbitration.

### III.    ARGUMENT

The motion for preliminary approval should be denied because the proposed settlement both violates the rights of the arbitration claimants and fails to meet the class certification and settlement requirements of Federal Rule of Civil Procedure 23.

## A.    Intervention is Proper Here

Intervenors satisfy the standard for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) if (1) the motion to intervene is timely, (2) the interest asserted by the potential intervenor is related to the action, (3) the interest may be impaired or impeded by the action, and (4) the interest is not adequately represented by the existing parties. *See, e.g., In re Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009); *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994) (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc)). The impairment prong requires movants to demonstrate that they have a "legally protectable interest" related to the action and that denial of intervention "may, as a practical matter, impair or impede the movant's ability to protect that interest." *Brumfield v. Dodd*, 749 F.3d 339, 343, 344 (5th Cir. 2014) (quoting 6 James Moore, et al., *Moore's Federal Practice* § 24.03[3][a], at 24-41 (3d ed. 2008)).

The Arbitration Claimants moving to intervene in this action have satisfied this standard. First, the motion to intervene is timely; the arbitration claimants learned of the settlement when it was submitted to the Court and promptly prepared and filed this motion to intervene and object. Second, the proposed intervenors and objectors are pursuing claims through AT&T's contractually mandated arbitration process that are encompassed by the class action settlement, thus satisfying the

4

second prong. Last, the proposed intervenors have at least two legally protectable

interests that they seek to protect and that are not adequately represented by the

existing parties: (1) the right to have their claims heard in arbitration, *see* Federal

Arbitration Act ("FAA") 9 U.S.C. § 2, and (2) claims under the CCPA that are not

valued under the terms of the settlement.

**B.    The Proposed Settlement Violates Both Arbitration Claimants' Rights and Rule 23(a)**

**1.    Settlement would impair Arbitration Claimants' right to pursue their claims under the Customer Service Agreement and violate the FAA.**

The proposed settlement asks this Court to issue an improper injunction

against Arbitration Claimants' contractual right to arbitration. Under the Rules

Enabling Act, the Federal Rules of Civil Procedure "shall not abridge, enlarge, or

modify any substantive right." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999)

(quoting 28 U.S.C. § 2072(b)). Further, the FAA, 9 U.S.C.A. §§ 1–16, "does not

authorize a district court to enjoin arbitration." *Arnold v. Directtv, Inc.*, 2012 WL

266452, at *2 (E.D. Mo. Jan. 30, 2012). And the "federal policy favoring

arbitration," *e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.

1, 24 (1983); *Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009), should

provoke serious caution whenever a district court considers enjoining arbitration.

The FAA states that agreements to arbitrate in any "contract evidencing a

transaction involving commerce . . . shall be valid, irrevocable, and enforceable." 9

U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC*, 563 U.S. at 344. This "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 346 (quotation marks omitted). It "preempts any state rule discriminating on its face against arbitration," including state law that is facially discriminatory, or "any [state] rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the same defining features of arbitration agreements." *Kindred Nursing Centers L.P. v. Clark*, 137 S.Ct. 1421, 1426 (2007). The FAA "rests on the authority of Congress to enact substantive rules under the Commerce Clause," *Southland Corp. v. Keating*, 465 U.S. 1, 11 (1984), and the "substantive" rights derived by the FAA are directly enforceable in both federal and state courts. *Perry v. Thomas*, 482 U.S. 483, 489 (1987). The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2.

In *Piper Funds*, the Eighth Circuit considered a case wherein a district court had conditionally certified a settlement class and enjoined arbitration by any class members. *In re Piper Funds, Inc., Institutional Government Income Portfolio Litigation*, 71 F.3d 298, 300 (8th Cir. 1995). The Eighth Circuit reversed, finding that a putative class member had a "contractual right" to arbitrate its claims and that

the "contractual and statutory right to arbitrate may not be sacrificed on the altar of efficient class action management." *Id.* at 303. It further reasoned that "it may even assist the settlement process to have arbitration opt outs identified before the final hearing on settlement approval." *Id.* Finally, the Eighth Circuit concluded that the district court had violated the FAA and abused its discretion when it enjoined the arbitration to which the putative class member was contractually entitled. *Id.*

Courts throughout the country have followed *Piper Funds* in applying the FAA to class action settlements involving claims governed by an arbitration agreement. *See Ahlbrand v. Keeley*, 1998 WL 2001152, at *1 (Mich. App. Jan. 9, 1998) (granting class member opt-out of class to pursue arbitration because "the declaration filed . . . demonstrates a clear intent to choose arbitration over participation in the class action") (citing *Piper Funds*); *Arnold*, 2012 WL 266452, at *2 (finding that the FAA prohibits courts from enjoining arbitration in class action proceedings) (citing *Piper Funds*); *Stott v. Capital Financial Services, Inc.*, 277 F.R.D. 316, 341 (N.D. Tex. 2011) ("If the Court were considering a non-'limited fund' settlement that provided class members the ability to opt out, the Court would not be willing to sacrifice individual class members' contractual right to arbitrate upon the altar of efficient class action management.").

Here, the Arbitration Claimants signed the Customer Service Agreement, which contained an arbitration clause, and have unambiguously elected to pursue their claims in arbitration.

### 2. The proposed settlement cannot satisfy the requirements for preliminary approval under Rule 23.

Rule 23(a) allows certification of a class only where the "claims or defenses of the representative parties are typical" of the entire class, and "the representative parties will fairly and adequately protect the interests of the class."

For this reason, Courts routinely exclude individual claimants with agreements to arbitrate from certified classes. *See, e.g., Eaton v. Ascent Res.-Utica, LLC*, 2024 WL 1458457, at *5 (S.D. Ohio Apr. 4, 2024) ("the Court finds that good cause exists to modify the class definition to exclude members of the class whose leases included arbitration agreements"); *In re T-Mobile Customer Data Security Breach Litigation*, 2023 WL 11878508, at *4 (W.D. Mo. June 29, 2023) (certifying class excluding arbitration claimants), *rev'd in part on other grounds*, 111 F.4th 849 (8th Cir. June 11, 2024)); *Morangelli v. Chemed Corp.*, 2010 WL 11622886, at *3 (E.D.N.Y. June 15, 2010) ("It would be a disservice to judicial efficiency to certify all technicians, when those with arbitration agreements are subject to additional, prolonging [sic] motion practice which will likely disqualify them from the class.").

In *Morganelli*, the district court specifically noted that claims subject to arbitration "are subject to unique defenses that cannot be bifurcated or subclassed

away." *Id.* (citing *Barnett v. Countrywide Credit Indus.*, 2002 WL 1023161, at \*2 (N.D. Tex. May 21, 2002)). AT&T here is similarly contractually obliged to defend Arbitration Claimants' claims in arbitration rather than federal court, creating unique conditions unsuitable for class treatment.

Arbitration Claimants' unwaived arbitration rights defeat typicality and adequacy unless they are excluded. Though Arbitration Claimants are pursuing similar underlying claims, there is a fundamental difference between the proposed class representatives, on the one hand, and the AT&T users who have actively pursued arbitration against the company, on the other. Specifically, all of the proposed class representatives waived the right to enforce those provisions by filing this action.

Where a party that might otherwise be included in a class opts to arbitrate rather than litigate his claim, courts should respect that decision and the right to arbitration and exclude the individual from the class. While it is typically a class defendant, rather than an absent putative class plaintiff, who seeks to enforce such a right, this has no bearing on the conclusion, because a contractual arbitration right can only be waived if both parties agree. The Arbitration Claimants here, and others like them, expressly refused to waive their arbitration rights and put AT&T on notice of their intent to arbitrate many months ago. AT&T's desire to quickly settle their

claims cannot unilaterally extinguish their rights, and a class cannot be certified that includes claimants whose claims are unambiguously bound for arbitration.[2]

The settlement does not differentiate between AT&T customers with no right (or a voluntarily waived right) to arbitrate and claimants who have actively sought to enforce their contractual right to arbitration. This conflict creates a significant and irreconcilable difference between Arbitration Claimants and the proposed class representatives, because each set of AT&T customers is faced with economic and practical concerns at odds with the other. Under such circumstances, class certification would effect "a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected" and is thus inappropriate. *Amchem Prods. v. Windsor*, 521 U.S. 591, 627 (1997).

Courts nationwide have rejected class definitions and settlements where analogous split interests exist. *In re Joint E. & S. Dist. Asbestos Litig.* is instructive. 982 F.2d 721 (2d Cir. 1992) *opinion modified on reh'g*, 993 F.2d 7 (2d Cir. 1993). There, a class settlement treated individuals injured by asbestos and co-defendant manufacturing companies as part of the same class with respect to recovery from a common fund. The Second Circuit found that this arrangement "violates the

---

[2] This is true even where a settling defendant claims financial hardship. *Cf. In re Trans Union Corp. Privacy Litig.*, 2009 WL 4799954, at *2 (N.D. Il. Dec. 9, 2009), modified and remanded, 629 F.3d 741 (7th Cir. 2011), (approving settlement which allowed two years for class members to bring individual claims even though limited funds were available and potential liability dwarfed defendants' ability to pay).

typicality and adequacy requirements of Rule 23(a)(3) and (4)," because of the clearly differing interests. 982 F.2d at 739. A court commits reversible error when it "alter[s]" "the rights of a plaintiff class [where] consent to the resulting settlement [was] given by representatives who purport to represent the undifferentiated class of plaintiffs as a whole, rather than the interests of each of the subclasses whose rights are being altered." *Id.*

In a second, related appeal, the Second Circuit went further. There, it addressed the objections of a category of claimants who had secured judgments against the defendant prior to the class action settlement. The court specifically noted, "[i]t may well be . . . that [judgment-holding] claimants should never have been included within the class in the first place." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 151, 156 (2d Cir. 1994) ("*E&S II*") (citing *Piambino v. Bailey*, 610 F.2d 1306, 1329 (5th Cir. 1980)). Indeed, in *Piambino*, this Circuit reached the same conclusion regarding judgment-holder class members: "it would seem that those . . . people never should have been included in the class." 610 F.2d at 1330.

The arbitration rights actively asserted by Arbitration Claimants are, likewise, a divergent interest from non-arbitrating members of the class. The right to arbitrate is an extant, certain, valuable right, that can make it "economically irrational for arbitration claimants with legitimate claims to participate in the proposed settlement." *Arena v. Intuit, Inc.*, 2021 WL 834253, at *7 (N.D. Cal. Mar. 5, 2021).

11

Individuals who possess and have pursued such a valuable right, particularly prior to settlement of the class action, cannot be adequately represented by the proposed plaintiffs here, and "should have never been included in the class." *Piambino*, 610 F.2d at 1330.

The class representatives' claims are also not typical because they fail to assert valuable claims pursued by the Arbitration Claimants. *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 435 (S.D. Tex. 2010) ("The proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class . . ."). Specifically, thousands of Arbitration Claimants pursue claims under the California Consumer Privacy Act, Cal. Civ. Code § 1798.150, but the named plaintiffs do not pursue this claim and the settlement agreement does not adequately value to the statutory damages recoverable under this claim, even though the settlement class would waive any right to bring this claim.

### 3. The settlement agreement's wet ink opt-out provision does not address the threat to Arbitration Claimants' rights.

Finally, the settlement agreement's opt-out provision, which requires a wet ink signature, is designed to be a hurdle for those pursuing arbitration. Opt-out rights in class settlements are evaluated as a matter of due process. *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 n.3 (1985). But AT&T is *already* on notice of thousands of individuals who have retained counsel and intend to arbitrate their claims, obviating any due process concerns. Moreover, while wet ink opt out requirements

12

in class action settlements are generally unobjectionable in the Fifth Circuit, Arbitration Claimants are aware of no case law requiring individuals represented by counsel and pursuing arbitration to opt out using a wet ink signature.

The wet ink opt-out process creates an additional barrier to arbitration and injects confusion into the process for individuals represented by counsel and pursuing claims in arbitration. The very same opt-out requirement was the basis for denying settlement approval in a class action against Intuit. *Arena v. Intuit*, 2021 WL 834253, at *10 (N.D. Cal. March 5, 2021). There, thousands of consumers sough to arbitrate their claims against Intuit, while others brought class claims in federal court. After Intuit succeeded in compelling the class plaintiffs to arbitrate, Intuit and the class plaintiffs reached a proposed class settlement.

Like the settlement before this Court, the Intuit settlement sought an injunction against arbitrations and would have required that class members comply with burdensome opt-out procedures. The judge refused to grant preliminary approval, finding the settlement did not meet basic standards of fairness, reasonableness, or adequacy. With respect to the opt-out requirements, Judge Charles R. Breyer stated:

> The Court concludes that the opt out requirements in the proposed settlement are unduly burdensome given the unique circumstances of this litigation . . . requiring these class members to opt out by mailing a hard copy letter with a "wet-ink" signature serves little purpose but to burden those who wish to opt out. In a world where Intuit can not only administer settlement claims electronically, but also facilitate safe,

13

legal tax-filing electronically, Intuit can assuredly process opt outs electronically. If electronic signatures are enough for Intuit and the IRS during tax season, they should be enough for Intuit here.

*Id.*

As in *Intuit*, AT&T has no problem with consumers signing up for services electronically, accepting the terms of the CSA electronically, or even accepting claims electronically.[3] To require individuals pursuing claims in arbitration to opt-out using a "wet-ink" signature on a mail-in form that is not even provided to them "serve[s] little purpose but to burden those who wish to opt out." *Intuit*, 2021 WL 834253, at *10.

Further, by inserting a clause that specifically excludes "mass" or "class" opt-outs, AT&T's motives are obvious: prevent Arbitration Claimants from pursuing their right to arbitration and head off their pursuit of claims under the CCPA. Accordingly, if the Court does not exclude Arbitration Claimants from the class definition, they respectfully request that the Court modify the settlement agreement's opt-out provisions and allow counsel to opt out on behalf of individuals. Should the Court allow the Arbitration Claimants to opt-out through their separately retained counsel, the undersigned counsel will ask each Arbitration Claimant to

---

[3] *See* Settlement Agreement, ECF 283-1, ¶ 164 (stating that "Claims Forms may be submitted online through the Settlement Website…").

decide whether to participate in the settlement and then communicate that choice to the Court.

## IV.    CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, this class settlement should exclude "[a]ll individuals who . . . have [] (1) filed or served a written arbitration demand or petition [to Defendant] . . . [and/]or (2) provided written notice to [Defendant] of their intent to pursue arbitration" from the definition of the class. *In re T-Mobile Customer Data Security Breach Litigation*, 2023 WL 11878508, at *4. Though the Court in *T-Mobile* did not analyze this exclusion, the purpose was clear: to avoid the typicality and adequacy problems described above and to provide individuals who had affirmatively asserted their arbitration rights the opportunity to pursue arbitration according to the applicable contract. Under such circumstances, Arbitration Claimants and those similarly situated must be excluded from the class.

Dated: June 13, 2025                        Respectfully submitted,

                                            */s/ Sarah E. Hillier*
                                            Sarah E. Hillier (SBN 24130087)
                                            David M. Berger (*pro hac vice*)
                                            **GIBBS MURA LLP**
                                            1111 Broadway, Suite 2100
                                            Oakland, CA 94607

                                            Norman E. Siegel (*pro hac vice*)
                                            **STUEVE SIEGEL HANSON LLP**
                                            460 Nichols Road, Suite 200

15

Kansas City, MO 64112
(816) – 714-7100 – telephone
siegel@stuevesiegel.com

*Attorney for Arbitration Claimants*


## CERTIFICATE OF WORD COUNT

I hereby certify that the word count contained in this document, which includes the footnotes, is: 3,626.

By: */s/  Sarah E. Hillier*
Sarah E. Hillier


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel of record in this cause on June 13, 2025, in accordance with the Federal Rules of Civil Procedure.

By: */s/  Sarah E. Hillier*
Sarah E. Hillier

16