## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **IN RE: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION**<br><br>*This document relates to All Cases.* | Civil Action No. 3:24-cv-00757-E<br><br>MDL DOCKET NO. 3:24-md-03114-E |

## ABL ARBITRATION CLAIMANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO INTERVENE AND FOR RECONSIDERATION OF THE PRELIMINARY APPROVAL ORDER

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................7

II. FACTUAL BACKGROUND ..........................................................9

III. LEGAL ARGUMENT..................................................................11

  A.   The Preliminary Approval Order Should Be Reconsidered ..........................12

    1.   Including The Arbitration Claimants In The Class Violates The Fed. R. Civ. P. 23 Typicality and Adequacy Requirements...................................................12

    2.   Sending Notice to Proposed Class Members Who Are Parties to Arbitration Agreements is Reversible Error. ......................................................................15

    3.   The All Writs Act Does Not Confer Authority To Enjoin The Arbitrations Claimants' Claims In Derogation Of Their Right To Arbitration Pursuant to the Federal Arbitration Act ..................................................................................18

    4.   The Improper Opt-Out Requirements Are Overly Burdensome To Arbitration Claimants.........................................................................................23

      a. Mass Opt Outs Should Be Permitted, Particularly So That Claimant's Counsel Can Opt Out On Behalf Of Already Represented Parties...................24

      b. Requiring a Wet Signature Is Unduly Burdensome. ………………………………………………………………………26

  B.   The Arbitration Claimants May Intervene As Of Right. ...............................27

IV. CONCLUSION AND REQUEST FOR RELIEF ..........................................30

# TABLE OF AUTHORITIES

Cases                                                                          Page(s)

*Abernathy v. DoorDash, Inc.*,
   438 F. Supp. 3d 1062 (N.D. Cal. 2020) ................................................................ 1

*Abernathy*,
   438 F.Supp.3d at 1967 ........................................................................................ 21

*Al Rushaid v. Nat'l Oilwell Varco, Inc.*,
   814 F.3d 300 (5th Cir. 2016) .............................................................................. 2

*Arena v. Intuit Inc.*,
   No. 19-CV-02546-CRB, 2021 WL 834253 (N.D. Cal. Mar. 5, 2021)........ ……11

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ........................................................................................... 1

*Barnett v. Countrywide Credit Indus.*,
   2002 WL 1023161 (N.D. Tex. May 21, 2002)...................................................... 8

*Brumfield v. Dodd*,
   749 F.3d 339 (5th Cir. 2014) ............................................................................ 23

*City of San Benito v. Rio Grande Valley Gas Co.*,
   109 S.W.3d 750 (Tex. 2003) ............................................................................ 19

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ...................................................................................... 2, 3

*Eaton v. Ascent Res.-Utica*, LLC,
   2024 WL 1458457 (S.D. Ohio Apr. 4, 2024) ...................................................... 7

*Edwards v. City of Houston*,
   78 F.3d 983 (5th Cir. 1996) ....................................................................... 23, 24

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) .................................................................................. 10, 11, 13

*In re 23andMe, Inc. Customer Data Security Breach Litig.*,
  2024 WL 4982986 (N.D. Cal. Dec. 4, 2024) ....................................................... 17

*In re A&D Ints., Inc.*,
  33 F.4th 254 (5th Cir. 2022) ................................................................. 11, 12, 13

*In re BP, PLC Sec. Litig.*,
  758 F. Supp. 2d 428 (S.D. Tex. 2010) .................................................................. 8

*In re Google Assistant Privacy Litig.*,
  2025 WL 510435 (N.D. Cal. Feb. 14, 2025) ....................................................... 20

*In re JPMorgan Chase & Co.*,
  916 F.3d 494 (5th Cir. 2019) ...........................................................................11, 12

*In re Mirant Corp.*,
  613 F.3d 584 (5th Cir. 2010) ............................................................................... 7

*In re Oil Antitrust Litig.*,
  570 F.3d 244 (5th Cir. 2009) .............................................................. 22, 23, 24

*In re Regions Morgan Keegan Open-End Mutual Fund Litig.*,
  2009 WL 10664432 (W.D. Tenn. Sep. 30, 2009) ................................................ 17

*In re Spiros Partners, Ltd.*,
  816 F. App'x 985 (5th Cir. 2020) ......................................................................11

*In re T-Mobile Customer Data Security Breach Litigation*,
  2023 WL 11878508 (W.D. Mo. June 29, 2023) .................................................... 7

*In re Watkins*,
  271 F.2d 771 (5th Cir. 1959) .............................................................................. 14

*Kennedy v. Equifax Info. Svs. LLC*,
  2023 WL 8656926 .............................................................................................. 21

*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004) .......................................................................... 16

*La Buy v. Howes Leather Co.*,
  352 U.S. 249 (1957) ........................................................................... 14

*Lease Oil*,
  570 F.3d ...................................................................................... 24, 25

*Morangelli v. Chemed Corp.*,
  2010 WL 11622886 (E.D.N.Y. June 15, 2010) ..................................... 8

*Nat'l Fed. of the Blind v. Container Store, Inc.*,
  359 F. Supp. 3d 147 (D. Mass. 2019) ............................................... 16

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
  732 F.2d 452 (5th Cir. 1984) ........................................................... 23

*O'Conner*,
  2013 WL 6407583 ........................................................................... 19

*Pa. Bureau of Correction v. U.S. Marshals Serv.*,
  474 U.S. 34 (1985) ........................................................................... 15

*Piambino v. Bailey*,
  610 F.2d 1306 (5th Cir. 1980) ........................................................... 9

*Protection, Inc. v. Henson*,
  537 U.S. 28 (2002) ........................................................................... 17

*Rodney v. Piper Capital Mgmt. (In re Piper Funds*,
  71 F.3d 298 (8th Cir. 1995) .................................................... 2, 15, 16

*Sierra Club v. Epsy*,
  18 F.3d 1202 (5th Cir. 1994) ...................................................... 22, 25

*Singh v. Duane Morris LLP*,
  538 F.3d 334 (5th Cir.2008) ........................................................... 14

*Stell v. Savannah-Chatham County Bd. of Ed.*,
  318 F.2d 425 ................................................................................... 14

*Stevenson v. Tyco Int'l (US) Inc. Supp. Exec. Ret. Plan*,
  2006 WL 2827635 (S.D.N.Y. Sep. 29, 2006)...................................................... 17

*Texas v. Real Parties in Interest*,
  259 F.3d 387 (5th Cir.2001) ................................................................ 14

*Texas v. United States*,
  805 F.3d 653 (5th Cir. 2015) ............................................................... 22

*TracFone Wireless, Inc. v. Simply Wireless, Inc.*,
  2017 WL 5636281 (S.D. Fla. Nov. 22, 2017) ................................................ 16

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) ......................................................................... 25

*United States v. Eberhard*,
  2004 WL 616122 (S.D.N.Y. Mar. 30, 2004) ................................................. 17

Statutes

9 U.S.C.S § 2.......................................................................... 2, 3, 14

15 U.S.C.A. § 7001(a)(2) ...................................................................... 21

28 U.S.C. § 1651 .............................................................................. 13

Cal. Civ. Code § 1798.150 .................................................................... 8

Rules

Fed. R. Civ. P. 23............................................................................. 7

Fed. R. Civ. P. 23(a) .......................................................................... 7

Federal Rule of Civil Procedure 60(b)...................................................... 5

Federal Rule of Civil Procedure Rule 24(a) ............................................. 5, 6

# I. INTRODUCTION

In *AT&T Mobility LLC v. Concepcion* 563 U.S. 333 (2011), AT&T persuaded the Supreme Court to enforce a contractual requirement to arbitrate mass claims and prohibit litigating them via class action. *Id.* at 352. Now that arbitration of such claims is no longer convenient for AT&T, the company seeks to force arbitration claimants back into a class action. Such opportunistic hypocrisy must, at bare a minimum, be analyzed in an adversarial proceeding. *Cf. Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020) ("in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the [thousands of claimants], to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.").

For more than two decades, to insulate itself from class actions, AT&T has required every customer to sign a Customer Service Agreement ("CSA") before obtaining any services. That CSA governs the use of AT&T's services and contains an arbitration clause requiring that nearly all disputes be resolved through arbitration rather than litigation. The clause is 100% reciprocal: customers agree to take all qualifying claims to arbitration in exchange for AT&T agreeing to take all qualifying claims to arbitration. ECF 297-1 at 7 ("you and AT&T will neither file a lawsuit (in any court other than a small claims court), nor pursue or participate in an action seeking relief on behalf of others").

AT&T used this arbitration clause to force its customers to resolve disputes in arbitration—not court—and waive all rights to pursue class actions. But now it finds itself in a case where the arbitration clause amplifies rather than limits its exposure risk. Rather than lie in the bed it made, AT&T concocted a settlement that impermissibly attempts to wipe out the arbitration claims of over 57,000 individuals who have notified AT&T of their intent to arbitrate their data breach claims. This about face by AT&T, in violation of its own contract of adhesion, cannot be endorsed, particularly without an adversarial proceeding.

Arbitration Claimants have a contractual and statutory right to opt out of settlement and seek arbitration. The Federal Arbitration Act ("FAA") explicitly states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."9 U.S.C.S § 2. The Supreme Court has instructed lower courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Those principles apply in equal force here, even if it increases piecemeal litigation. *See Rodney v. Piper Capital Mgmt. (In re Piper Funds),* 71 F.3d 298, 303 (8th Cir. 1995) (holding that a valid arbitration agreement must be enforced when a class member elects to opt out of the settlement and pursue arbitration.); *Al Rushaid v. Nat'l Oilwell Varco, Inc*., 814 F.3d 300, 306 (5th Cir. 2016) (enforcing arbitration clause, finding that piecemeal litigation "is an inevitable and permissible

consequence" where one of multiple [plaintiffs] asserts a right to arbitrate")[1]). AT&T should not be allowed to break its agreement to pursue all claims in arbitration, and drag parties to the arbitration agreement that it insisted upon into court.

## II. FACTUAL BACKGROUND

More than 57,000 individuals ("ABL Arbitration Claimants" or "Arbitration Claimants") have retained Aylstock, Witkin, Kreis & Overholtz, PLLC, Bradley Grombacher, LLP, and Levin Law, P.A. ("Arbitration Counsel") to pursue individual arbitration claims against AT&T under American Arbitration Association (AAA) rules, as contractually required by AT&T's Customer Service Agreement (CSA). Declaration of Bryan Aylstock ("Aylstock Decl.") ¶ 1. The CSA, governing AT&T's relationship with customers since at least 2001, includes a binding arbitration clause governed by the Federal Arbitration Act (FAA), 9 U.S.C. § 2. *See* ECF 297-1 at 7. Arbitration Claimants expressly hired Arbitration Counsel to bring their claims in arbitration and not in court, with thousands signing written authorizations to opt out of any class. Aylstock Decl. ¶ 4. As instructed by each Arbitration Claimant, beginning September 2024, Arbitration Claimants and AT&T began discussing the arbitrations and Arbitration Counsel notified AT&T of their intent to initiate claims, listing each individual and detailing claims arising from the data breaches, including harm from AT&T's failure to protect personally identifiable information and

---

[1] Citations and quotations are omitted here and hereinafter unless otherwise indicated.

customer proprietary network information. *Id.* ¶¶ 5–6. AT&T responded to these notices, and counsel continued providing updated claimant lists through May 2025. *Id.* ¶¶ 6–8.

Arbitration Claimants and AT&T engaged in extensive pre-arbitration negotiations, including a multi-day mediation attended by Arbitration Counsel and class counsel. *Id.* ¶¶ 6**,** 9–10. Mediation failed to resolve the Arbitration Claimants' claims. *Id.* ¶ 9. On June 3, 2025, the Arbitration Claimants filed a notice indicating that they intended to object to the motion for preliminary approval of the settlement and conditional certification of the class. ECF 287. On June 23, 2025, prior to the entry of the Court's preliminary approval of a proposed class action settlement (ECF No. 298), certifying the AT&T 1 Settlement Class and AT&T 2 Settlement Class, (the "Preliminary Approval Order") Arbitration Counsel filed the first batch of approximately 5,200 arbitration demands with the American Arbitration Association ("AAA"). Aylstock Decl. ¶ 10. Prior to the entry of the Preliminary Approval Order, Arbitration Counsel intended to file the balance of Arbitration Claimants' claims but cannot do so given the pending injunction against arbitrating those claims. *Id.* ¶ 11.

On June 20, 2025, the Court granted preliminary approval for class certification, with a combined class size exceeding 100 million, without excluding the Arbitration Claimants. The pending class settlement does not exclude the Arbitration Claimants, as class and defense counsel typically do in cases where there

are both pending class and arbitration claims. The Court approved a Notice Program, that requires a handwritten "wet" signature, detailed personal and account information, and must be individual, prohibiting any kind of group opt-outs, even from counsel acting on behalf of retained clients. Most problematically, the order enjoins putative Settlement Class members from arbitrating claims pending final approval.

### III. LEGAL ARGUMENT

Under Federal Rule of Civil Procedure 60(b), the Court's preliminary approval order ("Order") should be reconsidered to prevent manifest injustice. Arbitration Claimants seek to intervene here under Federal Rule of Civil Procedure Rule 24(a), because the Order improperly extinguishes their contractual rights, forcing them to make a timely motion to avoid harm to their legal interests. These are important issues at this stage, particularly with a proposed settlement. In *Arena v. Intuit Inc.*, No. 19-CV-02546-CRB, 2021 WL 834253 (N.D. Cal. Mar. 5, 2021), after granting the motion of arbitrating plaintiffs to intervene, the court specifically emphasized the danger of pre-certification settlements being used to extinguish or compromise existing arbitration claims. Id. at *8–12. During and after preliminary approval, the Court has a duty to scrutinize a proposed settlement's fairness, especially when the settlement impairs the rights of absent or unrepresented parties. *Id.*

### A.     The Preliminary Approval Order Should Be Reconsidered

The proposed settlement here similarly improperly binds hundreds of thousands—if not millions—of consumers who have binding and mandatory arbitration agreements with AT&T requiring that the claims against AT&T can be brought only in arbitration. The settlement has four central problems. First, the putative Class Representatives are not typical of and cannot adequately represent those Plaintiffs. Second, class notice may not be circulated to parties subject to arbitration agreements under Fifth Circuit law. Third, parallel arbitrations cannot be stayed under the All Writs Act or any other authority. And fourth, the proposed class has inadequate and unduly burdensome opt out procedures.

### 1.  Including The Arbitration Claimants In The Class Violates The Fed. R. Civ. P. 23 Typicality and Adequacy Requirements.

The preliminarily approved settlement class fails to exclude Arbitration Claimants. This creates an irreparable conflict of interest between those wanting to arbitrate and the rest of the class. By filing the class action, proposing conditional certification and settlement, and utilizing the judicial process, the putative Class Representatives have waived (or opted out of) their arbitration rights. *See In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010). As such they are not typical of and cannot adequately represent members of the class who have or are exercising arbitration rights.

Classes are only certified where the "claims or defense of the representative parties are typical" of the entire class. Fed. R. Civ. P. 23(a). Arbitration clauses make the value and nature of key class claims too different from those of other class members. *See, e.g., Eaton v. Ascent Res.-Utica*, LLC, 2024 WL 1458457, at *5 (S.D. Ohio Apr. 4, 2024) ("the Court finds that good cause exists to modify the class definition to exclude members of the class whose leases included arbitration agreements"); *In re T-Mobile Customer Data Security Breach Litigation*, 2023 WL 11878508, at *4 (W.D. Mo. June 29, 2023) (certifying massive data breach class excluding arbitration claimants), *rev'd in part on other grounds*, 111 F.4th 849 (8th Cir. June 11, 2024)); *Morangelli v. Chemed Corp.*, 2010 WL 11622886, at *3 (E.D.N.Y. June 15, 2010) ("It would be a disservice to judicial efficiency to certify all technicians, when those with arbitration agreements are subject to additional, prolonging [sic] motion practice which will likely disqualify them from the class."); *Arena*, 2021 WL 834253, at *10.[2]

The putative Class Representatives' claims are also not typical because they fail to assert valuable claims pursued by the Arbitration Claimants. *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 435 (S.D. Tex. 2010). Specifically, thousands of Arbitration Claimants pursue claims under the California Consumer Privacy Act,

---

[2] In *Morganelli*, the district court specifically noted that claims subject to arbitration "are subject to unique defenses that cannot be bifurcated or subclassed away." *Id.* (citing *Barnett v. Countrywide Credit Indus.*, 2002 WL 1023161, at *2 (N.D. Tex. May 21, 2002)). AT&T here is similarly contractually obliged to arbitrate Arbitration Claimants' claims, creating unique conditions unsuitable for class treatment.

Cal. Civ. Code § 1798.150, but the named plaintiffs do not pursue this claim and the settlement agreement does not adequately value the statutory damages recoverable under this claim, even though the settlement class would waive any right to bring this claim.

Similarly, the putative Class Representatives do not and cannot adequately represent the Arbitration Claimants. The proposed Class Representatives, who have waived their right to arbitrate, have fundamentally different options and interests from the AT&T users who have actively noticed and/or pursued arbitration against the company. Specifically, the right to arbitrate is an extant, certain, valuable right, that can make it "economically irrational for arbitration claimants with legitimate claims to participate in the proposed settlement." *Arena* 2021 WL 834253, at *7. Individuals who possess and have pursued such a valuable right, particularly prior to final approval of the settlement of the class action, cannot be adequately represented by the proposed plaintiffs choosing to forfeit it here, and "never should have been included in the class." *See Piambino v. Bailey*, 610 F.2d 1306, 1330 (5th Cir. 1980). The proposed settlement underscores the problems arising from the difference in interests between these parties. The proposed settlement does not assess the value to the claims of Arbitration Claimants, who have done more work and have cases that are more threatening to AT&T, vis-à-vis the claims of other absent class members, who have done nothing and whose claims create less exposure risk for

14

AT&T. Separate and apart from the precise valuations of those different claims, the fact that the proposed settlement does not even attempt to assess the value of each makes it undeniably clear that the putative class representatives are not actually representing the entire class.

This Court should respect each individual's right to arbitrate and exclude those who have notified AT&T of their intent to pursue arbitration from the class. While it is typically a class defendant, rather than an absent putative class plaintiff, who seeks to enforce such a right, this has no bearing on the conclusion. The contractual language is reciprocal as to each party's agreement to arbitrate all claims (ECF 297-1 at 7) and an arbitration right can only be waived if both parties agree. The Arbitration Claimants here, expressly refused to waive their arbitration rights and put AT&T on notice many months ago. AT&T's desire to quickly settle their claims cannot unilaterally extinguish their rights, and it is not proper to simply throw them into a class full of differently situated plaintiffs with different interests. .

### 2.    Sending Notice to Proposed Class Members Who Are Parties to Arbitration Agreements is Reversible Error.

The Fifth Circuit has prohibited the circulation of class notice to individuals with arbitration agreements. As the Supreme Court has held, a district court's discretion to authorize a notice program is narrow: "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the

appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989). In that framework, a district court cannot authorize the circulation of notice to persons who have no claims that can properly be resolved by class or collective action, such as potential plaintiffs whose claims are subject to arbitration agreements. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019) (*citing Hoffmann-La Roche*, 493 U.S. at 174).

Arbitration agreements like those at issue here were the fatal problem in *In re JPMorgan Chase & Co.*, where the Fifth Circuit found that a district court erred in authorizing the circulation of notice to claimants subject to arbitration clauses. 916 F.3d at 501; *In re A&D Ints., Inc.*, 33 F.4th 254, 259 (5th Cir. 2022) (reversing a notice order because the district court must consider "whether those receiving notice will be able to 'ultimately participate'" in the case). When the record shows that a case involves arbitration clauses that would preclude actual class membership, "it is error for a district court to order notice to be sent."[3] *In re JPMorgan Chase*, 916 F.3d at 502–03; *accord In re Spiros Partners, Ltd.*, 816 F. App'x 985, 986 (5th Cir. 2020) ("it is error for a district court to send notice of a collective action to putative members who are subject to a valid arbitration agreement"). While the Fifth Circuit originally stopped short of granting a writ of mandamus on this issue in *In re*

---

[3] The Court can also interpret the scope of a contract or take additional evidence on this issue before issuing conditional certification. In that scenario, "[w]here a preponderance of the evidence shows that the employee has entered into a valid arbitration agreement, it is error for a district court to order notice to be sent to that employee as part of any sort of certification." *In re JPMorgan Chase*, 916 F.3d at 503.

*JPMorgan Chase*, it subsequently granted that writ in a later case where, notwithstanding its clear guidance, notice was improperly sent to members of arbitration agreements:

> In sum, the district court apparently recognized that the arbitration agreement would prevent the opt-in plaintiffs from ultimately participating in the collective action, but approved class notice anyways. This was not merely an erroneous exercise of discretion. In light of JPMorgan, it was wrong as a matter of law. Because the district court clearly and indisputably erred, mandamus relief is appropriate.

*In re A&D Ints., Inc.*, 33 F.4th 254, 259 (5th Cir. 2022).

In this context, notice cannot be provided to the proposed plaintiffs here. The record in this case is clear that the overwhelming majority of plaintiffs are subject to arbitration agreements.[4] *See, e.g.*, ECF 297 at 2, 297-1 at 7. *In re JPMorgan Chase & Co.*, 916 F.3d at 501. The motion for preliminary approval of class action settlement acknowledges the existence of pending arbitrations, but does not attempt to address them, or the fact that its proposed class members are not appropriately class members. ECF 283 at 60. It does not even propose including materials in the notice program about the arbitrations that class members already selected as the forum in which they would litigate these disputes.

The arbitration agreements cannot be ignored here. Even a potential waiver argument is already precluded by controlling authority. *In re A&D Ints.*, 33 F.4th at

---

[4] The information available to the intervenors here indicates that the overwhelming majority of absent class members (other than former subscribers from long ago) and all Arbitration Claimants, are parties to arbitration agreements.

258. Named plaintiffs cannot waive the arbitration rights of absent class members, those class members have not waived those rights, and—to the contrary—thousands of them have already sought to exercise those rights. Moreover, in the eyes of undecided claimants, sending them a court endorsed class notice form could create "the appearance of judicial endorsement of the merits of the [class] action" vis-à-vis an arbitration—even though such an action could not possibly succeed on the merits. *See Hoffmann-La Roche*, 493 U.S. at 174. The class solution would also likely result in a significantly lower recovery than arbitration (because a disputed class could not possibly prevail on the merits). In that context, circulating notice to those claimants violates the "judicial neutrality" that courts are supposed to maintain in adjudicating notice. *Id.* Pursuant to multiple clear directives from the Fifth Circuit, approving the noticed program proposed by class counsel is reversible error.

### 3. The All Writs Act Does Not Confer Authority To Enjoin The Arbitrations Claimants' Claims In Derogation Of Their Right To Arbitration Pursuant to the Federal Arbitration Act .

The Court does not have jurisdiction to stay the arbitrations. The only possible way it could stay the arbitrations would be under the All Writs Act, 28 U.S.C. § 1651 ("AWA"), which it cannot do. Under the AWA, the standard for invoking a stay is exceptionally stringent. For over 65 years, the Fifth Circuit has held that it is meant to be used only in "exceptional" or "extreme cases." *In re Watkins*, 271 F.2d 771,

773 (5th Cir. 1959); *see also, Stell v. Savannah-Chatham County Bd. of Ed.*, 318 F.2d 425. 426 (5th Cir. 1963) (the AWA "is meant to be used only in the exceptional case where there is clear abuse of discretion or usurpation of judicial power."). According to the Fifth Circuit, the AWA should be applied "only under 'such extraordinary circumstances ... that indisputably demand such a course of action as absolutely necessary to vouchsafe the central integrity of the federal court judgment." *Singh v. Duane Morris LLP*, 538 F.3d 334, 341 (5th Cir.2008).

There are no exceptional or extreme circumstances here that would come close to necessitating invocation of the AWA to stay the noticed and filed arbitrations. Beginning in September 2024, Arbitration Counsel notified AT&T of their intent to initiate arbitrations and in June 2025, Arbitration Counsel begin filing the first batch of claims with the AAA, pursuant to the terms of the AT&T CSA. AT&T's own drafted CSA expressly states that the arbitration provision at issue is governed by the Federal Arbitration Act, 9 U.S.C. 2, *et seq.* (the "FAA"), and provides for the resolution of all disputes arising under the CSA to be resolved in arbitration. Accordingly, neither the Arbitration Claimants nor AT&T ever sought to adjudicate any of the Arbitration Claimants' claims in any state or federal court. Likewise, at no point has any party asserted—much less adduced any evidence— that the Arbitration Claimants' ability to arbitrate their claims presents any threat to the Court's jurisdiction or attempts to usurp its judicial power.

This clear and unmistakable concession that the FAA governs and forces the Arbitration Claimants into an arbitral forum—and out of court—is dispositive. AT&T cannot selectively determine when it wants to abide by its own arbitration agreements that it foisted on its customers. The Supreme Court has long held that:

> The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. ***Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling***. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, ***it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate***.

*Pa. Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) (Powell, J.) (emphasis added). Because the FAA specifically governs the adjudication of the Arbitration Claimants' claims in arbitration, and because the Arbitration Claimants' claims presents no threat of usurpation of the Court's judicial authority, the Court cannot issue a writ under the AWA, in noncompliance with the FAA, to enjoin arbitrations.

*In re Piper Funds,* 71 F.3d 298, is on point. There, the Eight Circuit held that the district court abused its discretion when it enjoined an arbitration claimant under the AWA from pursuing its claims in arbitration as a result of a class action settlement. *Id.* at 303. The Eight Circuit cited three separate bases why the district court had abused its discretion. *Id.* First, it found that "[t]he district court's injunction significantly frustrated Park Nicollet's contractual rights, as protected by the FAA."

20

Next, it held that the "contractual and statutory right to arbitrate may not be sacrificed on the altar of efficient class action management." *Id*. Finally, it held that it "do[es] not accept the class action parties' conclusory assertion that immediate arbitration by Park Nicollet (and perhaps others) will frustrate their class action settlement." *Id*. In so holding, the Eighth Circuit specifically noted that, "[a]lthough the court supervising a class action has wide discretion to control a class action, including the opt-out process, that discretion must be exercised consistent with the policies and principles of the FAA when a class member with an immediate right to arbitrate its claim seeks to opt out." *Id.* at 304. *See also, Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1111 (11th Cir. 2004) (overturning district court's injunction, issued pursuant to the AWA, against arbitration of arbitrable claims); *Nat'l Fed. of the Blind v. Container Store, Inc.*, 359 F. Supp. 3d 147, 150 (D. Mass. 2019) ("hypothetical harm of future arbitration . . . does not rise to the level of 'critical' or 'exigent circumstances' necessary to invoke AWA); *TracFone Wireless, Inc. v. Simply Wireless, Inc.*, 2017 WL 5636281, at *3 (S.D. Fla. Nov. 22, 2017) ("The All Writs Act does not authorize this federal court to enjoin the arbitration absent extraordinary circumstances, and this Court does not agree that the hypothetical risk of inconsistent rulings warrants such an act in this case."); *In re Regions Morgan Keegan Open-End Mutual Fund Litig.*, 2009 WL 10664432, at **4-5 (W.D. Tenn. Sep. 30, 2009) (arbitration cannot be enjoined under AWA because FAA governs);

21

*Stevenson v. Tyco Int'l (US) Inc. Supp. Exec. Ret. Plan*, 2006 WL 2827635, at **9-10 (S.D.N.Y. Sep. 29, 2006) (refusing to stay arbitration proceedings because "courts cannot use the All Writs Act to justify the use of injunctions or commands where a statute specifically addresses the particular issue in dispute").

Moreover, the AWA "does not confer jurisdiction on the federal courts." *Syngenta Crop. Protection, Inc. v. Henson*, 537 U.S. 28, 33 (2002). The Arbitration Claimants were contractually required to arbitrate their claims and could not even file in federal court in the first instance; thus, the Court does not have jurisdiction over these arbitrations. *See, e.g., United States v. Eberhard*, 2004 WL 616122, at *3 (S.D.N.Y. Mar. 30, 2004) ("It does not follow from this proposition that a district court's power to stay a proceeding . . . extends to arbitration proceedings administered outside the auspices of the federal courts."). Accordingly, the AWA does not confer on federal courts the jurisdiction to stay the Arbitration Claimants' individual arbitrations. *See In re 23andMe, Inc. Customer Data Security Breach Litig.*, 2024 WL 4982986, at *25 (N.D. Cal. Dec. 4, 2024) ("[E]xclusion of those individuals in arbitration [from the class definition] was predicated on a contractual right to arbitration and the inability of this Court to adjudicate their rights in circumvention of their contractual right to arbitration, as recognized by the Federal Arbitration Act.").

Here, the Arbitration Claimants have contractual right to arbitrate their claims and opt out of the settlement before the stated deadline, rights which remain protected and enforceable. There is no efficiency to be gained in releasing the claims of individuals who exercised their right to arbitrate, and the exercise of this statutory right poses no threat to the Court's jurisdiction or ability to manage and oversee the class action settlement. The Court should respect the Arbitration Claimants' decision to enforce their arbitration rights and opt out of the Class.

### 4. The Improper Opt-Out Requirements Are Overly Burdensome To Arbitration Claimants.

The opt out process in the Settlement Agreement impermissibly divests the ability of the Arbitration Claimants' chosen counsel to properly represent their interests and extricate them from the Class. To participate in the proposed Settlement AT&T requires only a Class member to check a box and submit an electronic signature online—no wet signature, no other information. But those wanting to opt-out *must* complete several additional, unnecessary steps, including mailing in a physical form, collecting claim related records, providing a reason for the opt out, supplying a case number, signing with a wet signature, and completing this process on an individualized basis. The combination of these requirements is overly burdensome and should be reconsidered. *See O'Conner,* 2013 WL 6407583, at *7. Class members should be able to opt out by simply proving two pieces of contact

information. Two particular requirements, for individualized submissions and wet signatures are also particularly unwarranted.

### a. Mass Opt Outs Should Be Permitted, Particularly So That Claimant's Counsel Can Opt Out On Behalf Of Already Represented Parties.

The proposed Settlement Agreement prohibits Claimant's Counsel from opting out of the settlement on their clients' behalf. This attempt to divest Claimant's Counsels' ability to represent the interests of the Arbitration Claimants is impermissible. Arbitration Claimants retained Arbitration Counsel prior to entry of the Preliminary Approval Order, and Arbitration Counsel acted on behalf of Arbitration Claimants in negotiating the tolling agreement, discussing potential settlement of their claims, and attending mediation regarding their claims. Arbitration Counsel is currently prosecuting over 5,200 claims on behalf of certain Arbitration Claimants in arbitration, and was authorized to file thousands more. There is no legitimate reason to prevent Arbitration Counsel from opting out on behalf of Arbitration Claimants here.

Several states, including Texas, have recognized counsel's right to opt out their client when, "the nonsuit does not affect a substantial right or bar the bringing of another suit based on the same cause of action." *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 758 (Tex. 2003) ("Opting out does not, of itself, cause a loss of any substantial rights, as the party can bring its own suit on the same cause of action."). Arbitration Counsel should be permitted to opt out on behalf of

24

its Arbitration Claimant clients as no substantial right being lost—because Arbitration Claimants' claims will be adjudicated in arbitration.

*In re Google Assistant Privacy Litig.*, 2025 WL 510435 (N.D. Cal. Feb. 14, 2025) is on point. There the court permitted a mass opt out letter submitted by counsel on behalf of 69,507 arbitration claimants. The court denied Google's argument that "attempts to exclude class members *en masse*" was improper, stating that "[d]ue process requires… that an absent plaintiff be provided with an opportunity to remove himself [] from the class by executing and returning and 'opt out' or 'request for exclusion' form to the court." *Id*. at *2. The court concluded that the arbitration claimants' attorneys there "represented under oath that each of the Arbitration Claimants *did* make an individualized decision to retain [counsel's] legal services and to opt out from the Class in order to pursue claims in Arbitration. The Court sees no reason why the Arbitration Claimants may not act through their attorneys in executing those requests to opt out of the Class." *Id* at *3 (emphasis in original). Similarly here, the preliminarily approved Settlement Agreement seeks to prohibit mass opt outs, but it is evident that requirement is onerous, self-interested, and inconsistent with other federal court opinions. AT&T may speak through its directly retained counsel in this Court. Where an Arbitration Claimant has individually determined that he or she wants to pursue arbitration and does not want to participate in the settlement, he or she should have the same right as AT&T to

have directly retained counsel speak for him or her in this proceeding. As a result, the requirement that Arbitration Claimants individually opt out should be denied. *See also, Abernathy*, 438 F.Supp.3d at 1967 (criticizing provision of settlement that "seeks to prevent opt outs via petitioners' counsel," noting "[t]his provision is an obvious attempt to make it as hard as possible for petitioners to opt out, thus binding them to the [class] settlement.")

### b. Requiring a Wet Signature Is Unduly Burdensome.

The Settlement Agreement requires Arbitration Claimants to submit a wet signature to opt out of the settlement. That requirement is contrary to law and outdated. According to The Federal Electronic Signatures in Global and National Commerce Act ("E-Sign Act"), a contract cannot be deemed legally invalid because of an electronic signature. 15 U.S.C.A. § 7001(a)(2). *See also Kennedy v. Equifax Info. Svs. LLC*, 2023 WL 8656926, at (W.D. Tex. Dec. 13, 20923) ("Electronic signatures are valid and enforceable" under the E-Sign Act). Similarly, Texas law accepts electronic signatures for nearly all matters and its courts have unequivocally held that "[a]n electronic signature is binding in Texas." *Intuit* is on point. Like the settlement before this Court, the Intuit settlement sought an injunction against arbitrations and would have required that class members comply with burdensome opt-out procedures. The judge refused to grant preliminary approval, finding the

26

settlement did not meet basic standards of fairness, reasonableness, or adequacy. With respect to the opt-out requirements, Judge Breyer stated:

> The Court concludes that the opt out requirements in the proposed settlement are unduly burdensome given the unique circumstances of this litigation . . . requiring these class members to opt out by mailing a hard copy letter with a "wet-ink" signature serves little purpose but to burden those who wish to opt out. In a world where Intuit can not only administer settlement claims electronically, but also facilitate safe, legal tax-filing electronically, Intuit can assuredly process opt outs electronically. If electronic signatures are enough for Intuit and the IRS during tax season, they should be enough for Intuit here.

*Intuit*, 2021 WL 834253, at *10.

As in *Intuit*, AT&T has no problem with consumers signing up for services electronically, accepting the terms of the CSA electronically, or even accepting claims electronically. To require individuals pursuing claims in arbitration to opt-out using a "wet-ink" signature on a mail-in form that is not even provided to them "serve[s] little purpose but to burden those who wish to opt out." *Id.*

## B.    The Arbitration Claimants May Intervene As Of Right.

Intervention as of right, under Rule 24(a), must be granted when the movant (1) timely moves for intervention, (2) has a direct and substantial legal interest, (3) faces impairment of the interest from the litigation, and (4) is inadequately represented by the existing parties. *See Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015); *In re Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009); *Sierra Club v. Epsy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994)). "Rule 24 is to be liberally

construed. The inquiry "is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate." *Brumfield v. Dodd*, 749 F.3d 339, 341–42 (5th Cir. 2014) (internal quotations and citations omitted). The Arbitration Claimants moving to intervene in this action have satisfied this flexible and liberal standard.

*First*, this motion is timely under the circumstances. The timeliness inquiry begins when intervenors realize that their interests are no longer protected by existing parties. *See In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009) ("The timeliness clock does not start running until the putative intervenor also knows that class counsel will not represent his interest."); *see also Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (same). Here, the Arbitration Claimants were put on notice that their interests were no longer protected on June 20, 2025, when the Preliminary Approval Order was entered. That Order approves a proposed Class definition that extinguishes the Arbitration Claimants' right to pursue their claims in arbitration (as detailed above) and denied without prejudice another set of arbitration claimants' motion to intervene and oppose entry of the Preliminary Approval Order. Upon learning of the settlement's terms, which threaten to extinguish their arbitration rights, the Arbitration Claimants promptly filed this Motion just two weeks later.

28

*Second*, the Arbitration Claimants have a direct and substantial legal interest in preserving their arbitration claims. The Fifth Circuit has already found that "[a]n interest solely related to the terms of a settlement can support intervention." *Lease Oil*, 570 F.3d at 251. Courts recognize that, where as here, a proposed settlement threatens to extinguish existing legal claims, that interest qualifies as "legally protectable" under Rule 24(a)(2). *See Edwards*, 78 F.3d at 1004; *Lease Oil*, 570 F.3d at 254–55. Here, thousands of the Arbitration Claimants have filed their arbitration demands and tens of thousands of others have noticed AT&T of their claims. These are active proceedings, under enforceable contracts (that is, the CSA), governed by the Federal Arbitration Act. The proposed settlement would extinguish those contractual claims by impermissibly divesting their chosen counsels' ability to extricate them from a Class that they never consented to join.

*Third*, the proposed settlement would impair and impede the Arbitration Claimants' interests in enforcing their contractual right to arbitrate. The proposed settlement would extinguish the Arbitration Claimants' claims—claims that AT&T indisputably agreed to resolve in an arbitral forum—by preventing the Arbitration Claimants' ability to vindicate their claims in arbitration and instead enveloping them into a judicial class structure in an outside forum they never agreed to be in in the first instance. Courts have routinely held that such interference constitutes impairment under Rule 24(a)(2). *See, e.g., Lease Oil*, 570 F.3d at 254; *Intuit*, 2021

WL 834253, at *9–12. Here, the impairment is acute: thousands of aggrieved consumers have already initiated arbitration under a binding contract, paid fees, and prepared to prosecute their claims in an individual forum.

*Fourth*, no existing party adequately represents the interests of the Arbitration Claimants. A movant's burden to show inadequate representation is minimal and satisfied where representation may be inadequate. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972) ("[This] requirement … is satisfied if the applicant shows that the representation of his interest may be inadequate; and the burden of making that showing should be treated as minimal"); *see also Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) ("The applicant need only show that representation 'may be' inadequate."). That is precisely the case here. As discussed in *supra*, unlike the Arbitration Claimants, the proposed Class Representatives have waived their arbitration rights. Their interests are adverse to those of the Arbitration Claimants, whose cases are best resolved in arbitration. Because the interests of ABL Arbitration Claimants are not aligned with those of the settling parties, Rule 24(a)(2)'s minimal standard for inadequate representation is met.

## IV. CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Arbitration Claimants respectfully request that the Court reconsider the conditionally approved class, and enter an amended class

certification order: (1) excluding from the class individuals who filed or served on AT&T or its counsel a document purporting to be a written arbitration demand or notice of its intent to pursue arbitration against AT&T related to the data breaches; (2) permits putative class members to opt out using electronic signatures and provide only names and 2 pieces of contact information; and (3) Lifts, terminates, and extinguishes effective immediately, the entirety of the preliminary approval order (ECF No. 298)'s injunction against arbitrations related to this matter.

DATED: July 3, 2025                    Respectfully submitted,

*/s/ Bryan F. Aylstock*
Bryan F. Aylstock, FL Bar No.: 78263
**AYLSTOCK, WITKIN, KREIS &**
**OVERHOLTZ, PLLC**
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
baylstock@awkolaw.com

Kiley L. Grombacher, SBN: 245960
**BRADLEY/GROMBACHER, LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
kgrombacher@bradleygrombacher.com

Brian Levin (pro hac vice forthcoming)
**LEVIN LAW, P.A.**
2665 South Bayshore Drive, PH2B
Miami, Florida 33133
Telephone: 305.539.0593
brian@levinlawpa.com

***Attorneys for ABL Arbitration Claimants***

31

## CERTIFICATE OF WORD COUNT

I hereby certify that the word count contained in this document, including the footnotes, is: 6,226.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with this Court via CM/ECF service, which will send notification of such filing to all counsels of record on this 3rd of July, 2025.

*/s/ Bryan F. Aylstock*
Bryan F. Aylstock
FL Bar No.: 78263
**AYLSTOCK, WITKIN, KREIS &**
**OVERHOLTZ, PLLC**
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
baylstock@awkolaw.com
***Attorney for ABL Arbitration Claimants***