# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| IN RE: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>*This Document Relates to All Cases* | CASE NO. 3:24-cv-00757-E<br><br>MDL DOCKET NO. 3:24-md-03114-E |

## ORDER DENYING ABL ARBITRATION CLAIMANTS' EMERGENCY MOTION TO GRANT EXPEDITED MOTION TO STAY PENDING INTERLOCUTORY APPEAL

IT IS HEREBY ORDERED as follows:

1. On July 30, 2025, two law firms ("Claimants' Counsel") purporting to represent over 57,000 individuals ("Claimants") who these firms contend "wish to arbitrate the claims at issue here" filed a motion requesting, on an expedited basis, a stay of this action and certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) ("Motion"). (ECF No. 305.) The Motion states that "Claimants oppose only their inclusion in the class definition, and the hurdles they must clear in order to sufficiently 'opt-out' of the settlement." (*Id*. at 6 n.2.) The Court has considered the Motion, and defendant AT&T, Inc.'s opposition, filed August 1, 2025, and now DENIES the Motion.

2. Although styled an "emergency" motion for relief, any urgency is entirely of Claimant's making. The notice procedures arising from this Court's grant

of preliminary approval—which is the primary target of the Motion—have been known to Claimants' Counsel for some time. Claimants' Counsel first approached the Court with their intention to object to the proposed settlement and requested a briefing schedule for such objections on June 3, 2025, before the Court's entry of preliminary approval. (ECF No. 287.) Consistent with this request, the Court's preliminary approval order—entered June 20—provided detailed procedures for objections and set a hearing on final approval of the proposed settlement for December 3, 2025. (ECF No. 298, ¶¶ 16, 17, 25.) The Court also enjoined putative class members—including Claimants—from initiating arbitrations against AT&T related to the claims at issue in this case for a limited period of time while it considers whether to finally approve the proposed class settlement. (*Id.* ¶ 22.)

3.   Following the Court's June 20, 2025 Order, nearly two weeks passed without further activity by Claimants' Counsel in this Court. Then, on July 3, Claimants' Counsel moved to intervene and asked the Court to reconsider its preliminary approval order, making many of the same arguments it raises now. (ECF Nos. 300, 301.) The only "evidence" submitted to establish that Claimants had arbitration agreements with AT&T was a declaration from Claimants' Counsel asserting "[n]early all (if not all) of the [Claimants] have a valid reciprocal and mandatory arbitration clause with AT&T." (ECF No. 301-1, ¶ 3.) In this declaration, Claimants' Counsel attested that "[s]ince the injunction accompanying the

preliminary approval order, we have not initiated any new arbitrations." (ECF No. 301-1, ¶ 11.) But this representation proved to be false. Indeed, Claimants' submission confirmed they had violated the Court's injunction on initiating arbitrations. (ECF No. 301 at 10 ("On June 23, 2025 . . . Arbitration Counsel filed the first batch of approximately 5,200 arbitration demands with the American Arbitration Association."); ECF No. 301-5 (attaching Claimants' Counsel's June 23, 2025 email attempting to file arbitrations with the AAA on behalf of 5,248 Claimants).)

4. Having already provided Claimants with a vehicle to object to the preliminarily approved settlement, this Court denied Claimants' request for intervention and reminded them of the ability to reassert their arguments at the December 3 final approval hearing. (ECF No. 302.)

5. Another twenty days passed. Then, on July 30, Claimants filed the current motion, styled an "Emergency Motion to Grant Expedited Motion to Stay Pending Interlocutory Appeal in Advance of the Notice Date of August 4, 2025, and Request For Expedited Oral Argument." (ECF No. 305.) The Court now denies that Motion for several reasons.

6. Claimants have failed to establish their ability to challenge the Court's orders or stay these proceedings. Although Local Rule 7.1(i) requires movants to provide an appendix containing the factual support relied on for requested relief,

Claimants filed no appendix. As a result, they have presented no admissible evidence that they have standing to file it—or any motion. This is especially concerning because the Court already denied Claimants' request for intervention. They, therefore, lack a foundation to stay and disrupt the notice process or to seek appellate review of the preliminary approval order. *See, e.g.*, *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (rejecting appeal of consent decree by petitioner who failed to intervene in district court because the "rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment is well settled"); *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 249 (5th Cir. 2008) ("Non-parties are generally not permitted to appeal a ruling in which they did not participate."); *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1328 (D.C. Cir. 2013) ("Because a party unsuccessfully appealing a denial of intervention is not a 'party,' it may not obtain review of any district court holding other than the denial of intervention.").

7.  Also, Claimants have waited too long to request the expedited relief sought in the Motion. A party seeking equitable relief must exercise "due diligence" and cannot create an emergency through its own delay. *See, e.g.*, *Benisek v. Lamone*, 585 U.S. 155, 159–160 (2018); *Pastel Cartel, LLC v. FDA*, No. 1:23-CV-1010, 2023 WL 9503484, at *2–4 (W.D. Tex. Dec. 14, 2023) (denying injunction because of delay in seeking one); 11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2948.1 (explaining that "[a] long delay by plaintiff after learning of the

threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction"). Claimants have known about the August 4 notice deadline they wish to enjoin for weeks. Yet they waited until three business days before that deadline takes effect to seek to enjoin it. Claimants' Counsel has not provided any, and the Court can find no, justification for such delay.

8. In any event, there is no basis to certify an interlocutory appeal. Section 1292(b) certification is reserved for exceptional cases, and Claimants have failed to carry their burden that this is such a case. As the District Court for the District of Columbia in *In re Vitamins Antitrust Litigation*, No. 99-197, 2000 WL 673936, at *2 (D.D.C. Jan. 27, 2000) explained, a request like Claimants is "unwarranted and premature":

> [T]his Court has not yet resolved any controlling question of law; it has merely granted preliminary approval to the proposed settlement. A court must grant preliminary approval if the proposed settlement is "within the range of possible approval." *See* Manual for Complex Litigation, Third, § 30.41 (West 1999). Moreover, preliminary approval of a proposed settlement to a class action lies within the sound discretion of this district court and such preliminary approval is rarely, if ever, overturned on appeal. *See In re Southern Ohio Correctional Facility*, 173 F.R.D. 205, 211 (S.D. Ohio 1997). Whether or not this settlement proposal is appropriate is largely a factual question that will be resolved at the conclusion of the fairness hearing.

Mere disagreement with a decision is not sufficient to establish the "substantial ground for difference of opinion" required for 1292(b) certification. *Id.* at *2.

9. Nor have Claimants identified a substantial ground for difference of

opinion. As the Fifth Circuit recognized almost a decade ago, an individual opt-out requirement of precisely the type in the preliminary approval order here is a "common and practical requirement" that falls within this Court's "especially strong and flexible managerial power in this highly complex MDL." *In re Deepwater Horizon*, 819 F.3d 190, 197-98 (5th Cir. 2016); *see also In re Syngenta AG Mir 162 Corn Litig.*, No. 14-MD-02591, 2021 WL 3025471, at *10 (D. Kan. May 14, 2021) (requiring a "handwritten, wet ink signature provided assurance that all potential [c]lass [m]embers, whether represented or not, would exercise their opt-out rights only after personally evaluating the pros and cons of doing so"). And the Court concludes that the types of limitations that Claimants challenge—including limitations on *en masse* opt outs—are appropriate to guard against collusion and ensure that individual circumstances can be considered. *See, e.g.*, *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on April 20, 2010*, 910 F. Supp. 2d 891, 939 (E.D. La. 2012) ("[M]ass unsigned opt outs are highly indicative of a conclusion that [ ] counsel did not spend very much time evaluating the merits of whether or not to opt-out in light of the individual circumstances of each of their clients and in consultation with them."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014); *In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1093 (N.D. Ill. 2021) ("[C]ourts have frequently rejected the very sort of 'attempts by lawyers to opt out class members *en masse*' that counsel for the Arbitration

Claimants ask the Court to approve here.") (citation omitted).

10. The Court is also not persuaded by Claimants' reliance on cases involving opt-in class actions in FLSA matters to argue they should be automatically excluded from the settlement. The Fifth Circuit explained the key difference in *In re JPMorgan Chase & Company*: "Unlike members in Rule 23 class actions, putative collective members must affirmatively opt in to FLSA actions." 916 F.3d 494, 500 (5th Cir. 2019). Claimants can exercise their right to be excluded from the settlement by following the opt-out procedures in the preliminary approval order. A temporary injunction against parallel proceedings, including arbitrations, is both common and appropriate in preliminary approvals of complex MDLs. *See, e.g., Liles v. Del Campo,* 350 F.3d 742, 746–47 (8th Cir. 2003) (affirming the district courts injunction of "proceedings in related litigation to preserve the settlement fund, to eliminate the risk of inconsistent or varying adjudications that would deplete the fund, to avoid confusion among the class members, and to save scarce judicial resources."); *In re CenturyLink Sales Pracs. & Secs. Litig.*, MDL No. 17-2795, 2020 WL 869980, at *5 (D. Minn. Feb. 21, 2020) ("[A] temporary injunction of parallel proceedings by the parties to this lawsuit was necessary to properly manage the disposition of this case and enforce the Court's Preliminary Approval Order, including avoiding confusion among class members, ensuring proper notice, and preserving resources."); *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab.*

*Litig.*, 2012 WL 13065005, at *8 (D. Minn. Jan. 19, 2012) (similar).

11. Furthermore, an interlocutory appeal is unwarranted because disrupting the progress of this action to allow for months of appeal would delay, rather than "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Among other issues, Claimants' request would disrupt the schedule the Court put in place, increase costs for all involved, and ultimately delay resolution of this dispute to the detriment of the parties.

12. Finally, Claimants also request a stay pending the potential filing of a mandamus petition. Because such a petition is not pending, that request is premature. Moreover, mandamus is an exceptional remedy that may issue only on a showing, among others, of clear and indisputable error. For the reasons explained, Claimants come nowhere close to meeting that high standard. They do not cite a single case involving preliminary approval of a settlement class that questions the common procedures endorsed here.

13. For these reasons, the Court **DENIES** the Motion. (ECF No. 305)

**SO ORDERED this 1st day of August, 2025.**

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE