UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
CASE NO.: 3:24-cv-00757-E

CAROL SUROWIEC[1],

     Plaintiff,

 v.

AT&T MOBILITY, LLC,

     Defendant

_____/

**<u>CAROL SUROWIEC'S BRIEF IN SUPPORT OF MOTION TO DISMISS CLASS ACTION OR, IN THE ALTERNATIVE, MOTION TO AMEND ORDER APPROVING CLASS ACTION SETTLMENT AND ENJOIN AT&T FROM ASSERTING RES JUDICATA OR CLAIM PRECLUSION</u>**

**Beighley, Myrick, Udell, Lynne & Zeichman PA**
*Attorneys for Carol Surowiec and Small Claims Case Plaintiffs*
2601 S. Bayshore Drive
Suite 770
Miami, FL33133
(305) 349-3930

By:   */s/ Maury L. Udell, Esq.*
       Maury L. Udell, Esq.
       Fla. Bar No. 121673
       mudell@bmulaw.com

---

[1] The Brief is being filed on behalf of all Plaintiffs represented by counsel. *See* Appendix, Exhibit 1.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................... i

TABLE OF AUTHORITIES ............................................................ ii

NATURE AND STAGE OF THE PROCEEDING ............................... 1

ISSUES TO BE RULED ON BY THE COURT .................................. 2

SUMMARY OF THE ARGUMENT .................................................. 2

ARGUMENT .............................................................................. 3

   I.   All Consumers Have Already Opted Out of the Class Action by Agreeing to 'Not Participate' in Class Actions ................................ 3

   II.  The Named Plaintiffs Are Inadequate to Represent Class Members ............................................................................... 11

   III. Ignoring The Class Action Mutual Waiver Is An Error Of Law .......... 12

   IV. Fed. R. Civ. P. 23 and the AWA are Limited in Construction and Application ........................................................................... 13

   V.  The All Writs Act Has Never Been Used to Alter Consenting Parties' Agreements and Should Only Be Used to Ensure The Proper Administration of Justice ....................................................... 14

   VI. The Doctrine of Equitable Estoppel Prevents AT&T from Unilaterally Altering its Agreement Through Attempted Class Action Settlement ........................................................................... 17

CONCLUSION ........................................................................... 19

CERTIFICATE OF GOOD FAITH CONFERENCE ............................ 20

CERTIFICATE OF SERVICE ........................................................ 21

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997)..................................... 13, 15

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)...................................8, 20

*B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981)..................................15

*Beach Resort Hotel Corp. v.Wieder,* 79 So. 2d 659 (Fla. 1955) ................. 10, 12

*BMW of N. Am., Inc. v. Krathen ,* 471 So. 2d 585 (Fla. 1st DCA 1985)............10

*Brooks v. Green*, 993 So. 2d 58 (Fla. 1st DCA 2008) .............................................10

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998).......5

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011.........................................................9

*BVS Acquisition Co., LLC v. Brown,* 649 Fed. Appx. 651 (11th Cir. 2016) .....10

*Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304 (11th Cir. 2001)......15

*City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) .................................7

*City of Orlando v. Murphy*, 84 F.2d 531 (5th Cir. 1936) ........................................12

*Clinton v. Jones*, 520 U.S. 681 (1997)....................................................................18

*Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24 (Tex. App.—Amarillo 2000, no pet.) ................................................................................................................11

*Crosslands Props., Inc. v. Univest Crossland Trace, Ltd.,* 516 So. 2d 320 (Fla. 2d DCA 1987) .....................................................................................................10

*Dorroh-Kelly Mercantile Co. v. Orient Ins.,* 104 Tex. 199 S.W. 1165, 1167 (1911) ....................................................................................................................12

*E. Tex. Fire Ins. Co. v. Kempner*, 87 Tex. 229 S.W. 122, 122 (1894) ...................12

*El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802 (Tex. 2012) ..11

*Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000 (Fla. 2d DCA 1995) ........................................................................................................................9

*EQT Prod. Co. v. Adler*, 764 F.3d 347 (4th Cir. 2014) ...........................................6

*Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285 (11th Cir. 2001) ...........9

*First Fin. Nw., Inc. v. Laver*, 410 So. 3d 1, 3 (Fla. 4th DCA 2025) ........................7

*Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019 (Fla. 4th DCA 2005) .........20

*FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59 (Tex. 2014) .........11

*Harrington v. Citizens Prop. Ins. Corp.*, 54 So. 3d 999 (Fla. 4th DCA 2010) ..........9

*Hume v. United States*, 132 U.S. 406 (1889) ..................................................... 12, 21

*In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004) ...................................18

*In re Johns-Manville Corp.*, 801 F.2d 60 (2d Cir. 1986).........................................18

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ...............13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018) ...................................................................................13

*In re: Managed Care Litig.*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002) ......................19

*Institutional & Supermarket Equip., Inc. v. C & S Refrigeration, Inc.*, 609 So. 2d 66 (Fla. 4th DCA 1992) ........................................................................................9

*Kim v. Allison*, 87 F.4th 994 (9th Cir. 2023) ..........................................................13

*Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025) ..................................8

*Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145 (11th Cir. 2019) ....................................................................................15

*Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379 (1884) ........................................6

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) ......................9

*Meyer v. Health Mgmt. Assocs.*, 841 F. Supp. 2d 1262 (S.D. Fla. 2012) ...............15

*Nat'l Health Labs., Inc. v. Bailmar, Inc.*, 444 So. 2d 1078 (Fla 3d DCA 1984) .......9

*Nooner Holdings, Ltd. v. Abilene Vill., LLC*, 668 S.W.3d 956 (Tex. App. 2023) ..10

*Per Jonas Ingvar Gustafsson v. Aid Auto Brokers, Inc*., 212 So. 3d 405 (Fla. 4th DCA 2017) .......................................................................................9

*Powertel, Inc. v. Bexley*, 743 So. 2d 570 (Fla. 2d DCA 1999) ......................... 12, 21

*Provident Fire Ins. Co. v. Ashy*, 139 Tex. 334, 162 S.W.2d 684 (Tex. [Comm'n Op.] 1942) ..................................................................................11

*Royal Oak Landing Homeowner's Ass'n, Inc. v. Pelletier,* 620 So.2d 786 (Fla. 4th DCA 1993) .............................................................................14

*State v. Harris*, 881 So. 2d 1079 (Fla. 2004) ...........................................................20

*Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884 (Tex. 2021) ......11

*Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002) .............................17

*Taylor v. Taylor,* 1 So.3d 348 (Fla. 1st DCA 2009) .................................................14

*Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640 (Tex. 1996) ...........................11

*United States v. New York Tel. Co.*, 434 U.S. 159 (1977). ......................................17

*Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006) ......................................................6

*Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243 (11th Cir. 2023) ......................15

**Statutes**

28 U.S.C. § 1651 ...................................................................................5, 16

28 U.S.C. § 2072(b) .................................................................................15

**Rules**

Fed. R. Civ. P. 12(h)(3)..............................................................................6

Fed. R. Civ. P. 23 .................................................................................5, 16

Fed. R. Civ. P. 82 ...................................................................................15

Carol Surowiec and other Movants (hereinafter "**Movants**"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 12(h)(3), files this Brief in Support of their Motion to Dismiss or, in the Alternative, Motion to Amend the Terms of the Order Approving Class Action Settlement and Enjoin AT&T from Asserting Res Judicata or Claim Preclusion and as grounds states as follows:

## NATURE AND STAGE OF THE PROCEEDING

1. Movants' cases are not class actions, but instead individual cases brought in small claims court in Florida, exactly where AT&T instructed each Plaintiff to file suit. All Movants are not members of any of the proposed settlement and have previously already agreed to not participate in class actions as class members and specifically have retained their right to remand their cases to state court.

2. AT&T improperly removed the cases to the Southern District of Florida and then moved to transfer them under the Judicial Panel on Multidistrict Litigation ("**JPMDL**"). he Court has invited argument at the December 3, 2025, hearing to approve class action settlement.

3. Given AT&T's unambiguous agreement to not participate in class actions with Movants, and Movants unambiguous agreement to not participate in class actions as class members, Movants seek an order dismissing this class action. Alternatively, Movants seek remand their cases to state court and an order enjoining

AT&T from asserting claim preclusion or res judicata effect of any order, as to any consumer, who has not opted-in to the class action settlement.

## ISSUES TO BE RULED ON BY THE COURT

1.    Whether the Court should dismiss this class action in its entirety given the failure of any class action representative to adequately represent the purported class members – all who have previously agreed to not participate in class actions as class members.

2.    Whether the Court should delete the opt-out procedures in its preliminary order of approval given every consumer's prior waiver and agreement to "not participate" in class actions <u>as a class member</u>.

3.    Whether the Court should grant an injunction against AT&T from asserting claim preclusion or res judicata as to any consumer based on the All Writs Act.

4.    The standard of review on a motion to dismiss is de novo.

## SUMMARY OF THE ARGUMENT

1.    All consumers have already opted out of the class action by agreeing to 'not participate' in class actions in terms of the Wireless Customer Agreement (the "**Agreement**");

2.    The named Plaintiffs are inadequate to represent any proposed class members given the mutual waiver of participation in class actions;

2

3.    Ignoring the class action mutual waiver is an error of law;

4.    Fed. R. Civ. P. 23 and the All Writs Act ("**AWA**") (28 U.S.C. § 1651)

are limited in construction and application;

5.    The AWA has never been used to alter consenting parties' agreements

and should only be used to ensure the proper administration of justice;

6.    The doctrine of equitable estoppel prevents AT&T from unilaterally

altering its agreement through attempted class action settlement

## ARGUMENT

### I.    All Consumers Have Already Opted Out of the Class Action by Agreeing to 'Not Participate' in Class Actions

This case came to this Court as a class action which was then designated a

multidistrict litigation ("**MDL**") by the JPML. AT&T and the class action Plaintiffs

seek a full and final dismissal of this action through settlement. The premise of a

class action is that "litigation by representative parties adjudicates the rights of all

class members." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338

(4th Cir. 1998). Accordingly, a party seeking class certification must first

demonstrate the four prerequisites of Rule 23(a): numerosity of parties, common

questions of law or fact, typicality of claims or defenses of the representative parties,

and adequacy of representation. Fed. R. Civ. P. 23(a). Merely pleading compliance

with these requirements is not enough; rather, "the party must present evidence that

the putative class complies with Rule 23." *EQT Prod. Co. v. Adler*, 764 F.3d 347,

357 (4th Cir. 2014).

Given that every consumer **and** AT&T already agreed to waive the right to participate in class actions, none of the class representatives alleged are adequate under the law. This Court should question whether it has jurisdiction over this class action at all due to AT&T's waiver to participate in class actions with all consumers. Subject-matter jurisdiction concerns a court's competence to adjudicate a particular category of cases and must be considered by the court on its own motion, even if no party raises an objection. *See*, *e.g., Wachovia Bank v. Schmidt*, 546 U.S. 303, 316, (2006); *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382 (1884); Fed. R. Civ. P. 12(h)(3). With that in mind, it is undisputed that throughout American jurisprudence, contracts are written to be enforced, not ignored by the parties or the courts.

The Court's preliminary order approving a proposed class action settlement contravenes the very essence of AT&T's agreement with its consumers. Despite the plain and unambiguous language governing the parties' conduct, if the Court seeks to ratify a settlement in contravention of the parties' agreement, at a minimum any non-participatory consumers should not be required to reaffirm their previous agreement not to participate in class actions. In essence, all consumers have already agreed to "not participate" in class actions and should not be required to reaffirm that agreement which AT&T specifically required consumers as a condition of use

4

in the Agreement. In fact, the Agreement mentions this agreed waiver in three separate places, in Exhibit 2 to Appendix.:

> **You and AT&T agree that arbitration will take place on an individual basis. Class arbitrations, class actions, and representative actions are not permitted. This means that you and AT&T will neither file a lawsuit (in any court other than a small claims court), <u>nor pursue or participate in an action</u> seeking relief on behalf of others.**
>
> **By entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to <u>participate in a class action</u>.**
>
> **YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, <u>AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING.</u>**

Because all consumers have already agreed to **<u>not participate</u>** in class actions as class members, any new requirement for consumers to "opt-out" of participating in a class action is not required under the plain language of the agreement which was drafted by AT&T. To the extent there is any ambiguity in the broad language regarding "participation", any ambiguities in meaning when construing the language of a contract are "to be construed against the drafter" of the instrument. *First Fin. Nw., Inc. v. Laver*, 410 So. 3d 1, 3 (Fla. 4th DCA 2025); *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000).

5

While AT&T may be seeking a limitation of liability through this proposed class action settlement for its admitted violations of the terms of the Agreement, it cannot ignore its own waiver. As established by AT&T in 2011 in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the waiver of participation in class actions is enforceable and cannot be changed absent mutual consent. More recently, AT&T's counsel in this case, advocating on behalf of Marriot in *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025), argued and won enforcement of a class action waiver even in the context of MDL, underscoring that participation in consolidated proceedings does not forfeit waiver rights on behalf of a defendant. The corollary must be that application of the waiver by consumers also applies. Neither AT&T nor the Court can unilaterally alter the written agreement absent specific authority under Florida or Texas common law.

While the Court can still approve a class action settlement regarding the data breaches between consenting parties, said forum is only available to consumers who specifically agree to participate in it given the unambiguous mutual contractual waiver. Therefore, if the Court wishes to maintain the class action settlement, then the proper relief would be to require consumers who wish to participate in the class action to affirmatively **opt in**. While AT&T has agreed to voluntarily participate in a class action settlement in contravention of the mutual waiver in an attempt to limit its exposure to those individuals who choose to be part of the class, it cannot

unilaterally alter the terms of the agreement to ignore the enforceability of the waiver absent valid legal authority.

The "cardinal principle of contract construction" is to "give effect to all its provisions." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995). In particular, it is improper to "give[] independent meaning to [an] intervening [term] … only at the expense of rendering the remainder of the provision superfluous." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011). Under Florida law, "it is well settled that "when the terms of a voluntary contract are clear and unambiguous, ... the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290–91 (11th Cir. 2001), citing *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995); accord *Institutional & Supermarket Equip., Inc. v. C & S Refrigeration, Inc.*, 609 So. 2d 66, 68 (Fla. 4th DCA 1992); *Nat'l Health Labs., Inc. v. Bailmar, Inc.*, 444 So. 2d 1078, 1080 (Fla 3d DCA 1984). Under Florida law, an unambiguous contract must be enforced as written. *See Per Jonas Ingvar Gustafsson v. Aid Auto Brokers, Inc*., 212 So. 3d 405, 408 (Fla. 4th DCA 2017); *Harrington v. Citizens Prop. Ins. Corp.*, 54 So. 3d 999, 1001 (Fla. 4th DCA 2010).

In this vein, "a party is bound by, and a court is powerless to rewrite, the clear

and unambiguous terms of a voluntary contract' [and] '[i]t is not the role of the courts to make an otherwise valid contract more reasonable from the standpoint of one contracting party.'" *Brooks v. Green*, 993 So. 2d 58, 61 (Fla. 1st DCA 2008) (citations omitted). "[T]his principle applies even when contractual terms bind a party to a seemingly harsh or out of the ordinary bargain[.]" *Id*. at 61. A court cannot properly "impose on parties [any] contractual rights and duties which they themselves omitted." *BMW of N. Am., Inc. v. Krathen* , 471 So. 2d 585, 588 (Fla. 1st DCA 1985). *See also Crosslands Props., Inc. v. Univest Crossland Trace, Ltd.,* 516 So. 2d 320, 321 (Fla. 2d DCA 1987) ("[T]he role of the courts is not to make an otherwise valid contract more reasonable or less unreasonable from the standpoint of one contracting party."); *BVS Acquisition Co., LLC v. Brown,* 649 Fed. Appx. 651, 655 (11th Cir. 2016) (citing *Beach Resort Hotel Corp. v. Wieder,* 79 So. 2d 659, 663 (Fla. 1955)) ("It is well settled that courts may not rewrite a contract in order to relieve one of the parties from the apparent hardship of an improvident bargain.").

Under Texas law, AT&T's home state, the same bedrock contract principles favoring enforcement of contracts apply. "While a party may not like the consequences of the terminology, they chose in negotiating a contract, courts must enforce it as written." *Nooner Holdings, Ltd. v. Abilene Vill., LLC*, 668 S.W.3d 956, 962 (Tex. App. 2023), review denied (Oct. 6, 2023). "We must construe contracts

by the language contained in the document, with a mind to Texas's strong public policy favoring preservation of the freedom to contract." *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 67 (Tex. 2014), citing *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 811–12 (Tex. 2012); *see also Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.) ("In short, the parties strike the deal they choose to strike and, thus, voluntarily bind themselves in the manner they choose.").

"[S]ophisticated parties have broad latitude in defining the terms of their business relationship." *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 889 (Tex. 2021) (quoting *FPL Energy, LLC*, 426 S.W.3d at 67)). "[C]ourts are obliged to enforce the parties' bargain according to its terms." *Id*., citing *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996) ("We have long held that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained.").

"[C]ourts may not rewrite a contract under the guise of interpretation." *Id.*; *see also Provident Fire Ins. Co. v. Ashy*, 139 Tex. 334, 162 S.W.2d 684, 687 (Tex. [Comm'n Op.] 1942) ("Parties make their own contracts, and it is not within the province of this court to vary their terms in order to protect them from the consequences of their own oversights and failures in nonobservance of obligations assumed.") (quoting *Dorroh-Kelly Mercantile Co. v. Orient Ins.,* 104 Tex. 199, 135

9

S.W. 1165, 1167 (1911))); *E. Tex. Fire Ins. Co. v. Kempner*, 87 Tex. 229, 27 S.W. 122, 122 (1894) ("[W]here the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction.")

Contracts are subject to reformation or rescission under very limited circumstances, and any judicial modification would be an attack on freedom to contract. Florida courts respect the autonomy of contracting parties. As stated in *City of Orlando v. Murphy*, 84 F.2d 531 (5th Cir. 1936), courts will not rewrite contracts to relieve a party from an unfavorable bargain unless there is a legal basis, such as mutual mistake or illegality. A contract may be deemed unenforceable if it is both procedurally and substantively unconscionable. Procedural unconscionability involves unfairness in the bargaining process (e.g., unequal bargaining power, lack of meaningful choice), while substantive unconscionability involves terms so one-sided they "shock the conscience." *See Powertel, Inc. v. Bexley*, 743 So. 2d 570 (Fla. 2d DCA 1999). Merely entering a bad deal does not justify judicial intervention. In *Beach Resort Hotel Corp. v. Wieder*, 79 So. 2d 659 (Fla. 1955), the Florida Supreme Court emphasized that courts will not rewrite contracts to correct a party's poor business judgment or financial hardship. Courts may only intervene if there is evidence of fraud, duress, mistake, or illegality.

For example, in *Hume v. United States*, 132 U.S. 406 (1889) (applied in

Florida contexts), a contract was voided due to unconscionable terms combined with oppressive conduct. AT&T cannot argue that any of the circumstances allowing for contractual reformation apply here given the adhesive nature of AT&T's wireless agreement.

## II.    The Named Plaintiffs Are Inadequate to Represent Class Members

A court must pay "undiluted, even heightened, attention" to class certification requirements in a settlement context. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997). Before certifying a class, a district court must ensure that the class satisfies the prerequisites of Rule 23, including that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Kim v. Allison*, 87 F.4th 994, 999–1000 (9th Cir. 2023); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 606 (9th Cir. 2018). A conflict is fundamental when it goes to the specific issues in controversy. *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 942 (9th Cir. 2015).

There is no dispute that a mutual waiver of class action participation exists as to all potential class members. Thus, assuming that both the named Plaintiff and AT&T have executed a mutual "waiver of the waiver", the named Plaintiffs no longer can represent the class members unless all of those class members execute the same agreement. In other words, the named Plaintiffs are no longer an adequate and proper representative of the class members in that they agree to participate in

11

class actions while the class members do not. Because the named Plaintiffs have an inherent conflict of interest, they cannot fairly and adequately protect the interest of AT&T consumers who did not agree to participate in class actions. Thus, approval of the class action settlement with the opt-out provision as alleged would be in contravention

### III.    Ignoring The Class Action Mutual Waiver Is An Error Of Law

Class action Plaintiffs' counsel and AT&T are leading this Court into error by presenting a settlement which ignores the class action waiver and prevents consumers from relying on said waiver. Any order which approves the proposed opt-out procedures ignoring the mutual class action waiver is an error of law. "Contract interpretation begins with a review of the plain language of the agreement because the contract language is the best evidence of the parties' intent at the time of the execution of the contract." *Taylor v. Taylor,* 1 So.3d 348, 350 (Fla. 1st DCA 2009) (citing *Royal Oak Landing Homeowner's Ass'n, Inc. v. Pelletier,* 620 So.2d 786, 788 (Fla. 4th DCA 1993)). Because the enforceability of the class action waiver language is undisputed, the Court cannot rewrite or ignore the waiver executed by all consumers as such a result would be a direct violation of law and possibly violate the Contract Clause of the U.S. Constitution.

"A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact

that are clearly erroneous." *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1251 (11th Cir. 2023); *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001). "An error of law is an abuse of discretion per se." *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1153 (11th Cir. 2019) (citation omitted). Any approval of the class action settlement which ignores contractual language would be subject to reversal based on clearly erroneous findings of fact or an error in law.

## IV.    Fed. R. Civ. P. 23 and the AWA are Limited in Construction and Application

Fed. R. Civ. P. 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure "shall not abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b). *See also* Fed. R. Civ. P. 82 ("rules shall not be construed to extend ... the [subject-matter] jurisdiction of the United States district courts."); *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 613. Federal courts possess limited jurisdiction and wield only the power authorized by the Constitution and statute. *See Meyer v. Health Mgmt. Assocs.*, 841 F. Supp. 2d 1262, 1266 (S.D. Fla. 2012), citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 (5th Cir. 1981). Rule 23 does not empower a district court to ignore the plain and unambiguous language of consenting parties' contracts which waives each parties' ability to participate in class actions which is the basis of jurisdiction. How can this case exist, absent a "waiver of the waiver" by *both*

13

*parties to the contract*? The simple answer is that it cannot exist under Florida or federal law.

Fed. R. Civ. P. 23 contains no provisions addressing this scenario, and no federal precedent exists directly on point because the question presents an inherent legal contradiction. AT&T seeks the court's imprimatur on ignoring its own contractual class action prohibition to approve a class action settlement and require consumers to opt out of a settlement they already opted out of. The principle of limited federal jurisdiction is fundamental; never is it more important than when a federal court purports to authorize the unilateral amendment of a contract between consenting parties. A defendant who has agreed to not participate in class actions cannot unilaterally require anyone to participate under Rule 23. This conclusion is supported by fundamental principles of contract law, the standing doctrine, and the voluntary nature of class action participation under Rule 23.

## V.    The All Writs Act Has Never Been Used to Alter Consenting Parties' Agreements and Should Only Be Used to Ensure The Proper Administration of Justice

The AWA provides for orders **in aid of** a court's jurisdiction (e.g., preserving status quo, enforcing judgments, stopping interference)—not to create new substantive rights or rewrite agreements. Courts repeatedly stress that the AWA does not enlarge jurisdiction or powers beyond existing law, and is designed to aid the courts in the proper administration of justice. The use of the AWA to justify ignoring

14

contractual language is the furthest thing from the proper administration of justice.

The AWA has never been used to ignore contractual language between consenting

parties. The AWA allows federal courts to issue "all writs necessary or appropriate

in aid of their respective jurisdictions and agreeable to the usages and principles of

law."

> The All Writs Act was originally enacted, in part, as § 14
> of the Judiciary Act of 1789, 1 Stat. 81. The Act was, and
> is, necessary because federal courts are courts of limited
> jurisdiction having only those powers expressly granted by
> Congress, and the statute provides these courts with the
> procedural tools—the various historic common-law
> writs—necessary for them to exercise their limited
> jurisdiction. The statute does not contain, and has never
> before been interpreted as containing, the open-ended
> grant of authority to federal courts that today's decision
> purports to uncover. Instead, in the language of the statute
> itself, there are two fundamental limitations on its scope.
> The purpose of any order authorized by the Act must be to
> aid the court in the exercise of its jurisdiction; and the
> means selected must be analogous to a common-law writ.

*United States v. New York Tel. Co.*, 434 U.S. 159, 186–87 (1977).

The Supreme Court's decision in *Syngenta Crop Protection, Inc. v. Henson*,

537 U.S. 28 (2002), provides perhaps the clearest guidance on the AWA's

limitations as applied to private contractual matters. There, the Court rejected an

attempt to use the AWA to remove a state court action that allegedly conflicted with

a federal settlement, holding that parties may not invoke the AWA to avoid statutory

requirements. In the bankruptcy context, federal courts have consistently refused to

15

use the AWA as a vehicle to alter or amend private contracts, even in the bankruptcy context where equitable considerations are at their apex. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (neither § 105 of the Bankruptcy Code nor the All Writs Act authorizes courts to expand jurisdiction or rewrite contractual obligations of non-debtors). Likewise, in *In re Johns-Manville Corp.*, 801 F.2d 60, 64 (2d Cir. 1986), the Second Circuit emphasized that while bankruptcy courts may enjoin certain actions to protect their jurisdiction, they may not use the AWA to create substantive rights or to modify parties' contractual arrangements. If even bankruptcy courts—armed with expansive equitable powers—are prohibited from employing the AWA to rewrite contracts, then a district court lacks authority to invoke it here to nullify the mutual class-action waiver AT&T not only agreed to but drafted. The AWA's function is limited to protecting jurisdiction, not legislating away bargained-for rights. Here, that would be the right to not be involved in a class action at all. This limitation is further illustrated in *Clinton v. Jones*, 520 U.S. 681 (1997), where the Supreme Court noted that the AWA does not confer substantive rights, but merely aids in the exercise of existing jurisdiction, without allowing courts to modify underlying contractual obligations.

Accordingly, the AWA cannot be used here to justify altering or ignoring the parties' mutual waiver of class actions. Contracts are governed by state law (or federal law in specific contexts), and courts typically respect the terms agreed upon

by parties unless there is a legal basis to intervene—such as fraud, duress, illegality, or unconscionability. The AWA itself does not grant courts the power to modify contract terms directly. The Court cannot use the AWA to override the plain terms of the agreement to effectuate the proposed injunction by consumers of current or future claims. To affirm this conduct would be an extraordinary attempt at judicial overreach in contravention of the parties' agreement. Under the AWA, a court may enjoin a party and those acting in concert with it from implementing a class action settlement and order other corresponding relief to ensure the proper administration of justice. See, e.g., *In re: Managed Care Litig.*, 236 F. Supp. 2d 1336, 1339-41 (S.D. Fla. 2002). The proper relief here is for the Court to enforce the class action waiver and dismiss this class action, or alternatively, not enjoin any alleged class members from enforcing the waiver in the future should they seek to bring an action against AT&T.

## VI.    The Doctrine of Equitable Estoppel Prevents AT&T from Unilaterally Altering its Agreement Through Attempted Class Action Settlement

AT&T is equitably estopped from pursuing or enforcing a class action settlement that disregards the mutual class action waiver in its own agreement, as this position directly contradicts its prior representations, conduct, and legal advocacy on the enforceability of such waivers. Equitable estoppel, a longstanding doctrine under Florida law, bars a party from asserting a claim or defense inconsistent with its previous position if another party reasonably relied on the

17

original stance to their detriment. See *State v. Harris*, 881 So. 2d 1079, 1084 (Fla. 2004) (outlining elements: representation contrary to later position, reliance, and detrimental change); see also *Major League Baseball v. Morsan*i, 790 So. 2d 1071, 1077 (Fla. 2001) (applying estoppel principles to prevent inconsistent enforcement of rights).

Here, AT&T has repeatedly represented—through its contract drafting, litigation history, and Supreme Court victory—that class action waivers are valid, enforceable, and binding on both parties. In *AT&T Mobility LLC v. Concepcion*, AT&T itself championed the enforceability of class action waivers against public policy challenges, securing a ruling that such provisions are protected under the Federal Arbitration Act and cannot be overridden by state law. Similarly, in *Fonte v. AT&T Wireless Servs., Inc.*, AT&T successfully compelled individual arbitration and enforced the waiver to defeat a FDUTPA class action. 903 So. 2d 1019 (Fla. 4th DCA 2005).

Consumers reasonably relied on the class action waiver which appears in three provisions of the Agreement by structuring their potential claims around individual resolution mechanisms like arbitration or small claims court. This reliance was detrimental: consumers accepted the contract's terms in good faith, forgoing the ability to pursue or join class actions, only for AT&T to now reverse course and seek a class settlement that effectively nullifies the waiver for its own convenience—

avoiding mass individual claims while limiting consumer recoveries to its own arbitrarily and artificially created damage levels.

Allowing AT&T to proceed would not only undermine the doctrine's purpose of promoting fair play and essential justice, but also reward hypocritical conduct. *See Powertel, Inc. v. Bexley*, 743 So. 2d at 574. AT&T cannot enforce waivers when it suits them—against consumers initiating class actions—yet ignore them when facing liability. Such inconsistency "shocks the conscience" and warrants estoppel to preserve the contract's integrity. *See Hume v. United States*, 132 U.S. 406, 415 (1889) (applied in Florida; estoppel against oppressive or unconscionable shifts). If AT&T wishes to litigate via class action, it must first obtain explicit consent from consumers to modify the contract and effectively waive the waiver provision of the Agreement. It cannot unilaterally amend consumer's substantive right to not participate in class actions this through judicial approval under Fed. R. Civ. P. 23.

## CONCLUSION

Neither Congress nor the courts have allowed a district court to unilaterally rewrite millions of private agreements. AT&T cannot invoke Fed R. Civ. P. 23 or the AWA to erase its own class-action waiver, and therefore lacks standing itself to participate in this case. This Court should reject AT&T's attempt to unilaterally alter its contract with consumers under the guise of settlement authority, and dismiss this class action immediately. Alternatively, if the Court is not inclined to dismiss this

class action in its entirety, all opt-out provisions of the proposed settlement should be deleted from the final order of approval so that consumers who chose not to participate are not penalized by simply complying with terms of the Agreement that AT&T wrote and required them to sign years ago. To hold otherwise would ignore the foundation of the application of contract law in the

## CERTIFICATE OF GOOD FAITH CONFERENCE

In accordance with Local Rule 7.1(a)(3) of the Rules of the United States District Court for the Northern District of Texas, the undersigned certifies that on September 22 and 24, 2025, he conferred with AT&T's counsel as to the relief sought herein in a good faith effort to resolve the issues presented in this Motion. The parties were not able to come to an agreement.

Respectfully submitted September 26, 2025

**Beighley, Myrick, Udell, Lynne & Zeichman PA**
*Attorneys for Florida State Court Plaintiffs*
2601 S. Bayshore Drive
Suite 770
Miami, FL33133
(305) 349-3930

By:     */s/ Maury L. Udell, Esq.*
        Maury L. Udell, Esq.
        Fla. Bar No. 121673
        mudell@bmulaw.com

20

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on September 26, 2025 a true and accurate copy of this document was filed and served on all counsel of record through the CM/ECF system.

By: */s/ Maury L. Udell, Esq.*
   Maury L. Udell, Esq.

## CERTIFICATE OF WORD COUNT

I certify that the accompanying Motion which was prepared using Times New Roman 14-point typeface, contains 4818 words, excluding the parts of the document that are exempted. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

By: */s/ Maury L. Udell, Esq.*
   Maury L. Udell, Esq.