# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **IN RE: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION** | Case No. 3:24-cv-00757-E |
| *This Document Relates to All Cases* | MDL DOCKET NO. 3:24-md-03114-E |

**JOINT DECLARATION OF CLASS COUNSEL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATIONS FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

We, W. Mark Lanier, Chris Seeger, Shauna Itri, James E. Cecchi, Jean Sutton Martin, and Sean S. Modjarrad (AT&T 1 Class Counsel[1]) and Jeff Ostrow, J. Devlan Geddes, Raph Graybill, John Heenan, and Jason S. Rathod (AT&T 2 Class Counsel), pursuant to 28 U.S.C. § 1746, hereby declare as follows:[2]

1. We are Class Counsel in the above-captioned Action. We submit this declaration in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Applications for Attorneys' Fees, Costs, and Service Awards. Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called upon to do so.

[1] All capitalized terms used in this Joint Declaration have the same meanings as set forth in the Settlement Agreement, attached as Exhibit A to the Motion for Final Approval.

[2] AT&1 Class Counsel attest to the facts pertaining to the AT&T 1 Action. AT&T 2 Class Counsel attest to the facts pertaining to the AT&T 2 Action.

2. The procedural history of the important events and work leading up to the proposed Settlement is detailed in the Motion for Preliminary Approval with citation to the relevant docket entries in these Actions. The following facts supplement the record with information relevant to the Motion for Final Approval.

**Background to the Litigation**

3. In connection with AT&T's provision of wireless communication services, including voice, data, and messaging to consumers in the United States, AT&T customers provide AT&T with personal and sometimes sensitive private information. These Actions arise from two Data Incidents announced by AT&T.

4. On March 30, 2024, AT&T announced that AT&T-specific fields were contained in a data set released on the dark web in the AT&T 1 Data Incident. The AT&T 1 Data Elements that may have been accessible in the AT&T 1 Data Incident includes some combination of names, addresses, telephone numbers, email addresses, dates of birth, account passcodes, billing account numbers, and Social Security numbers.

5. On July 12, 2024, AT&T announced the AT&T 2 Data Incident when it disclosed certain limited call log data had been illegally downloaded from an AT&T workspace on a third-party cloud platform hosted by Snowflake. The AT&T 2 Data Elements that may have been accessible included telephone numbers of current and former AT&T customers, including, but not limited to, Account

Owners or Line or End Users, along with the telephone numbers with which those customers interacted, counts of those interactions, aggregate call durations for a day or month, and for a small subset of individuals, one or more cell site identification numbers associated with the interactions. The data set did not include call or text content, customer names, Social Security numbers, dates of birth or other personal identifiable or financial information.

6. Numerous lawsuits arising from the AT&T 1 Data Incident were filed against AT&T in state and federal courts across the United States before they were consolidated in this Court by the Judicial Panel on Multidistrict Litigation ("JPML") in June 2024. Numerous lawsuits arising from the AT&T 2 Data Incident were also filed against Snowflake and various Snowflake clients, including AT&T entities, before they were consolidated in a hub-and-spoke-MDL in the District of Montana before Chief Judge Brian Morris on October 4, 2024.

**<u>Litigation, Mediation, and Settlement</u>**

7. This Court is directly familiar with the extensive work performed to create and litigate this MDL for the AT&T 1 Action on behalf of the AT&T 1 Settlement Class. The Judicial Panel for Multidistrict Litigation and District of Montana dockets for the Snowflake MDL for the AT&T 2 Action provide the Court evidence of the hard work performed for the AT&T 2 Settlement Class, and the Court became familiar with their efforts at the Preliminary Approval stage.

8. This Court appointed Lead Counsel, a Plaintiff Executive Committee, and a Plaintiff Steering Committee for the AT&T 1 Action, authorizing them to litigate pretrial proceedings and conduct settlement negotiations.

9. Judge Morris appointed Plaintiffs' Leadership Counsel, consisting of Plaintiffs' Co-Lead Counsel and Executive Committee/Liaison Counsel for the AT&T 2 Action and authorized them to conduct pretrial proceedings and settlement negotiations.

10. In early December 2024, retired United States District Judge W. Royal Furgeson, Jr., the Special Master appointed to the AT&T 1 Action, asked AT&T 1 Class Counsel to consider exploring potential early resolution of the AT&T 1 Action.

11. Concurrently, AT&T's Counsel inquired with AT&T 2 Class Counsel whether they would be interested in pursuing early resolution of the AT&T 2 Action.

12. All Parties subsequently agreed to separately mediate their disputes before Robert Meyer, Esq., an experienced data breach and complex case mediator, at JAMS in Los Angeles.

13. Before mediation, the Parties met separately with the mediator and exchanged confidential information concerning the nature and scope of the respective Data Incidents, including the number of people and data elements

potentially implicated in the Data Incidents. The Parties exchanged detailed mediation briefs in their respective Actions outlining their positions on liability, damages, class certification, and settlement-related issues. Contemporaneously, the Plaintiffs and AT&T 2 Defendants jointly requested and obtained a stay of all deadlines between them in the Snowflake MDL to accommodate mediation.

14. The Parties thereafter separately mediated with Mr. Meyer from March 17-19, 2025. After three days of intense, arm's-length negotiations, the Parties reached separate agreements in principle as to the material terms to settle the Actions, subject to confirmatory discovery.

15. Thereafter, AT&T provided Class Counsel with confidential detailed information about both of the Data Incidents, AT&T's subsequent investigation into the Data Incidents, the data elements involved, and the security enhancements implemented to help protect against future similar incidents. AT&T also made available for an interview someone with intimate familiarity with the facts and data concerning AT&T 1 and AT&T 2 claims.

16. Over the next 10 weeks, the Parties negotiated the finer details of the Agreement, including the Notice Program, the Claim Process, and selection of a well-qualified Settlement Administrator. The Parties also worked collaboratively to seek and review proposals received from potential settlement administrators.

17. During this negotiation, the Parties determined it would conserve

judicial resources and be in the best interest of the Parties and Settlement Classes to settle both actions together in this Court. To that end, the AT&T 2 Plaintiffs and AT&T 2 Defendants first obtained an extension of the stay governing their deadlines in the Snowflake MDL. The AT&T 2 Plaintiffs thereafter filed a Third Amended Representative Class Action Complaint in the Snowflake MDL on May 19, 2025 that included only those claims and classes that are part of the Settlement; that complaint, after further investigation, excluded claims for non-AT&T customers. But for the Settlement, the AT&T 2 Plaintiffs would have needed respond to AT&T's motions to compel arbitration and to dismiss.

18. On May 30, 2025, the Parties signed the Agreement and initiated the formal Settlement approval process. First, the AT&T 2 Plaintiffs and AT&T 2 Defendants moved Judge Morris to indefinitely stay their deadlines in the Snowflake MDL, pending approval of the Settlement in this Court.[3] Thereafter, AT&T 1 Plaintiffs and AT&T 2 Plaintiffs filed their Master Class Action Complaint in this Court, alleging violations of the federal Communications Act, Satellite Home Viewer Extension and Reauthorization Act, and the Cable Television Consumer Protection Act, common law negligence, breach of implied contract, and a claim for declaratory and injunctive relief. *See generally* Doc. 281.

19. Plaintiffs filed Motion for Preliminary Approval on May 30, 2025.

[3] Judge Morris subsequently granted that stay and is deferring to this Court's assessment of the Settlement. *See* Snowflake Doc. 461.

The Court granted Preliminary Approval on June 20, 2025 following the opposition of two groups of purported Settlement Class Members who intended to arbitrate their disputes with AT&T and viewed the proposed Settlement as a threat to those rights, denying both groups' intervention motions without prejudice (in no small part because any Settlement Class Member who seeks to arbitrate may simply opt-out of the Settlement to preserve that right). Doc. 298.

20. In the months after Preliminary Approval, Class Counsel have worked diligently overseeing the Notice Program and Claim Process, including communicating with the Settlement Administrator, Kroll, nearly daily (often multiple times per day), and with Defendants' Counsel as circumstances require, to ensure the Notice Program and Claim Process remain on schedule and satisfies all requirements approved by the Court.

21. The Court also granted the Parties' joint motion to extend certain deadlines in the Settlement approval schedule and re-scheduled the Final Approval Hearing to bolster all Settlement Class Members' due process rights.

22. Class Counsel also monitor the Settlement Website to ensure it remains correct and user-friendly, reviewed weekly reports from and conferred with Kroll about the Claim Process, and responded to inquiries from Settlement Class Members. They have also prepared this Motion for Final Approval and its supporting documents, and will prepare for the Final Approval Hearing.

23. Class Counsel's work will not end with the Settlement's Final Approval. The obligation to oversee and assist with the Settlement and Claim Process will continue as long as necessary to ensure all Claimants with Valid Claims receive their Settlement Class Member Benefits, consistent with the Final Approval Order.

**Settlement Terms**

24. The Agreement creates two non-reversionary all cash Settlement Funds totaling $177,000,000.00 ($149,000,000.00 for the AT&T 1 Settlement Class and $28,000,000.00 for the AT&T 2 Settlement Class). AT&T has also attested to undertaking specific, reasonable steps to further secure customer information.

25. All Settlement Class Member Benefits, attorneys' fees, costs, Service Awards, and Settlement Administration Costs related to the AT&T 1 Action and the AT&T 2 Action will be paid from the AT&T 1 Settlement Fund and AT&T 2 Settlement Fund, respectively. AT&T funded the initial portion of the AT&T 1 Escrow Account and the AT&T 2 Escrow Account sufficient to cover the Settlement Administrator's estimated Settlement Administration Costs.

26. The details regarding the Settlement Class Member Benefits and Claim Process to obtain those benefits are in the Agreement and summarized in the Motion for Final Approval.

27. The Releases from the Settlement Class Members are narrowly tailored to the Actions' claims.

**Facts Supporting Final Approval of the Settlement**

28. The Settlement is the result of good faith, informed, and arm's-length negotiations between experienced class action attorneys familiar with the legal and factual issues at stake. Class Counsel endorse the Settlement as fair, reasonable, and adequate after they thoroughly investigated and analyzed Plaintiffs' claims; exhaustively researched applicable legal theories under federal frameworks, all fifty states, and other U.S. territories; synthesized divergent legal standards, procedural requirements, and relevant case precedents across these legal systems to draft compelling and comprehensive pleadings, including the Master Class Action Complaint in this Action (Doc. No. 281); engaged in substantial informal discovery for the Data Incidents and confirmatory discovery after the successful mediation; and identified and consulted with data security experts, enabling them to gain an understanding of the evidence related to central questions in the Actions and preparing them for well-informed settlement negotiations, facilitated by the assistance of a well-respected and experienced mediator.

29. Plaintiffs approve of the Settlement terms, as do Class Counsel, based on their extensive experience litigating data breach and other class actions.

30. The Settlement Class Members are all potentially affected by the same

Data Incidents as their respective Class Representatives and suffered the same types of harm; they thus have common interests with their Settlement Class(es). Moreover, the Class Representatives have ably represented the Settlement Classes, maintaining contact with Class Counsel and answering questions, reviewing and approving pleadings, assisting in the Action's investigation, and reviewing and approving the Settlement documents. Therefore, the Court should reaffirm the Plaintiffs as the Class Representatives.

31. The Court had already considered that AT&T 1 Class Counsel are highly qualified and have a great deal of experience litigating complex consumer class actions, including in the data privacy context, when appointing them to leadership positions in the AT&T 1 MDL. Thus, at the Preliminary Approval stage, the Court appointed them to represent the AT&T 1 Class. The Court also considered the similar qualifications of AT&T 2 Class Counsel to represent the AT&T 2 Class. *See* AT&T 2 Class Counsel resumes at ECF No. 283-3 at 12-65. This experience proved very beneficial to Plaintiffs and the Settlement Classes during the prosecution of the Actions, the Settlement negotiations, and now the Settlement approval process. Therefore, the Court should reaffirm the designations of Mark Lanier, Chris Seeger, Shauna Itri, Jean Martin, James Cecchi, and Sean Modjarrad as AT&T 1 Class Counsel, and J. Devlan Geddes, Raph Graybill, John Heenan, Jeff Ostrow, and Jason S. Rathod as AT&T 2 Class Counsel.

32. In evaluating the quality of Class Counsel's representation, the Court should also consider opposing counsel. Defendants are represented by extremely capable counsel who are worthy, highly competent adversaries.

33. Class Counsel vigorously pursued the Settlement Classes' interests, securing a Settlement that provides immediate, valuable benefits, while avoiding the risks of continued litigation. To do so, they leaned on their extensive experience in data breach class action litigation, their detailed factual investigation of the Data Incidents and legal claims against AT&T, and informal discovery and consultation with experts exchanged during the course of the mediated negotiations. They negotiated a Settlement that provides Settlement Class Members with valuable monetary relief and AT&T's confidential attestation to its specific, reasonable steps to further secure customer information.

34. Class Counsel continue to work tirelessly for Settlement Class Members in the Settlement approval process, and their efforts will continue after Final Approval when they work with Defendants and the Settlement Administrator to implement the Settlement and distribute the Settlement Class Member Benefits.

35. Plaintiffs and Class Counsel believe in the claims, but there is no denying they would need to navigate many hurdles to achieve the same result through class certification, a full trial, and appeals. The Settlement's guarantee of real relief for incurred harms—Cash Payments (either Documented Loss Cash

Payments or Tiered Cash Payments), and improved customer information security—must be evaluated in this light.

36. Data breach litigation is notoriously complex, risky, and time-consuming because the laws governing data breach claims continue to rapidly evolve. Plaintiffs would need to defeat motions to dismiss in both Actions; obtain and then maintain class certification after potential interlocutory appeals of the class certification rulings; prevail at the summary judgment and trial stages; and win any post-judgment appeals.

37. The Motion for Final Approval provides examples of orders and appellate opinions where the plaintiffs in data breach class actions did not achieve success at these stages. Moreover, even assuming these hurdles would be cleared in the end, the very effort to overcome them would necessitate tremendous time and expense.

38. This Settlement compares very favorably to, and often exceeds, similar common fund data breach settlements approved across the country, examples of which are cited in the Motion for Final Approval. A comparison with those settlements confirms the Settlement Class Member Benefits achieved by the non-reversionary Settlement Funds totaling $177,000,000.00 from the Settlement sit comfortably in a fair, reasonable, and adequate range for data incidents of this size and for the type of information at issue.

39. If approved, the Settlement will provide certain, substantial, and immediate relief to all Settlement Class Members submitting Valid Claims—the very relief these Actions sought to achieve. These substantial, tangible Settlement Class Member Benefits now (as opposed to years in the future, if at all) would not have been achieved without Class Counsel's efforts and constitute a significant result.

40. Ultimately, the Settlement reflects the Parties' compromise between worst-case and best-case scenarios, weighing the likelihood of various outcomes. Through the Settlement, Plaintiffs and Settlement Class Members avoid the risk of receiving nothing.

41. The Settlement treats Settlement Class Members equitably because the apportionment of relief among AT&T 1 Settlement Class Members and AT&T 2 Settlement Class Members takes appropriate account of differences among their claims. Settlement Class Members who are able to document their actual out-of-pocket losses are entitled to compensation for those losses; Settlement Class Members whose damages are more intangible (*e.g.*, loss of privacy) are also compensated via Tiered Cash Payments, but only after those with documented out-of-pocket losses are compensated. Moreover, the different Tiered Cash Payments are structured so as to provide greater relief for those Settlement Class Members who had more sensitive personal information exposed in the Data Incidents. This

carefully calibrated approach obtains fitting justice for all Settlement Class Members while appropriately prioritizing actual damages. Further, all Settlement Class Members will share in the benefits from AT&T's commitments to improved information security.

42. The Notice Program and Claim Process was structured to ensure that all Settlement Class members had adequate time to review the Settlement terms, compile documents supporting their Claim, and decide whether to submit a Claim and to opt-out of or object to the Settlement. Settlement Class Members may continue to submit Claim Forms online or by mail up to the December 18, 2025 Claim Form Deadline.

43. All Settlement Class Members are given an equal opportunity to claim Settlement Class Member Benefits: either a Documented Loss Cash Payment or an alternative Tiered Cash Payment. Documented Loss Cash Payments are capped at $5,000.00 for members of the AT&T 1 Settlement Class and $2,500.00 for members of the AT&T 2 Settlement Class due to the nature of the information exposed in the respective Data Incidents. The tiering of alternative payments also reasonably assigns higher value to the more valuable types of information accessed in the Data Incidents. All Tiered Cash Payments may be subject to a *pro rata* increase or decrease, depending on the number of Valid Claims, as the Settlement is designed to fully exhaust both of the Settlement Funds. Thus, the Settlement

Class Member Benefits distribution method will be equitable and effective.

44. In short, Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed Settlement fairly resolves their respective differences. The Settlement structure is fair and the allocation and distribution plan is reasonable. This combination of overlapping Settlement Classes from two separate Data Incidents into a single Settlement that fairly and equitably distributes funds from the separate Settlement Funds could only be achieved by attorneys whose skill was honed by years of experience in class action and data privacy actions.

45. The Court-approved Notice Program carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23. Class Counsel have continuously communicated and engaged with the Settlement Administrator since Preliminary Approval to facilitate the Notice Program and ensure it remains on track.

46. The only other agreements required to be disclosed pursuant to Rule 23(e)(2)(C)(iv) are the confidential separate agreements related to each of the Actions stating a specified number of opt-outs required to allow AT&T the option to terminate the Agreement. Given the current number of opt-outs, there is no reason to expect AT&T's option to be triggered.

**Facts Supporting Applications for Attorneys' Fees, Costs, and Service Awards**

47. The Actions represent two of the most significant and complex data breach cases, involving approximately tens of millions of affected consumers and requiring extraordinary legal expertise to navigate this evolving, high-risk area of law.

48. After agreeing to the Settlement's material terms, Class Counsel negotiated attorneys' fees and costs and Service Awards as part of the total Settlement Class Member Benefits. The Settlement is not contingent on the Court's approval of any particular award, and Defendants did not agree to not oppose such requests.

49. Plaintiffs were appointed as Class Representatives in the Preliminary Approval Order. The Settlement calls for reasonable Service Awards for the Class Representatives of up to $1,500.00 each (for a total of $54,000.00). The Service Awards are intended to compensate Class Representatives for their efforts on the Settlement Class's behalf.

50. Class Representatives have ably represented the Settlement Class and have been instrumental in assisting Class Counsel throughout this proceeding. Class Representatives initiated and remained in contact with Class Counsel; assisted in the investigation of the Actions; reviewed and approved the pleadings in this case and the Agreement; supervised and monitored Class Counsel, remaining

available for consultation throughout the negotiation process; and provided background documents and followed the progress of this litigation to ensure the Settlement Class received the best recovery possible given the particular circumstances and risks of the Actions. Class Representatives are committed to continuing to assist Class Counsel through and following Final Approval.

51. Under the Fifth Circuit's percentage of the fund method, AT&T 1 Class Counsel seek a reasonable $49,666,666.66 attorneys' fees award (one-third of the AT&T 1 Settlement Fund), and AT&T 2 Class Counsel seek a reasonable $9,333,333.33 attorneys' fees award (one-third of the AT&T 2 Settlement Fund). AT&T 1 Class Counsel also seek $564,792.90 for litigation costs reasonably and necessarily incurred in the AT&T 1 Action. AT&T 2 Class Counsel also seek $231,438.36 for litigation costs reasonably and necessarily incurred in the AT&T 2 Action. The Notice forms advised the Settlement Class of these intended requests.

52. Class Counsel and Participating Counsel[4] agreed to represent the Plaintiffs and the Settlement Class on a fully contingent basis, knowing they would have to advance the time summarized above and out-of-pocket costs addressed

[4] "Participating Counsel" is defined in this Court's order as "Lead Counsel, PEC, and PSC (along with members and staff of their respective firms), any other counsel authorized by Lead Counsel to perform work that may be considered for common benefit compensation, and/or counsel who have been specifically approved by this Court as Participating Counsel prior to incurring any such cost or expense. Doc. 200 at 2. For purposes of this Motion for Final Approval, Participating Counsel also includes the Plaintiffs' Co-Lead Counsel, Plaintiffs' Executive Committee/Liaison Counsel, and other Plaintiffs' counsel appointed in the Snowflake MDL. Snowflake Docs. 248, 255.

below with no guarantee of recovery. In doing so, their investments of time representing Plaintiffs and the Settlement Classes diverted time and resources away from the representations of other clients in other fee-generating cases.

53. The retention agreements with Plaintiffs in the Actions were contingent fee agreements. No payment of attorneys' fees would occur in either case but for an attorneys' fee award in an individual or class settlement.

54. Class Counsel and Participating Counsel have not been compensated for their time, nor have they been reimbursed for the significant costs they have incurred. Due to the uncertainty of the data breach legal landscape, there was significant risk of nonpayment. Class Counsel and Participating Counsel assumed the risk of these engagements and worked diligently and efficiently to obtain a substantial and successful result, which they did. Less knowledgeable and experienced counsel would not have accomplished the Settlement with the efficiency and success achieved.

55. Defendants are represented by experienced, qualified counsel, creating formidable opposition that required highly experienced and skilled advocacy from Class Counsel and Participating Counsel to achieve meaningful and valuable relief for the Settlement Classes.

56. Applying the percentage of the fund method to determine the requested attorneys' fee awards is reasonable. Class Counsel and Participating

Counsel were incentivized to efficiently resolve the Actions for tens of millions of Settlement Class Members, aligning their interests with the Settlement Class Members to encourage prompt success by way of the Settlement. Public policy concerns—ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—also support the requested fee. This practice encourages attorneys to assume this risk and allows plaintiffs who would otherwise not be able to hire an attorney to obtain competent counsel.

57. Considering Defendants have colorable defenses, continuing to pursue the Actions posed a significant risk for Plaintiffs and the Settlement Classes, and makes litigating data breach cases less desirable in general.

58. Class Counsel and Participating Counsel appointed to the Actions are some of the most experienced data privacy and class action litigators in the country. This formidable team of attorneys used their years of experience handling data breach class actions and other complex litigation in federal and state courts throughout the country to litigate the Actions efficiently and to achieve a favorable resolution.

59. In the data breach context, Class Counsel and Participating Counsel are responsible for shaping much of the jurisprudence that courts rely on today. Their experience in developing the legal framework in this sector was invaluable in

navigating the complicated issues presented in the Actions. They have led some of the most intricate multidistrict litigation privacy cases, and in so doing have worked with nearly every privacy expert, briefed and argued nearly every type of dispositive motion, argued for and obtained class certification, and settled some of the largest breaches in history. Their experience and skill was essential to obtaining a favorable Settlement of the claims arising from the two Data Incidents.

60. After contributing greatly to the creation of the two MDLs through their extensive work, each of the Actions required Class Counsel and Participating Counsel to manage the complex procedural posture of each MDL proceeding and coordinating efforts among many firms to maximize efficiency and minimize duplication of effort. The nationwide nature of the claims ultimately required the involvement of these multiple firms to fully represent the interests of the Settlement Class Members impacted by the AT&T 1 Data Incident and AT&T 2 Data Incident.

61. This Court has established protocols for common-benefit work in the AT&T 1 litigation under Case Management Order #8. Doc. 200. Similar protocols were implemented by AT&T 2 Class Counsel in the Snowflake MDL.

62. Between March 2024 and the filing of the Motion for Final Approval, collectively thousands of hours were invested by Class Counsel and Participating Counsel, successfully consolidating multiple nationwide class actions into

coordinated MDL proceedings and ultimately guiding the case through settlement.

63. Prior to filing any lawsuits against Defendants, Class Counsel and Participating Counsel involved in each of the Actions conducted comprehensive factual and legal investigations into the respective Data Incidents. Once filed, these firms and attorneys worked hard to have the JPML create an MDL for each Data Incident.

64. Once the MDLs were created and following their appointments to leadership positions, Class Counsel and Participating Counsel worked extensively and coordinated with attorneys across the country who had filed related cases transferred to each MDL to develop comprehensive litigation strategies. This included thoroughly analyzing the technical aspects of each Data Incident that impacted personal information (the AT&T 1 Data Elements or AT&T 2 Data Elements) belonging to tens of millions of current and former AT&T customers in each Data Incident. Collectively, hundreds of potential class members were interviewed to understand the scope and nature of their harm from each Data Incident to identify plaintiffs to be included in the consolidated pleadings in each Action to represent putative national and state subclasses. Class Counsel and Participating Counsel also researched the legal landscape surrounding data breach litigation in all fifty states, the District of Columbia, Puerto Rico, and the Virgin Islands because of the national impact of each Data incident.

65. Class Counsel worked closely with each MDL Court and Defendants' Counsel to establish case management protocols confirmed in case management orders entered in the respective Actions. In the AT&T 1 Action, Special Masters were appointed by the Court to aid the pretrial proceedings. The Parties negotiated protective orders and electronically stored information protocols to govern document production in each Action, which each MDL Court approved.

66. In the AT&T 2 Action, hotly contested case management orders were also entered prior to settlement, including regarding the filing of representative complaints and the early exchange of enhanced Initial Disclosures. Representative complaints that included AT&T were filed in the AT&T 2 Action, including the Third Amended Representative Class Action Complaint. AT&T 2 Class Counsel were ready to oppose AT&T's efforts to compel arbitration and/or dismiss the claims, like they did in responding to Snowflake's and other spoke defendants' multiple motions to dismiss that the Snowflake MDL Court recently denied. There is no certainty that AT&T's motions would have also been denied. The extensive common benefit work in the Snowflake MDL inured to the benefit of the AT&T 2 Settlement Class for their claims arising out of the AT&T 2 Data Incident.

67. The preparation of the complaints filed against Defendants at different stages of the litigation, including the Master Class Action Complaint filed after the Parties signed the Agreement, required extensive legal research across multiple

jurisdictions and careful selection and coordination of twenty-nine AT&T 1 Plaintiffs and seven AT&T 2 Plaintiffs, all of whom are Class Representatives. This process involved analyzing the suitability of potential class representatives, ensuring adequate representation of the putative nationwide and state subclasses affected by each Data Incident, and crafting federal and state law claims arising from each Data Incident.

68. For both MDLs, Class Counsel separately retained and worked extensively with a number of merits and damages expert witnesses covering critical subject areas including cybersecurity, data breach forensics, damages calculation, and industry standards related to the Data Incidents. These experts consulted extensively with Class Counsel, analyzing the technical aspects of each Data Incident, reviewing AT&T's security protocols impacted in each Data Incident, and preparing to support our claims regarding liability and damages stemming from that specific Data Incident. This expert development was essential given the complex technical nature of data breach litigation and the need to establish both the scope of AT&T's security failures and the resulting harm to consumers affected by each of the Data Incidents.

69. Once the Parties agreed to engage in settlement negotiations, Class Counsel embarked on efforts to obtain detailed informal discovery from Defendants concerning the Data Incidents to be well informed and prepared for

their separate mediations. Armed with that discovery, their extensive research, and their consultations with experts, they prepared and exchanged detailed mediation briefs outlining Plaintiffs' and Defendants' positions on liability, damages, class certification, and settlement-related issues. The three-day mediation with Mr. Meyer culminated in the proposed Settlement. Following the mediation, AT&T provided confirmatory discovery to further bolster Class Counsel's understandings of how each Data Incident occurred, AT&T's subsequent investigations into that Data Incident, the Data Elements impacted, and the security enhancements implemented in response.

70. The necessarily detailed tasks to memorialize the Settlement terms for the Court's approval was both aided and expanded by the Parties' decision to settle both Actions in the same Agreement and Settlement approval process. With millions of Settlement Class Members being potentially impacted by each Data Incident, it was necessary to document how those in one or both Settlement Classes could claim the relief to which they were entitled based on the types of impacted personal information and varying degrees of harm. The negotiations of those terms and then the necessary Notice Program to afford best practicable notice to the Settlement Class Members and satisfy due process was extensive with the assistance of the Settlement Administrator to develop and draft the Notices and Claim Forms.

71. As noted above, it took ten weeks to complete the Agreement, Notices, and Claim Forms, following which Class Counsel prepared the Motion for Preliminary Approval.

72. Class Counsel were forced to spend substantial time responding to the efforts of the two groups who opposed Preliminary Approval, and then appellate proceedings that sprang from the Court's denials of intervention motions and efforts to stop or stay the Settlement approval process. No appeal pertaining to Preliminary Approval of the Settlement is pending.

73. Once Preliminary Approval was granted on June 20, 2025, the extensive work on implementing the Notice Program with the Settlement Administrator and Defendants began to ensure direct Email Notice and Postcard Notice, Publication Notice, and the Claim Process are completed pursuant to the Agreement and Preliminary Approval Order. As noted above, almost daily interaction has been required to ensure the successful completion of those processes, as outlined in the Settlement Administrator's declaration filed in support of the Motion for Final Approval.

74. To ensure due process was afforded to the Parties and Settlement Class Members, Class Counsel, in consultation with Defendants' Counsel, agreed the Parties should seek to amend the Preliminary Approval Order so that certain deadlines pertaining to the Notice Program and Claim Process would be extended,

which the Court approved. With that additional work completed, Class Counsel was able to finish the preparation of the Motion for Final Approval, seeking Final Approval of the Settlement and applying for attorneys' fees and costs awards and Service Awards for the Class Representatives.

75. Class Counsel will prepare for and attend the Final Approval Hearing, responding in writing to any timely objections that are filed before that hearing. Class Counsel have already spent extensive time analyzing the 15 objections submitted to date, determining why many are procedurally deficient and all should be overruled as lacking merit. Class Counsel have spent substantial time communicating with the objectors and the Settlement Administrator about the objections. Following Final Approval, Class Counsel will be required to expend extensive time ensuring the Settlement terms are successfully implemented and the Settlement Class Member Benefits are fully distributed to those with Valid Claims.

76. AT&T 1 Class Counsel request $564,792.90 as reimbursement for the litigation costs reasonably and necessarily incurred in representing the AT&T 1 Plaintiffs and the AT&T 1 Settlement Class in the AT&T 1 Action. As detailed in the chart below, the costs are reasonable, customary, and reimbursable.

| **Cost Category** | **Amount** |
|---|---|
| Court and Filing Fees | $6,381.73 |
| Investigation & Service of Process Fees | $10,341.89 |
| Travel and Accommodations | $114,913.31 |

| | |
|---|---|
| Research | $75,990.18 |
| Expert/Consultant Fees | $280,087.00 |
| Special Master Fees | $76,981.79 |
| Transcripts | $97.00 |
| **Total** | **$564,792.90** |

77. AT&T 2 Class Counsel request $231,438.36 as reimbursement for the litigation costs reasonably and necessarily incurred in representing the AT&T 2 Plaintiffs and the AT&T 2 Settlement Class in the AT&T 2 Action. As detailed in the chart below, the costs are reasonable, customary, and reimbursable.

| **Cost Category** | **Amount** |
|---|---|
| Filing, Court, and Service Fees | $6,216.82 |
| Expert Costs | $185,000.00 |
| Travel and Accommodations | $40,221.54 |
| **Total** | **$231,438.36** |

I declare under penalty of perjury that the foregoing is true and correct. Executed in Houston, Texas on November 3, 2025.

*<u>/s/ Mark Lanier</u>*
Mark Lanier

I declare under penalty of perjury that the foregoing is true and correct. Executed in Ridgefield Park, New Jersey on November 3, 2025.

*<u>/s/ Chris Seeger</u>*
Chris Seeger

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Philadelphia, Pennsylvania on November 3, 2025.

*/s/ Shauna Itri*
Shauna Itri

I declare under penalty of perjury that the foregoing is true and correct. Executed in Winston-Salem, North Carolina on November 3, 2025.

*/s/ Jean S. Martin*
Jean S. Martin

I declare under penalty of perjury that the foregoing is true and correct. Executed in Roseland, New Jersey on November 3, 2025.

*/s/ James Cecchi*
James Cecchi

I declare under penalty of perjury that the foregoing is true and correct. Executed in Richardson, Texas on November 3, 2025.

*/s/ Sean Modjarrad*
Sean Modjarrad

I declare under penalty of perjury that the foregoing is true and correct. Executed in Fort Lauderdale, Florida on November 3, 2025.

*/s/ Jeff Ostrow*
Jeff Ostrow

I declare under penalty of perjury that the foregoing is true and correct. Executed in Bozeman, Montana on November 3, 2025.

*/s/ J. Devlan Geddes*
J. Devlan Geddes

I declare under penalty of perjury that the foregoing is true and correct. Executed in Great Falls, Montana on November 3, 2025.

*/s/ Raph Graybill*
Raph Graybill

I declare under penalty of perjury that the foregoing is true and correct. Executed in Billings, Montana on November 3, 2025.

*/s/ John Heenan*
John Heenan

I declare under penalty of perjury that the foregoing is true and correct. Executed in Washington, DC on November 3, 2025.

*/s/ Jason S. Rathod*
Jason S. Rathod