IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE: AT&T INC. CUSTOMER** | § | |
| **DATA SECURITY BREACH** | § | |
| **LITIGATION** | § | CASE NO. 3:24-cv-00757-E |
| | § | |
| | § | MDL DOCKET NO. 3:24-md- |
| This Document Relates to All Cases | § | 03114-E |
| | § | |

## OBJECTION TO CLASS CERTIFICATION AND CLASS SETTLEMENT

Respectfully submitted,

**BEIGHLEY, MYRICK, UDELL**
**& ZEICHMAN PA**

Maury L. Udell, Esq.
Fla. Bar No. 121673
mudell@bmulaw.com
2601 S. Bayshore Drive, Suite 770
Miami, Florida 33133
Tele: (305) 349-3930
Fax: (305) 349-3931

**BUTLER SNOW LLP**

By: */s/ Amanda G. Taylor*
Amanda G. Taylor
Texas Bar No. 24045921
Amanda.taylor@butlersnow.com
1400 Lavaca St., Suite 1000
Austin, Texas 78701
Tele: (737) 802-1800
Fax: (737) 802-1801

Kyle Miller
MS Bar No. 102227
Kyle.miller@butlersnow.com
1020 Highland Colony Pkwy, Ste. 1400
Ridgeland, Mississippi 39157
Tele: (601) 948-5711
Fax: (601) 985-4500

**ATTORNEYS FOR OBJECTORS SCOTT
GHERMAN, BRADLEY JOHNSON, BRITTANI
KAYE, ROB CARUSO, AND BRITTANY
BONNER**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................v

USE OF GENERATIVE ARTIFICIAL INTELLIGENCE ................................... xi

INTRODUCTION AND SUMMARY OF THE ARGUMENT ...............................1

FACTS AND BACKGROUND ...............................................................2

ARGUMENT AND AUTHORITIES.........................................................3

A.  The Rules Enabling Act Prohibits Using Rule 23 to Strip the Customers of Their Contractual Right to Individual Litigation........... 3

B.  AT&T Is Estopped from Participating in This Class Action.............. 6

C.  The Proposed Class Fails to Satisfy Rule 23's Requirements and Should Not Be Certified................................................. 8

    1.  Legal standard for class certification .........................................8

    2.  The Named Plaintiffs' claims are not typical of the class members' claims. ................................................................10

    3.  The Named Plaintiffs and Class Counsel are not adequate representatives..............................................................11

D.  The Settlement Should Not Be Approved Because the Class Benefits Are Unreasonably Low and the Proposed Class Counsel's Fees Are Unreasonably High. ..................................................... 12

    1.  Class settlements must be fair, reasonable, and adequate. .......13

    2.  The proposed monetary relief is inadequate. ...........................14

    3.  The lack of non-monetary relief exacerbates the Settlement Agreement's inadequacy..........................................16

    4.  The requested fee is unreasonable. ...........................................18

E.  The Opt-Out Procedure Is Unreasonably Restrictive..................... 23

CONCLUSION .................................................................................27

CERTIFICATE OF WORD COUNT........................................................28

CERTIFICATE OF SERVICE ...............................................................28

# TABLE OF AUTHORITIES

*Page(s)*

## *Cases*

*Abernathy v. DoorDash, Inc.,*
438 F. Supp. 3d 1062 (N.D. Cal. 2020).........................................................1, 23

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)...............................................................................................4

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...............................................................................................9

*Arena v. Intuit, Inc.*,
Case No. 19-cv-02546-CRB, 2021 WL 834253 (N.D. Cal. Mar. 5, 2021)... 24, 25

*AT&T Mobility LLC v. Bernardi*,
Nos. C 11–03992 CRB, C 11–04412 CRB, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) ..............................................................................................................8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).................................................................................... 1, 4, 7

*Avilez v. Pinkerton Gov't Servs., Inc.*,
596 F. App'x 579 (9th Cir. 2015) ......................................................................11

*Califano v. Yamasaki*,
442 U.S. 682 (1979).............................................................................................8

*Chun v. Fluor Corp., No. 3:18-CV-1*,
338-X, 2024 WL 2402083 (N.D. Tex. May 23, 2024).......................... 20, 21, 22

*Coneff v. AT&T Corp.*,
673 F.3d 1155 (9th Cir. 2012) ...........................................................................7

*Cruz v. Cingular Wireless LLC*,
648 F.3d 1205 (11th Cir. 2011) .........................................................................7

*Davis v. Wakelee*,
156 U.S. 680 (1895).............................................................................................6

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) .......................................................................19

*del Toro Lopez v. Uber Techs., Inc.*,
    No. 17-cv-06255-YGR, 2018 WL 5982506 (N.D. Cal. Nov. 14, 2018)..............26

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,
    431 U.S. 395 (1977)...........................................................................................10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    No. 3:02-CV-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018)...............19

*Forby v. One Techs., LP*,
    No. 3:16-CV-856-L, 2020 WL 4201604 (N.D. Tex. July 22, 2020) ...................12

*Gen. Tel. Co. v. Falcon*,
    457 U.S. 147 (1982)..............................................................................................9

*Greenhill v. RV World, LLC*,
    727 F. Supp. 3d 798 (S.D. Ill. 2024).....................................................................4

*H.L. v. Matheson*,
    450 U.S. 398 (1981)..............................................................................................9

*Hahn v. JetBlue Airways Corp.*,
    No. 21-CV-6867 (CBA) (LB), 2022 WL 22908406 (E.D.N.Y. Aug. 25, 2022) ...4

*Heffernan Bryant v. United Furniture Indus., Inc.*,
    No. 1:13CV246-SA-DAS, 2017 WL 639320 (N.D. Miss. Feb. 16, 2017) ..........20

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ...........17

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...............................................................................20

*In re Cap. One Consumer Data Sec. Breach Litig.*,
    No. 119MD2915AJTJFA, 2022 WL 18107626 (E.D. Va. Sept. 13, 2022).........17

*In re Chesapeake Energy Corporation*,
    567 F. Supp. 3d 754, 785-86 (S.D. Tex. 2021) ...................................................25

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   999 F.3d 1247 (11th Cir. 2021) .................................................................. 16, 17

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................19

*In re Pool Prods. Distribution Mkt. Antitrust Litig.*,
   No. MDL 2328, 2015 WL 4528880 (E.D. La. July 27, 2015) ............................22

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016).........17

*In re TikTok, Inc., Consumer Priv. Litig.*,
   565 F. Supp. 3d 1076 (N.D. Ill. 2021) ......................................................13

*In re TikTok, Inc., Consumer Privacy Litig.*,
   617 F. Supp. 3d 904 (N.D. Ill. 2022) ......................................................24

*In re Titanium Dioxide Antitrust Litig.*,
   962 F. Supp. 2d 840 (D. Md. 2013) .........................................................12

*In re T-Mobile Customer Data Sec. Breach Litig.*,
   111 F.4th 849 (8th Cir. 2024) ................................................................23

*In re T-Mobile Customer Data Sec. Breach Litig.*,
   No. 4:21-MD-03019-BCW, 2023 WL 11878508 (W.D. Mo. June 29, 2023)
   ....................................................................................................... passim

*In re Vioxx Prods. Liab. Litig.*,
   No. MDL 1657, 2018 WL 4613941 (E.D. La. Sept. 26, 2018)............................19

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   No. MDL 2672 CRB (JSC), 2017 WL 672727 (N.D. Cal. Feb. 16, 2017)..........25

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020).............17

*Int'l. Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*,
   400 F.2d 465 (5th Cir. 1968) ..................................................................5

*Izzio v. Century Golf Partners Mgmt., L.P.*,
   670 Fed. App'x 348 (5th Cir. 2016) ...........................................................9

*Jenkins v. Trustmark Nat. Bank*,
    300 F.R.D. 291 (S.D. Miss. 2014) .......................................................................22

*Jensen v. Cablevision Sys. Corp.*,
    372 F. Supp. 3d 95 (E.D.N.Y. 2019) .................................................................11

*Johnson v. BLC Lexington, SNF, LLC*,
    No. CV 5:19-064-DCR, 2020 WL 3578342 (E.D. Ky. July 1, 2020) ................10

*Johnson v. Georgia Highway Exp., Inc.*,
    488 F.2d 714 (5th Cir. 1974) ..........................................................................19

*Jones v. JGC Dallas LLC*,
    No. 3:11-CV-2743-O, 2014 WL 7332551 (N.D. Tex. Nov. 12, 2014) ...............22

*Kaltwasser v. AT&T Mobility LLC*,
    812 F. Supp. 2d 1042 (N.D. Cal. 2011) ...............................................................7

*King v. Capital One Bank (USA), N.A.*,
    No. 3:11-CV-00068, 2012 WL 5570624 (W.D. Va. Nov. 15, 2012) ..................11

*Klein v. AT&T Corp.*,
    23 Civ. 11038 (DEH)(RFT), 2024 WL 3409041 (S.D.N.Y. July 15, 2024) ..........7

*Kostka v. Dickey's Barbecue Restaurants, Inc.*,
    No. 3:20-CV-03424-K, 2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) ...... 13, 14

*Langbecker v. Elec. Data Sys. Corp.*,
    476 F.3d 299 (5th Cir. 2007) ..........................................................................11

*Lindsay v. Carnival Corp.*,
    No. C20-982 TSZ, 2021 WL 2682566 (W.D. Wash. June 30, 2021) ...................4

*Maldini v. Marriott Int'l., Inc.*,
    140 F.4th 123 (4th Cir. 2025) ............................................................................4

*McCumber v. Invitation Homes, Inc.*,
    No. 3:21-CV-02194-B, 2024 WL 4183526 (N.D. Tex. July 30, 2024) ...............22

*McManus v. Fleetwood Enters., Inc.*,
    320 F.3d 545 (5th Cir. 2003) ............................................................................9

*Nelson v. AT&T Mobility LLC*,
  No. C10–4802 TEH, 2011 WL 3651153 (N.D. Cal. Aug. 18, 2011)....................7

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)..............................................................................................6

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)..............................................................................................9

*Renton v. Kaiser Found. Health Plan, Inc.*,
  Civ. No. C00–5370RJB, 2001 WL 1218773 (W.D. Wash. Sept. 24, 2001)........10

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ..............................................................................20

*Tan v. Grubhub, Inc.*,
  No. 15-cv-05128, 2016 WL 4721439 (N.D. Cal. July 19, 2016)........................11

*Trimble v. AT&T Mobility LLC*,
  Civ. A. No. 5:23-CV-00038-KDB-DSC, 2023 WL 5493584 (W.D.N.C. Aug. 24,
  2023) ....................................................................................................................7

*Tschudy v. J.C. Penney Corp., Inc.*,
  Case No. 11-cv-1011 JM (KSC), 2015 WL 8484530 (S.D. Cal. Dec. 9, 2015) ..10

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ..............................................................................19

*Vassallo v. Goodman Networks, Inc.*,
  No. 15CV97-LG-CMC, 2016 WL 6037847 (E.D. Tex. Oct. 14, 2016) .............20

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)...........................................................................................8, 9

*Ward v. Hellerstedt*,
  753 Fed. App'x 236 (5th Cir. 2018) .....................................................................9

*WorldVue Connect Glob., L.L.C. v. Szuch*,
  155 F.4th 472 (5th Cir. 2025) ...............................................................................5

*Zedner v. United States*,
  547 U.S. 489 (2006)..............................................................................................6

*Zwicky v. Diamond Resorts Mgmt., Inc.*,
    343 F.R.D. 101 (D. Ariz. 2022)...........................................................................20

**Statutes**

15 U.S.C.A. § 7001(a)(1)...........................................................................23

28 U.S.C. § 2072 ...........................................................................3

47 U.S.C. § 301 ...........................................................................15

47 U.S.C. § 521 ...........................................................................15

47 U.S.C. §§ 338(i)(7), 551(f)(2)...........................................................................15

Cal. Civ. Code § 1798.150(a)(1)(A)...........................................................................15

Tex. Bus. & Com. Code § 322.007(a) ...........................................................................23

**Rules**

Fed. R. Civ. P. 23 ........................................................................... 1, 3, 4, 13

Fed. R. Civ. P. 23(a)...........................................................................10

Fed. R. Civ. P. 23(e)(2)...........................................................................13

Fed. R. Civ. P. 23(e)(4)...........................................................................26

Rule 23(a)(3)...........................................................................10

Rule 23(a)(4)...........................................................................11

Rule 23(b)(3)...........................................................................26

**Other Authorities**

4 Newberg and Rubenstein on Class Actions § 13:51 (6th ed.)...........................................................................13

## <u>USE OF GENERATIVE ARTIFICIAL INTELLIGENCE</u>

In accordance with N.D. Texas Local Rule 7.2(f), the undersigned counsel discloses that the following AI tools were used in the preparation of this document: Westlaw AI-Assisted Research and Westlaw QuickCheck were used to begin legal research and as a secondary source to check the accuracy and history of certain citations. Enterprise ChatGPT Thinking mode was used to assist with the case background and analysis of similar claims, and initial legal research. No legal or factual citations were incorporated to this document without first being independently verified by an attorney using traditional Westlaw research tools, and no portion of this document was drafted by AI.

## <u>INTRODUCTION AND SUMMARY OF THE ARGUMENT</u>

Fifteen years ago, AT&T persuaded the Supreme Court that its customers would be "better off under their arbitration agreement with AT&T than they would have been as participants in a class action" and obtained a holding that AT&T's class action waiver/arbitration provision was enforceable against its customers. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). In the years since, AT&T has repeatedly and successfully shutdown class actions brought against it using these same contractual waivers. But here, AT&T seeks to flip the script,[1] asking this Court to ignore the class action waiver contained in its contract so that AT&T can force an unreasonably low settlement on its customers.

The Court should reject AT&T's attempt for the following reasons:

1.  The Rules Enabling Act prohibits using Fed. R. Civ. P. 23 to abridge or modify the substantive contractual rights of the absent class members to engage in individual litigation/arbitration.

2.  AT&T is estopped from participating in this class action because it has successfully taken a contrary position in prior litigation.

3.  The prosed class fails Rule 23's typicality and adequacy requirements.

---

[1] This 180-degree change in position is not unique to AT&T. *See, e.g., Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067–68 (N.D. Cal. 2020) ("[I]n irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.").

1

4. The proposed class settlement is inadequate and unreasonable.

5. The opt out requirement of a "wet ink" signature is unreasonable.

## FACTS AND BACKGROUND

The Objectors are five AT&T customers whose personal information was leaked as part of the underlying data breach incidents. This Objection is being filed on their behalf and applies to all class members whose customer service agreement with AT&T contains class action waiver and arbitration provisions.[2]

Each of the Objectors executed a Customer Service Agreement ("CSA") with AT&T, which states that disputes must be resolved by arbitration or in small claims court and expressly prohibits attempting to resolve disputes through class actions. Notably, the class action waiver is bilateral—the customer and AT&T agreed not to participate in class actions. The CSA provides the following:

> **You and AT&T agree that arbitration will take place on an individual basis. Class arbitrations, class actions, and representative actions are not permitted. This means that you and <u>AT&T will neither file a lawsuit</u> (in any court other than a small claims court), <u>nor</u> pursue or <u>participate in an action</u> seeking relief on behalf of others.**

Appx.6, § 1.3.1 (underlining added).

> **By entering into this Agreement, <u>you and AT&T are each waiving the right</u> to a trial by jury or <u>to participate in a class action</u>.**

---

[2] Upon information and belief, some version of the class action waiver and arbitration provisions exists in all putative class members' service agreements.

Appx.6, § 1.3.2.1 (underlining added).

> **YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING.**

Appx.8, § 1.3.2.6.

## ARGUMENT AND AUTHORITIES

AT&T seeks to create a "settlement" exception to the CSA's class action waiver that gives AT&T the unilateral right to resolve disputes through class-wide settlement. No such exception exists. AT&T is asking the Court to ignore the Objectors' contractual rights to engage in individual litigation/arbitration. The Objectors respectfully request that this Court decertify the class, deny the motion to approve the settlement, and require AT&T to honor the CSA's terms.

**A.    The Rules Enabling Act Prohibits Using Rule 23 to Strip the Customers of Their Contractual Right to Individual Litigation.**

The proposed settlement would violate the Rules Enabling Act ("REA"). When Congress granted the Supreme Court the power to enact rules of civil procedure, Congress expressly limited the scope of that power, providing "[s]uch rules shall not abridge, enlarge or modify any substantive right…." 28 U.S.C. § 2072. If application of Rule 23 would abridge or modify a substantive right of the class, the class settlement must be rejected.

3

The Supreme Court has held that Rule 23 does not create a substantive right to class actions. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). Relatedly, the Supreme Court stated that using Rule 23 to invalidate a class action waiver/arbitration provision violates the REA. *See id.* ("[I]nvalidating private arbitration agreements denying class adjudication[] would be an abridge[ment] or modif[ication] of a substantive right forbidden to the Rules…." (citing REA)); *see also Concepcion*, 563 U.S. at 351-52 (reversing a finding that a class action waiver was unconscionable because "[a]rbitration is a matter of contract, and the FAA requires courts to honor parties' expectations").

Courts apply *Italian Colors* to uphold contractual class action waivers. *See Maldini v. Marriott Int'l., Inc.*, 140 F.4th 123, 134 (4th Cir. 2025) (reversing district court's conclusion that class action waiver was unenforceable because it conflicted with Rule 23); *see also Greenhill v. RV World, LLC*, 727 F. Supp. 3d 798, 809 (S.D. Ill. 2024); *Hahn v. JetBlue Airways Corp.*, No. 21-CV-6867 (CBA) (LB), 2022 WL 22908406, at *6 (E.D.N.Y. Aug. 25, 2022); *Lindsay v. Carnival Corp.,* No. C20-982 TSZ, 2021 WL 2682566, at *4 (W.D. Wash. June 30, 2021) (all applying *Italian Colors* to reject applying Rule 23 to overcome class action waivers). These decisions recognize that a class action is a procedural device that can be limited by contract.

This is exactly what the parties did here. Waiving class actions comes with benefits and burdens to each side. The Court cannot now rewrite the contract simply

because AT&T decided that it no longer likes the terms of its class action waiver. *See e.g.*, *WorldVue Connect Glob., L.L.C. v. Szuch*, 155 F.4th 472, 480 (5th Cir. 2025) ("A contract's plain language controls"; courts should "giv[e] effect to all the contract provisions so that none will be rendered meaningless.") (internal quotations and citations omitted); *Int'l. Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 470 (5th Cir. 1968) (refusing to "rewrite the contract just because one of the parties would in retrospection have written it differently" or "to include terms which [the court] think[s] the parties should have included").

It is no answer that the proposed settlement includes an opt-out provision. The absent class members and AT&T already agreed to individual litigation. Requiring the absent class members to affirmatively opt out would be a modification of their substantive rights, and no customer would have reasonably anticipated needing to opt out after executing the CSA. That is, the CSA has already provided the absent class members with the substantive right of individual litigation; there is no provision in the CSA requiring additional affirmative steps to avail themselves of this negotiated right. Accordingly, requiring absent class members to affirmatively opt out to take advantage of a previously contracted substantive right would be a modification of that right, which is prohibited by the REA.

**B.    AT&T Is Estopped from Participating in This Class Action.**

AT&T has successfully litigated the enforceability of the CSA's class action waiver and arbitration provision, repeatedly convincing courts throughout the country to dismiss customers' claims and prohibit class actions based on the very class action waiver and arbitration provision the Objectors seek to enforce here. Having convinced numerous courts to enforce this provision when it advantaged AT&T, it would be wholly inconsistent and unfair to ignore this provision when its enforcement would advantage the absent class members.

Judicial estoppel prevents parties from successfully litigating an issue in one case and taking an inconsistent position in a subsequent case. *See Zedner v. United States*, 547 U.S. 489, 504 (2006). "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position....'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895))). When determining if judicial estoppel applies, courts look at three factors: (1) whether a party's later position is clearly inconsistent with the party's earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position; and (3) whether the party seeking to assert the inconsistent position would derive an unfair advantage for itself or impose an unfair detriment on the opposing party. *Id.* at 504.

AT&T's current position—that it can force a class action settlement—is irreconcilable with its long-standing, successful litigation position that the CSA prohibits participation in class actions and customers must pursue their claims only in individualized arbitration or small-claims proceedings:

- *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (holding FAA requires enforcement of AT&T's arbitration agreement and class-action waiver; rejecting state-law rules that would invalidate the waiver);

- *Coneff v. AT&T Corp.*, 673 F.3d 1155 (9th Cir. 2012) (reversing denial of AT&T's motion to compel arbitration; holding FAA preempts Washington law invalidating AT&T's class-action waiver);

- *Cruz v. Cingular Wireless LLC*, 648 F.3d 1205 (11th Cir. 2011) (enforcing AT&T's contractual class-action waiver; compelling customers to pursue their claims in individual arbitration, notwithstanding arguments that the waiver was contrary to public policy);

- *Kaltwasser v. AT&T Mobility LLC*, 812 F. Supp. 2d 1042 (N.D. Cal. 2011) (granting AT&T's motion to compel individual arbitration under service agreement; rejecting arguments that class procedures were required to vindicate statutory claims);

- *Trimble v. AT&T Mobility LLC*, Civ. A. No. 5:23-CV-00038-KDB-DSC, 2023 WL 5493584 (W.D.N.C. Aug. 24, 2023) (granting AT&T's motion to compel arbitration in data-breach case based on CSA requiring individual arbitration in lieu of class litigation);

- *Klein v. AT&T Corp.*, 23 Civ. 11038 (DEH) (RFT), 2024 WL 3409041 (S.D.N.Y. July 15, 2024) (enforcing CSA; compelling arbitration of consumer claims pursuant to its dispute-resolution and arbitration provisions);

- *Nelson v. AT&T Mobility LLC*, No. C10–4802 TEH, 2011 WL 3651153 (N.D. Cal. Aug. 18, 2011) (granting AT&T's motion to compel arbitration and stay putative injunctive-relief class action; enforcing agreement that waives right

7

to participate in class action and permits only individual relief in arbitration); and

- *AT&T Mobility LLC v. Bernardi*, Nos. C 11–03992 CRB, C 11–04412 CRB, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) (granting AT&T preliminary injunction enjoining customers' class arbitrations; finding contract prohibits customers from pursuing class or representative proceedings because such would render express prohibition of class arbitration "meaningless").

Having persuaded multiple courts that near-identical class-action waivers and arbitration provisions must be strictly enforced to prevent class proceedings when aggregation would expand its exposure, AT&T cannot now be permitted to disregard the very same waiver simply because a class settlement better serves its interests. That shift comes at the expense of customers who wish to rely on their contractual right to proceed individually.

## C.    The Proposed Class Fails to Satisfy Rule 23's Requirements and Should Not Be Certified.

The underlying Settlement Class fails to satisfy Rule 23's typicality and adequacy of representation requirements.

### 1.   Legal standard for class certification

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). This exception to aggregate litigation raises significant due process

concerns for the absent class members, whose legal rights are being adjudicated without their involvement. *See H.L. v. Matheson*, 450 U.S. 398, 432 n.9 (1981).

Upon a motion for class certification, the Court is to conduct a "rigorous analysis" of the class certification requirements. *See Dukes*, 564 U.S. at 350-51 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). This requires district courts to "look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003) (internal quotation omitted). Further, "when certifying a class, a district court must detail with sufficient specificity how the plaintiff has met the requirements of Rule 23." *Ward v. Hellerstedt*, 753 Fed. App'x 236, 244 (5th Cir. 2018) (internal citation omitted).

The fact that a class is being certified for settlement purposes does not relieve the court of the "rigorous analysis" requirement. *See Izzio v. Century Golf Partners Mgmt., L.P.*, 670 Fed. App'x 348, 349-50 (5th Cir. 2016) (vacating and remanding certification of settlement class due to failure to employ rigorous analysis). In fact, "[w]hen a district court, as here, certifies for class action settlement only, the moment of certification requires 'heightene[d] attention,' *Amchem* [*Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)], to the justifications for binding the class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848–49 (1999).

9

To be certified as a class action, the named plaintiff must prove that all four of Rule 23(a)'s prerequisites to class certification are satisfied, including typicality and adequacy of representation. *See* Fed. R. Civ. P. 23(a).

2. <u>The Named Plaintiffs' claims are not typical of the class members' claims.</u>

A class representative must "possess the same interest and suffer the same injury as the class members" to satisfy Rule 23(a)(3)'s typicality requirement. *See E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

Courts routinely conclude typicality is lacking where the named plaintiff is not subject to a class action waiver or arbitration agreement but some class members are. *Johnson v. BLC Lexington, SNF, LLC*, No. CV 5:19-064-DCR, 2020 WL 3578342, at *6 (E.D. Ky. July 1, 2020) ("[D]etermining whether potential members of the class are subject to binding arbitration destroys commonality and typicality of the class."); *Renton v. Kaiser Found. Health Plan, Inc.*, Civ. No. C00–5370RJB, 2001 WL 1218773, at *7 (W.D. Wash. Sept. 24, 2001) (named plaintiff was atypical partly because she was not compelled to arbitrate like class members); *Tschudy v. J.C. Penney Corp., Inc.*, Case No. 11-cv-1011 JM (KSC), 2015 WL 8484530, at *3 (S.D. Cal. Dec. 9, 2015) (finding no typicality and adequacy where named plaintiffs were not bound by arbitration agreement but some class members were).

Here, the Named Plaintiffs are not typical because they voluntarily relinquished their contractual rights regarding individualized litigation.

10

Accordingly, the Named Plaintiffs fall squarely within the line of cases holding a named plaintiff who is <u>not</u> subject to a class action waiver/arbitration provision is not typical of a class who <u>is</u> subject to a class action waiver/arbitration provision.

      3.  <u>The Named Plaintiffs and Class Counsel are not adequate representatives.</u>

Rule 23(a)(4) requires that the class representative and class counsel must adequately protect the interests of the class they seek to represent. The adequacy requirement is designed to identify conflicts between the named plaintiffs/class counsel and the class they seek to represent. *See Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 315 (5th Cir. 2007) (internal quotations omitted).

Courts routinely conclude that where the named plaintiffs are not subject to a class action waiver or arbitration agreement, but some class members are, the named plaintiffs are not adequate representatives. *See Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579 (9th Cir. 2015) (no adequacy because class includes individuals who signed class action waivers); *Tan v. Grubhub, Inc.*, No. 15-cv-05128, 2016 WL 4721439, at *3 (N.D. Cal. July 19, 2016) (holding named plaintiff was not adequate because he opted out of arbitration agreement with class action waiver and most class members had not opted out); *King v. Capital One Bank (USA), N.A.*, No. 3:11-CV-00068, 2012 WL 5570624, at *14 (W.D. Va. Nov. 15, 2012) (finding, if plaintiff was not bound by arbitration provision, she could not adequately represent "the interests of individuals who are bound to pursue their claims in arbitration"); *Jensen*

11

*v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019) (named plaintiff inadequate to represent interests of class members bound by arbitration/class action waiver provisions); *Forby v. One Techs., LP*, No. 3:16-CV-856-L, 2020 WL 4201604, at *9 (N.D. Tex. July 22, 2020) (class representative inadequate where class members were bound to arbitration agreement and representative was not); *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 861 (D. Md. 2013) (class members who are subject to arbitration, forum selection, or class action waiver clauses are in a different legal position than class members whose are not).

Here, Named Plaintiffs and Class Counsel are not adequate representatives of the class. Named Plaintiffs, presumably at the advice of counsel, have waived their right to individual litigation and are no longer aligned with the interests of the class members who have maintained their contractual right to individualized litigation. As demonstrated by this Objection, certain members of the putative class do not want to forgo that substantive legal right for which they contracted.

**D.    The Settlement Should Not Be Approved Because the Class Benefits Are Unreasonably Low and the Proposed Class Counsel's Fees Are Unreasonably High.**

The Settlement Agreement is unfair, unreasonable, and inadequate, and the Court need look no further than the related T-Mobile data breach class settlement to ascertain the Settlement Agreement's deficiencies. *See In re T-Mobile Customer Data Sec. Breach Litig.*, No. 4:21-MD-03019-BCW, 2023 WL 11878508 (W.D. Mo.

June 29, 2023), *rev'd*, 111 F.4th 849 (8th Cir. 2024). Despite similar parties, nearly identical claims, and a similar number of class members, the Settlement Agreement here achieves only a fraction of the benefits received by the *T-Mobile* class. Approval would leave the class with pennies on the dollar, while denying them valuable non-monetary relief routinely provided in data breach cases. Accordingly, the Settlement Agreement should be rejected.

1.  Class settlements must be fair, reasonable, and adequate.

Pursuant to Rule 23, the Settlement Agreement may only be approved if the Court determines that it is "fair, reasonable, and adequate," specifically considering whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2).

In making this assessment, courts in data breach cases frequently compare the proposed terms to those achieved in other data breach class settlements. *See, e.g.*, *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-CV-03424-K, 2022 WL 16821685, at *12 (N.D. Tex. Oct. 14, 2022), *report and recommendation adopted*, No. 3:20-CV-03424-K, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022); *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1089-90 (N.D. Ill. 2021); *see also* 4 Newberg and Rubenstein on Class Actions § 13:51 (6th ed.) ("[R]ecoveries in similar … cases that have … reached settlement are a useful benchmark.").

The *T-Mobile* settlement provides the most appropriate benchmark to the Settlement Agreement:

(1)    *T-Mobile* involved the other major U.S. telecommunications provider;

(2)    The claims arose from a data breach that compromised Personally Identifying Information ("PII"), including names, addresses, dates of birth, phone numbers, and Social Security numbers;

(3)    The compromised PII was posted on the dark web, *see T-Mobile*, 2023 WL 11878508 at *1; Doc. 281, ¶ 4; and

(4)    The claims included breach of contract, negligence, declaratory relief, and, by a subclass, statutory violations and liquidated damages, *see T-Mobile*, 2023 WL 11878508 at *2, 12; Doc. 281, ¶¶ 279-317, 318-25, 326-42, 343-50.

2.    <u>The proposed monetary relief is inadequate.</u>

In *T-Mobile*, there were approximately 76.6 million class members, with a $350 million cash fund, resulting in a fund equal to $4.57 per class member. *See* 2023 WL 11878508, at *3-4;[3] *see also Kostka*, 2022 WL 16821685 at *1, 6 ($3.13 per class member in data breach settlement). T-Mobile additionally committed to invest $150 million in data security over two years, bringing its total cash commitment to $500 million. 2023 WL 11878508, at *10. Class members were

---

[3] Named Plaintiffs incorrectly assert the *T-Mobile* class consisted of 100 million members. Doc. 356, at 29. The settlement class was approximately 76.6 million members. *T-Mobile*, 2023 WL 11878508, at *4.

eligible to recover up to $25,000 in out-of-pocket losses, as well as compensation for lost time "spent dealing with issues related to the Data Breach." *Id.* Moreover, the settlement provided class members two years of identity theft and fraud defense services, valued at $96 per year, and two years of fraud resolution and identity restoration services. *Id.* at *10, 15.

The settlement fund here—$177 million for a class of 96,739,279—equates to $1.83 per class member, <u>less than half</u> of the *T-Mobile* settlement on a per capita basis (<u>before</u> any reduction caused by Class Counsel's fees). *See* Doc. 365 at 1.

Notably, the potential statutory liquidated damages in this case are higher than those available in *T-Mobile*. The *T-Mobile* settlement accounted for a subclass who had claims under California's Consumer Privacy Act for liquidated damages ranging from $100 to $750. 2023 WL 11878508, at *12; *see also* Cal. Civ. Code § 1798.150(a)(1)(A). Here, Named Plaintiffs brought claims on behalf of subclasses of AT&T's cable and satellite customers (the Settlement Agreement abandons the subclasses) for violations of federal law, 47 U.S.C. § 301 *et seq.*, and 47 U.S.C. § 521 *et seq.*; Doc. 281, ¶¶ 290-317. Each of those claims would entitle subclass members to liquidated damages "of $100 a day for each day of violation or $1,000, whichever is higher." *See* 47 U.S.C. §§ 338(i)(7), 551(f)(2). In other words, the <u>minimum</u> recovery under these federal claims is greater than the <u>maximum</u> recovery under the state statute in *T-Mobile*.

15

Additionally, the Settlement Agreement unfairly restricts class members' ability to recover their actual losses. AT&T 1 Settlement Class Members are limited to $5,000 in reimbursement for "Documented Loss Cash Payments" (one-fifth of the recoverable out-of-pocket expenses in *T-Mobile*); while AT&T 2 Settlement Class Members are capped at $2,500 (one-tenth of *T-Mobile*); and class members will not be compensated for lost time arising from the Data Incidents. Doc. 293-1, ¶¶ 128-29.

   3.  <u>The lack of non-monetary relief exacerbates the Settlement Agreement's inadequacy.</u>

The Settlement Agreement lacks valuable non-monetary consideration present in the *T-Mobile* settlement (and many other data breach cases). *See T-Mobile*, 2023 WL 11878508 at *10 (recognizing fraud prevention services and investment in data security are class benefits).

First, while the Settlement Agreement contains a vague provision that "AT&T has undertaken or will undertake specific, reasonable steps to further secure customer information," there is no monetary commitment to any security enhancements. Doc. 283-1, ¶ 138. The Settlement Agreement does not bind AT&T to expend any money on data security measures, further widening the gap between the Settlement Agreement and those in *T-Mobile* and other data breach cases. *See T-Mobile*, 2023 WL 11878508 at *10; *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1259 (11th Cir. 2021) (minimum $1 billion investment).

16

Instead, the Settlement Agreement explicitly states payment of the Settlement Funds is the only benefit AT&T is required to provide to the class. Doc. 283-1, ¶ 122.

Second, although AT&T initially offered one year of credit monitoring, identity restoration and identity theft insurance in its notice of the data breach, those monitoring services were available only if individuals enrolled by August 2024, and there is no obligation to provide remediation services post-settlement, even though that is the standard in data breach cases. Appx. 53; *see, e.g.*, *Equifax*, 999 F.3d at 1258-59 (up to ten years of credit monitoring and identity protection services valued at $2 billion); *Kostka*, No. 3:20-cv-03424, Doc. 62-1 (2 years); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 18107626, at *11 (E.D. Va. Sept. 13, 2022) (3 years); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *11 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) (2 years); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *7 (N.D. Cal. Aug. 17, 2018) (4 years); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016) (18 months).

The proposed Settlement Agreement is materially and significantly worse than the *T-Mobile* settlement:

|  | **Proposed AT&T Settlement** | **T-Mobile Data Breach** |
|---|---|---|
| **Cash fund** | $177 million | $350 million |
| **Class size** | 96.7 million | 76.6 million |
| **Per-capita fund** | $1.83 | $4.57 |
| **Out-of-pocket loss cap** | $5,000 (AT&T 1)<br>$2,000 (AT&T 2) | Up to $25,000 |
| **Lost-time compensation** | No | Yes |
| **Credit monitoring/Identity Theft Resolution Services** | None required post-settlement | Two years identity theft/fraud defense + resolution services ($96 value/year) |
| **Security spend commitment** | None | $150 million over 2 years |
| **Liquidated damages** | No, subclass abandoned despite entitlement to liquidated damages of the higher of $100/day or $1,000 | Yes, for subclass ranging from $100-$750 per member |

    4.  <u>The requested fee is unreasonable.</u>

Class Counsel seek to deplete an already inadequate fund with a $59,000,000 fee award, for a case in its infancy and without providing a meaningful estimate of their time. The requested $59 million fee would award windfall profits to Class Counsel at the class's expense. If the Settlement Agreement is approved, a lodestar

cross-check is imperative to preserve the class benefits. Otherwise, the only interests served by the settlement are those of the attorneys.

District courts possess "the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the [*Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)] factors." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012). If the Court applies a percentage approach, it "must not simply rubber-stamp the figure proposed by class counsel, but instead attempt to arrive at an independent and justified reasonable percentage that is appropriate under the specific circumstances presented in this case." *In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2018 WL 4613941, at *9 (E.D. La. Sept. 26, 2018). "Courts often look at fees awarded in comparable cases to determine if the fee requested is reasonable." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007).

Even when applying a percentage approach, district courts "often then apply a lodestar calculation as a cross-check of the percentage method." *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227, at *8 (N.D. Tex. Apr. 25, 2018). The cross-check is typically applied "to avoid windfall fees, *i.e.*, to ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *Id.* (quoting *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1086 (S.D. Tex. 2012));

*see also Heffernan Bryant v. United Furniture Indus., Inc.*, No. 1:13CV246-SA-DAS, 2017 WL 639320, at *6 (N.D. Miss. Feb. 16, 2017); *Vassallo v. Goodman Networks, Inc.*, No. 15CV97-LG-CMC, 2016 WL 6037847, at *3 (E.D. Tex. Oct. 14, 2016).

The lodestar method is a "more objective method than divining some percentage." *Chun v. Fluor Corp.*, No. 3:18-CV-1338-X, 2024 WL 2402083, at *7 (N.D. Tex. May 23, 2024), *appeal dismissed sub nom. Town of Fairfield Employees' Ret. Plan v. Fluor Corp.*, No. 24-10582, 2024 WL 5277146 (5th Cir. Nov. 4, 2024). Application of the lodestar method or cross-check is particularly appropriate in "megafund" cases, where awarding a percentage of the fund "would yield windfall profits for class counsel in light of the hours spent on the case." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). An "immense facial disparity" between a fee award and the payments received by class members is "concerning," as it indicates class counsel, not the class, benefits from the settlement. *Zwicky v. Diamond Resorts Mgmt., Inc.*, 343 F.R.D. 101, 122 (D. Ariz. 2022); *see also Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) ("If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained.").

Here, the Court should reduce the $59 million fee requested by applying a lodestar cross-check. This is necessary to avoid the very windfall the foregoing authorities warn against. Class Counsel requests $59 million from an already inadequate fund which, after subtracting fees, costs, and administrative expenses, would yield only $1.22 per capita.

Tellingly, Class Counsel repeatedly avoid providing a meaningful estimate of their time to date, stating only that they have spent "thousands of hours." Doc. 356 at 34, 41. This is no doubt because the applicable lodestar multiple would be exorbitant. By way of example, giving Class Counsel a generous market rate of $1,000 per hour, their lodestar multiple would be *29.5* if they expended 2,000 hours[4] and *11.8* if they expended 5,000 hours.[5] That is unfair and unreasonable. *See Chun*, 2024 WL 2402083 at *7 ("[T]he attorneys ask for 30% of the $33,000,000 settlement fund, plus interest. (This is the equivalent of, in their words, 'a modest 1.9 lodestar multiplier.') That's $9,900,000. And that's unreasonable.") (alterations omitted).

Named Plaintiffs cite a series of district court decisions in an attempt to avoid a lodestar cross-check. Doc. 356 at 39. Those cases are inapposite. The fee awards in those cases were substantially smaller—$333,320 (*Lee*), $2.25 million (*McCumber*), $690,000 (*Jones*), $346,666.67 (*In re Pool Products*), and $1,333,333

---

[4] Calculated as $59,000,000 / (2,000 X $1,000).

[5] Calculated as $59,000,000 / (5,000 X $1,000).

(*Jenkins*)—and do not present the risk of windfall profits to class counsel at the expense of the class that caselaw consistently warns against. *See Lee v. JDC Healthcare Mgmt., LLC*, No. 3:23-vc-01134, Doc. 57 at 9 (N.D. Tex. Jan. 16, 2025); *McCumber v. Invitation Homes, Inc.*, No. 3:21-CV-02194-B, 2024 WL 4183526, at *3 (N.D. Tex. July 30, 2024); *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2014 WL 7332551, at *9 (N.D. Tex. Nov. 12, 2014), *report and recommendation adopted in part*, No. 3:11-CV-2743-O, 2014 WL 7336889 (N.D. Tex. Dec. 24, 2014); *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, No. MDL 2328, 2015 WL 4528880, at *16 (E.D. La. July 27, 2015); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014).

Alternatively, the Court should reject Class Counsel's suggested 33% award, and apply 15% as the base fee, subject to a lodestar cross-check. As was the case in *Chun*, Class Counsel "justif[ies] the 3[3]% with cherry-picked examples," citing district court cases that note the "percentage awards of 50% have been approved in some class actions" and that "30% in a class action is on the low side." *See Chun*, 2024 WL 2402083 at *7 n.51. "But the attorneys must have overlooked other Fifth Circuit district courts in common-fund cases that, for example, rejected a requested 25% fee in favor of a 15% fee." *Id.* Indeed, "**15% fee awards are frequent as the awards climbs higher into the millions.**" *Id.* (internal quotation marks and alterations omitted; emphasis added).

22

A 15% starting point would more closely align with (but still exceed) the award granted in *T-Mobile*. There, counsel requested an award equal to 22.5% of the cash fund. *See T-Mobile*, 2023 WL 11878508 at *21. The Eighth Circuit found the award was "unreasonable," representing a 9.6 lodestar multiplier. *See In re T-Mobile Customer Data Sec. Breach Litig.*, 111 F.4th 849, 861 (8th Cir. 2024). On remand, the district court awarded fees equal to 13.08% of the fund. *In re: T-Mobile Customer Data Security Breach Litig.*, No. 4:21-MD-03019, Doc. 263 at 2 (W.D. Mo. Jan. 16, 2025) (order granting fees and inventive award).

**E.    The Opt-Out Procedure Is Unreasonably Restrictive.**

To opt out, class members must draft a request for exclusion and sign it with a handwritten, "wet ink" signature. Doc. 298, at 9. There is no reason for imposing a "wet ink" requirement in this case other than to make opting out unreasonably burdensome. *See, e.g.*, *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067 (N.D. Cal. 2020) (noting wet ink requirement was "obvious attempt to make it as hard as possible for petitioners to opt out"). The purpose of the opt-out process should be to accurately determine the intent of the class member requesting exclusion. An electronic signature is as reliable a method of confirming intent as a "wet ink" signature. Indeed, under both Texas and federal law, electronic signatures are as valid as "wet ink" signatures. *See* Tex. Bus. & Com. Code § 322.007(a); 15 U.S.C.A. § 7001(a)(1).

Moreover, AT&T will accept electronic submissions from class members who choose to participate in the settlement (Doc. 356-1, ¶ 164 (Settlement Agreement and Release)), and to bind its customers to the CSA's class action waiver and arbitration provisions. Appx.6-7, 14, 21-22 (CSA §§ 1.3.1, 1.3.2.2, 1.17.1, 2.15.2). If electronic signatures are good enough for AT&T in these contexts, there is no reason electronic signatures should not be sufficient for class members to opt out. *See, e.g.*, *Arena v. Intuit, Inc.*, Case No. 19-cv-02546-CRB, 2021 WL 834253, at *10 (N.D. Cal. Mar. 5, 2021) (Because "Intuit can not only administer settlement claims electronically, but also facilitate safe, legal tax-filing electronically, Intuit can assuredly process opt outs electronically. If electronic signatures are enough for Intuit and the IRS during tax season, they should be enough for Intuit here.").

Other settlements arising from similar data breaches eliminated the "wet ink" requirement for opt-outs. *See, e.g.*, *In re T-Mobile Customer Data Security Breach Litig.*, Case No. 4:21-md-03019-BCW, Doc. 158-1, ¶ 16.1 (W.D. Mo. July 22, 2022) (allowing electronic opt outs through claims portal); *In re 23ANDME, Inc. Customer Data Security Breach Litig.*, Case No. 3:24-md-03098-EMC, Doc. 103-2, ¶ 81 (N.D. Cal. Sept. 12, 2024) (opt outs could sign using DocuSign or "other similar process for transmitting authenticated digital signatures"); *In re Prudential Fin., Inc. Data Breach Litig.*, Case No. 2:24-cv-06818-SRC-AME, Doc. 46-2, ¶¶ 7.1, 7.2 (D.N.J. May 30, 2025) (opt outs could email or submit through online portal); *In re TikTok,*

24

*Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 932 (N.D. Ill. 2022) (accepting 851 opt outs submitted *en masse* by attorney with forms including e-signatures and timestamps "documenting that each e-signature came from a separate, unique IP address").

While some courts have upheld "wet ink" requirements on opt-outs, those cases differed materially from this one. For example, in approving a "wet ink" requirement for opt-outs, the court in *In re Chesapeake Energy Corporation* indicated its conclusion was influenced by the value class members would forego if they opted out, saying:

> While some courts have found ink signature and mailing requirements burdensome in so-called negative value classes, with little benefit to individual class members, courts routinely approve ink signature and mailing requirements when, as here, the settlement provides individual class members with substantial benefits.

567 F. Supp. 3d 754, 785–86 (S.D. Tex. 2021), *vacated and remanded on other grounds by Matter of Chesapeake Energy Corp.*, 70 F.4th 273 (5th Cir. 2023). The low value the average participating class member could expect to receive in *Intuit*— $28—was a primary motivating factor in that court's rejection of a "wet ink" requirement, distinguishing the low payout from much higher payouts in other class actions where courts *did* uphold a "wet ink" requirement for opt-outs. *Intuit*, 2021 WL 834253, at *10 (comparing to the awards of several thousands of dollars in *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No.

25

MDL 2672 CRB (JSC), 2017 WL 672727, at *10 (N.D. Cal. Feb. 16, 2017) and *del Toro Lopez v. Uber Techs., Inc.*, No. 17-cv-06255-YGR, 2018 WL 5982506, at *21 (N.D. Cal. Nov. 14, 2018), where "wet ink" signatures were required). Regarding *Volkswagen* and *Uber*, the *Intuit* court said, "[i]n both instances, opting out would be financially risky at best and economically irrational at worst. And in those circumstances, relatively burdensome procedures would promote careful deliberation before class members made a choice that could haunt them financially." *Id*.

As argued in Section D, the Settlement Fund is unreasonably low and, if approved, will result in small payments to each participating class member, rendering the "wet ink" requirement particularly onerous.

If the Court approves a class settlement (which it should not for the reasons stated above), the Court should modify the opt out procedures to allow for electronic signatures and to allow for putative class members to opt out through their attorneys. Additionally, the Court should order that notice be given to all putative class members of the revised opt out procedures and provide a reasonable opt out period of at least 90 days from the date of final approval for class members to opt out.[6]

---

[6] *See* Fed. R. Civ. P. 23(e)(4) (providing that in a Rule 23(b)(3) class settlement courts may refuse to approve the settlement unless it affords an opportunity for class members to opt out of the settlement following final approval).

## <u>CONCLUSION</u>

For these reasons, the Court should decertify the conditional Settlement Class and deny Plaintiffs' Motion for Final Approval of the Proposed Settlement Agreement.

In the alternative, the Court should: (a) remove the "wet ink" signature requirement for opt outs; (b) allow class members to opt out through their counsel; (c) provide a reasonable time period in which class members can opt out of the revised settlement agreement; and (d) order class notice of the revised settlement agreement and opt out procedure.

Objectors pray for any additional relief to which they are entitled.

Respectfully submitted,

**BEIGHLEY, MYRICK, UDELL, & ZEICHMAN PA**

Maury L. Udell, Esq.
Fla. Bar No. 121673
mudell@bmulaw.com
2601 S. Bayshore Drive, Suite 770
Miami, Florida 33133
Tele: (305) 349-3930
Fax: (305) 349-3931

**BUTLER SNOW LLP**

By: */s/ Amanda G. Taylor*
Amanda G. Taylor
Texas Bar No. 24045921
Amanda.taylor@butlersnow.com
1400 Lavaca St., Suite 1000

Austin, Texas 78701
Tele: (737) 802-1800
Fax: (737) 802-1801

Kyle Miller
MS Bar No. 102227
Kyle.miller@butlersnow.com
1020 Highland Colony Pkwy, Ste. 1400
Ridgeland, Mississippi 39157
Tele: (601) 948-5711
Fax: (601) 985-4500

**ATTORNEYS FOR OBJECTORS SCOTT GHERMAN, BRADLEY JOHNSON, BRITTANI KAYE, ROB CARUSO, AND BRITTANY BONNER**

## CERTIFICATE OF WORD COUNT

I hereby certify that, according to the word-processor register on my computer, counting all portions of this document required by this Court's Judge-Specific Requirements II.A, this Objection contains a total of 6,200 words.

By: */s/ Amanda G. Taylor*
Amanda G. Taylor

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025, a true and correct copy of the above was served on all counsel of record through the Court's CM/ECF system.

By: */s/ Amanda G. Taylor*
Amanda G. Taylor

28