# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **IN RE: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION** | Case No. 3:24-cv-00757-E |
| *This Document Relates to All Cases* | MDL DOCKET NO. 3:24-md-03114-E |

---

## PLAINTIFFS' AND CLASS COUNSEL'S RESPONSE TO OBJECTIONS OF MICHAEL VON LUNEN AND SUSAN BARROW TO PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATIONS FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

# TABLE OF CONTENTS

I.    INTRODUCTION ..........................................................................................1

II.   THERE IS NO BASIS FOR DENYING SETTLEMENT CLASS
      CERTIFICATION ......................................................................................3

   A.   Uniform Relief Makes State Law Variations Irrelevant .................................5

III.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...........9

   A.   The Parties Resolved the Actions at Arm's-Length and in Good Faith and the
      Settlement Classes Were Adequately Represented.........................................9

   B.   The Requirement of Sufficient Class Participation for the Settlement to Take
      Effect is Permissible ....................................................................................16

   C.   The Court's Injunction Against Parallel Proceedings, Including Arbitrations,
      Is No Basis to Deny Final Approval.............................................................16

   D.   The Settlement Provides Adequate Relief to the Settlement Classes............18

   E.   Narrowly Tailored Releases Bind All Non-Opt-Out Settlement Class
      Members – That's How Class Settlements Work ..........................................20

   F.   The Claim Process, Opt-Out, and Objection Procedures Are Reasonable and
      Necessary......................................................................................................22

   G.   The Inclusion of Snowflake as a Released Party is Supported by
      Consideration................................................................................................24

   H.   Attorneys' Fees Are Reasonable ..................................................................25

IV.   CONCLUSION...........................................................................................26

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*In re 23andMe, Inc. Customer Sec. Data Breach Litig.*,
  No. 24-md-03098-EMC, 2024 WL 4982986 (N.D. Cal. Dec. 4, 2024)...............4

*Abernathy v. DoorDash, Inc.*,
  438 F. Supp. 3d 1062 (N.D. Cal. 2020)...............................................................17

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................7, 17

*In re Anthem Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018)...........................................................6, 15, 22

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)...................................................................................12

*Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*,
  624 F.3d. 185 (5th Cir. 2010) .................................................................5

*Castano v. American Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) .................................................................5

*In re Chinese-Manufactured Drywall Products Liab. Litig.*,
  424 F. Supp. 3d 456 (E.D. La. 2020)....................................................15

*Cilluffo v. Central Refrigerated Svcs., Inc.*,
  ED 12-cv-00886 VAP, 2018 WL 11374960 (C.D. Cal. Apr. 3, 2018).............22

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013).................................................................................7, 8

*Corrente v. Charles Schwab Corp.*,
  Civ. No. 4:22-cv-470, 2025 WL 3270219 (E.D. Tex. Nov. 24, 2025) .............14

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ..............................................................5, 6

*Cruson v. Jackson Nat'l Life Ins. Co.*,
  954 F.3d 240 (5th Cir. 2020) ..............................................................7, 8

*Davis v. CenturyLink, Inc.*,
　　No. 24-40381, 2025 WL 1009556 (5th Cir. Apr. 4, 2025)...................................7

*In re Deepwater Horizon*,
　　739 F.3d 790 (5th Cir. 2014) .................................................................4, 7, 8, 9

*In re Deepwater Horizon*,
　　No. 20-30617, 2021 WL 3501651 (5th Cir. Aug. 9, 2021)...............................23

*DeHoyos v. Allstate Corp.*,
　　240 F.R.D. 269 (W.D. Tex. 2007) ....................................................................19

*Deka Inv. GmbH v. Santander Consumer USA Holdings Inc.*,
　　No. 3:15-CV-02129, 2020 WL 11577829 (N.D. Tex. Aug. 13, 2020)..............15

*In re Diet Drugs*,
　　282 F.3d 220 (3d Cir. 2002) ..............................................................................16

*In re Domestic Air. Transp. Antitrust Litig.*,
　　148 F.R.D. 297 (N.D. Ga. 1993) .......................................................................10

*In re East Palestine Train Derailment*,
　　158 F.4th 704 (6th Cir. 2025) ............................................................................21

*In re Equifax Inc. Customer Serv. Data Sec. Breach Litig.*,
　　999 F.3d 1247 (11th Cir. 2021) ...........................................................................6

*Eubank v. Pella Corp.*,
　　753 F.3d 718 (7th Cir. 2014) ........................................................................20, 21

*Forcellati v. Hyland's, Inc.*,
　　No. CV 12-1983-GHK, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)..............14

*Hays v. Eaton Grp. Att'ys, LLC*,
　　Civ. No. 17-88-JWD-RLB, 2019 WL 427331 (M.D. La. Feb. 4, 2019)...........10

*Hesse v. Godiva Chocolatier, Inc.*,
　　No. 19-cv-0972-LAP, 2022 WL 22895466 (S.D.N.Y. Apr. 20, 2022).............14

*Johnson v. Ga. Highway Exp., Inc.*,
　　488 F.2d 714 (5th Cir. 1974) .............................................................................26

*Jones v. Singing River Health Svcs. Found.*,
   865 F.3d 285 (5th Cir. 2017) ........................................................................*passim*

*In re Katrina Canal Breaches Litig.*,
   628 F.3d 185 (5th Cir. 2010) ..................................................................19

*Klein v. AT&T Corp.*,
   23 Civ. 11038 (DEH)(RFT), No. 23 Civ. 11038 (DEH) (RFT),
   2024 WL3409041 (S.D.N.Y. July 15, 2024)...........................................12

*Klein v. O'Neal, Inc.*,
   7:03-CV-102-D, 2009 WL 114638 (N.D. Tex. Apr. 29, 2009) .........................21

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ............................................9, 24

*In re Loancare Data Sec. Breach Litig.*,
   3:23-cv-01508-CRK-MCR, 2025 WL 895435 (M.D. Fla. Mar. 24, 2025).......22

*Merrell v. 1st Lake Prop., Inc.*,
   Civ. No. 23-1450, 2025 WL 3250873 (E.D. La. Nov. 21, 2025)..............4, 14

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
   No. 20-CV-5917, 2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023) ...................15

*Negrete v. Allianz Life Ins. Inc. Co. of N.A.*,
   523 F.3d 1091 (9th Cir. 2008) .................................................................10

*In re Oil Spill by Oil Rig Deepwater Horizon*,
   295 F.R.D. 112 (E.D. La. 2013) ...........................................................4, 7

*Peterson v. Vivendi Ticketing US LLC*,
   No. CV 23-7498, 2024 WL 3915154 (C.D. Cal. June 20, 2024).....................15

*In re Philadelphia Inquirer Data Sec. Litig.*,
   Civ. No. 24-2106-KSM, 2025 WL 845118 (E.D. Pa. Mar. 18, 2025) ...............5

*Phillips Petroleum Co v. Shutts*,
   472 U.S. 797 (1985)...........................................................................17, 22

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
   310 F.R.D. 300 (E.D. La. 2015) ...............................................................7

iv

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ............................................................3, 17, 18, 21

*Regmund v. Talisman Energy U.S.*,
   No. 4:16-cv-02960, 2020 U.S. Dist. LEXIS 257963 (S.D. Tex. Dec. 9, 2020)...8

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) ...............................................................25

*Richardson v. Wells Fargo Bank, N.A.*,
   839 F.3d 442 (5th Cir. 2016) ...............................................................21

*Ruiz v. McKaskle*,
   724 F.2d 1149 (5th Cir. 1984) .......................................................10, 19

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs.*
   *Inc.*, 601 F.3d 1159 (11th Cir. 2010) ....................................................5

*Savidge v. Pharm-Save, Inc.*,
   727 F. Supp. 3d 661 (W.D. Ky. 2024)....................................................4

*Skinner v. Hunt Mil. Comm. Mgmt. LLC*,
   No. SA-22-CV-00799-JKP, 2023 WL 6532670 (W.D. Tex. Jan. 23, 2023) .......3

*Smith v. Sprint Comms. Co. LP*,
   No. 99 C 3844, 2003 WL 715748 (N.D. Ill. Feb. 27, 2003) ............................10

*In re Sonic Corp.*,
   No. 20-0305, 2021 WL 6694843 (6th Cir. Aug. 4, 2021)..................................4

*Stephenson v. Dow Chem. Co.*,
   273 F.3d 249 (2d Cir. 2001) (en banc) ...........................................22

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ...........................................................6, 8

*In re Target Corp.*,
   892 F.3d 968 (8th Cir. 2018) .......................................................6, 17

*In re TikTok, Inc., Consumer Privacy Litig.*,
   565 F. Supp. 3d 1076 (N.D. Ill. 2021)...............................................17

*Trimble v. AT&T Mobility, Inc.*,
    Civ. No. 5:23-CV-00038-KDB-DSC, 2023 WL 549358 (W.D.N.C.
    Aug. 24, 2023) ................................................................................................12

*In re Wawa, Inc. Data Sec. Litig.*,
    Civ. No. 19-6019, 2024 WL 1557366 (E.D. Pa. 2024).....................................14

*Wilson v. Frontier Comm. Parent, Inc.*,
    Civ. No. 3:24-cv-01418-L, 2025 WL 2421373 (N.D. Tex. June 20, 2025).......14

*In re Yahoo! Customer Data Security Breach Litig.*,
    No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. 2020) ..........................3

## Statutes

28 U.S.C. §2283 ...............................................................................................16

## Rules

Fed. R. Civ. P. 23 .......................................................................................*passim*

Plaintiffs[1] and Class Counsel respond in opposition to the Objections of Michael Von Lunen and Susan Barrow ("Objectors")[2] to Plaintiffs' Motion for Final Approval of Class Action Settlement. Doc. 368 ("Objection"). It is supported by the Supplemental Declaration of Jeanne C. Finegan of Kroll Settlement Administration LLC ("Supp. Kroll Decl."), attached as *Exhibit A*. Plaintiffs and Class Counsel also join in AT&T's separately filed responses to the Objection.

## I.    INTRODUCTION

The Motion for Final Approval and Applications for Attorneys' Fees, Costs, and Service Awards fully supports Final Approval of the Settlement. Doc. 356. Objectors' critiques of the Settlement all boil down to one false accusation: they contend AT&T bought off Class Counsel to settle the Actions as quickly as possible. A closer review of Objectors' arguments reveals even more fundamental flaws than their glosses on legal authority and (frankly, insultingly) baseless factual allegations challenging the arm's length, mediated negotiations of what is a fair, reasonable, and adequate Settlement.

The Objection's true ulterior motive is to advance the arbitration claimant

---

[1] Unless defined herein, all capitalized terms have the same meanings as those defined in Section II of the Class Action Settlement Agreement and Release. *See* Doc. 356-1.

[2] Harrer Law filed a joinder for two new objectors nearly three weeks after the objection deadline. Doc. 391. Missing that deadline means those objectors lack standing to object. Doc. 298 at ¶ 16. It is no coincidence Harrer Law filed this joinder just hours before Plaintiffs filed their opposition to the Objectors' Motion for *In Camera* Inspection. This joinder filing implicitly acknowledges the serious standing concerns presented by using Harrer Law partner Seth McCormick's mother and the firm's Chief Operating Officer as its two objectors.

portfolio of counsel Harrer Law, P.C., who prepared the objection. Michael Von Lunen (Harrer Law's Chief Operating Officer) and Susan Barrow (the mother of Harrer Law partner Seth McCormick, who signed the Objection) did not opt-out of the Settlement, even as Harrer Law shepherded its numerous arbitration clients through that Court-ordered simple process. Instead, they serve as a proxy to advance the separate interests of ***non***-Settlement Class Members, through arguments derived by their counsel's unlawful use of mediation-privileged, confidential communications about settlement offers purportedly made to arbitration claimants. Von Lunen and Barrow are not arbitration claimants and, therefore, were not privy to the communications on which they base the Objection. The settling Parties have opposed Objectors' reliance on those communications and refuted their arguments in separately filed, sealed responses to Objectors' Motion for In Camera Inspection. Docs. 392, 395.

Faced with significant litigation risks, and hoping to avoid wasteful and arduous fights, the Parties reasonably explored the possibility of class settlements. Under the supervision of Robert Meyer, Esq., a Chambers-ranked mediator and Fellow of the American College of Trial Lawyers, AT&T participated in three separate mediations at JAMS in Los Angeles over the course of three days. Two were with the MDL leadership in each of the Actions, and the third was with firms separately representing arbitration claimants. Class Counsel secured the Settlement

for a combined $177 million, which the Court correctly preliminarily approved pursuant to Fed. R. Civ. P. 23(e) and the *Reed*[3] factors and conditionally certified the Settlement Classes pursuant to Fed. R. Civ. P. 23(a) and (b)(3). Objectors face a heavy burden in overcoming the presumption of fairness that preliminary approval carries. *See Skinner v. Hunt Mil. Comm. Mgmt. LLC*, No. SA-22-CV-00799-JKP, 2023 WL 6532670, at *2 (W.D. Tex. Jan. 23, 2023).

The Settlement has been very well received by the Settlement Classes. More than 4.1 million Claims have been submitted. *See* Supp. Kroll Decl., ¶¶ 3-4. The Court should overrule the Objection in full for the reasons below.

## II. THERE IS NO BASIS FOR DENYING SETTLEMENT CLASS CERTIFICATION

Objectors' sole challenge to final certification of the Settlement Classes is to Fed. R. Civ. P. 23(b)(3) predominance.[4] They ignore Plaintiffs' incorporation by reference in the Motion for Final Approval of their superiority argument from the Motion for Preliminary Approval. Doc. 283 at 42-43; Doc. 356 at 19-20. The predominant, common issue here, as one would expect in a data breach case, is whether AT&T properly secured Settlement Class Members' personal information. *See In re Yahoo! Customer Data Security Breach Litig.*, No. 16-MD-02752-LHK,

---

[3] See *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).
[4] The objection offers one-sentence , suggesting Plaintiffs and AT&T agree the Snowflake claimants do not have Article III standing. Doc. 368 at 9. That is not true, and AT&T could still agree to settle with the AT&T 2 Settlement Class. The standing defense, along with all merits defenses, was considered in settlement negotiations. Doc. 356 at 28.

2020 WL 4212811, at *6-7 (N.D. Cal. 2020).

"Predominance is more easily satisfied in a single-event, single location [ ] action such as this because the defendant allegedly caused all of the plaintiffs' harms through a course of conduct common to all class members." *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 141 (E.D. La. 2013). Where the predominance analysis is focused on common legal and factual questions of liability, the existence of individual damages questions does not defeat class certification. *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014); *see also Merrell v. 1st Lake Prop., Inc.*, Civ. No. 23-1450, 2025 WL 3250873 (E.D. La. Nov. 21, 2025) (common questions predominate in settlement-only data breach class). As in this case, where the predominance analysis is focused on common legal and factual questions of liability, outstanding damages questions are not an obstacle to the approval of a class settlement in a data breach action. *See, e.g.*, *In re Sonic Corp.*, No. 20-0305, 2021 WL 6694843, at *3 (6th Cir. Aug. 4, 2021); *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 700 (W.D. Ky. 2024); *In re 23andMe, Inc. Customer Sec. Data Breach Litig.*, No. 24-md-03098-EMC, 2024 WL 4982986, at *14 (N.D. Cal. Dec. 4, 2024).

Objectors' predominance argument ignores that the Court is not certifying a litigation class, leading them to rely on inapposite law. This is most evident from their statement: "Evaluating predominance requires a court to 'inquire how the case

will be tried.'" Doc 368 at 9 (citation omitted); *id.* at 10 (discussing "the requirement that 'district courts . . . consider 'how a trial on the merits would be conducted if a class were certified.'" (citation omitted)). As Plaintiff's Motion for Preliminary Approval correctly argued, the Court need not consider such concerns in the settlement context. Doc. 283 at 36, 41-42 (citing *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 310 F.R.D. 300, 311-12 (E.D. La. 2015)). *See also In re Philadelphia Inquirer Data Sec. Litig.*, Civ. No. 24-2106-KSM, 2025 WL 845118, at *6 (E.D. Pa. Mar. 18, 2025).

Objectors cite *Castano v. American Tobacco Co*., 84 F.3d 734 (5th Cir. 1996), *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185 (5th Cir. 2010), and *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs. Inc*., 601 F.3d 1159 (11th Cir. 2010), but those cases analyzed predominance for a *trial class*. The concerns animating the *Castano* analysis do not apply here.

## A. Uniform Relief Makes State Law Variations Irrelevant

Class action complaints typically allege alternative legal theories. Pleading multiple claims is not an insuperable barrier to nationwide relief, even if certain state law claims could be alleged. Settlement Class Members seeking to preserve a state-specific claim against AT&T were free to opt-out. It is not a basis to object to prevent Final Approval. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 222 (5th Cir. 1981).

5

The Settlement is structured so that every class member receives relief according to a standard tier structure based on the sensitivity of exposed data—not state of residence or which state law might apply. When settlement provides uniform relief, state law variations do not defeat predominance, particularly in data breach class actions. *See In re Equifax Inc. Customer Serv. Data Sec. Breach Litig.*, 999 F.3d 1247, 1277 (11th Cir. 2021); *In re Anthem Data Breach Litig.*, 327 F.R.D. 299, 314 (N.D. Cal. 2018) (same); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) ("state law variations are largely 'irrelevant to certification of class settlements'").

Courts routinely approve nationwide data breach settlements without subclasses, particularly where, as here, differences in state remedies do not warrant separate treatment. *In re Equifax*, 999 F.3d at 1275-76 (no fundamental conflict where "all these Plaintiffs' claims arise out of the same … data privacy breach"); *In re Anthem*, 327 F.R.D. at 314-15; *In re Target Corp.*, 892 F.3d 968, 974 (8th Cir. 2018).

Though state law is one possible consideration during settlement negotiations, it is not the only one, and it need not be the focus of the Court in approving the Settlement. Any argument that a broad release covering potential state law claims warrants denial of certification is "implausible," particularly where Claimants retain opt-out rights. *See In re Corrugated Container*, 643 F.2d at 222 (opt-out rights

6

protect objectors who wish to bring individual state law claims). *See also Davis v. CenturyLink, Inc.*, No. 24-40381, 2025 WL 1009556, at *6 n.38 (5th Cir. Apr. 4, 2025) (contention that a prior federal class settlement could not have released Texas state law claims "meritless"). Moreover, state law variations are rightly viewed as creating primarily manageability concerns, which under *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 520 (1997), the Court need not consider in the settlement context. *See, e.g.*, *In re Pool Prods.*, 310 F.R.D. at 311-12.

## B. *Comcast* Does Not Require a Damages Model for Settlement Classes

Predominance is readily found when it is based "not on common issues of damages but on the numerous common issues of liability," even though "the class members' damages 'would have to be decided on an individual basis were the cases not being settled.'" *In re Deepwater Horizon*, 739 F.3d at 815, 818. Objectors incorrectly rely on *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), and *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240 (5th Cir. 2020), to argue a damages model is "required" to certify the Settlement Classes, yet neither case involves a settlement class. *See Comcast*, 569 U.S. at 31; *Cruson*, 954 F.3d at 246.

In affirming the *Deepwater Horizon* settlement, the Fifth Circuit explained that *Comcast* precludes district courts from certifying litigation classes where the proposed means of assessing damages is "incompatible with the class action's theory of liability." 739 F.3d at 815. However, "nothing in *Comcast* mandates a formula for

7

classwide measurement of damages in all cases. Even after *Comcast*, therefore, this holding has no impact on cases such as the present one, in which predominance was based not on common issues of damages but on the numerous common issues of liability." *Id.* "We cannot therefore conceive of why or how a formula for making *voluntary payments* under a settlement agreement could threaten the predominance of common questions over individual questions in litigation." *Id.* at 818 (emphasis added). *See also Regmund v. Talisman Energy U.S.*, No. 4:16-cv-02960, 2020 U.S. Dist. LEXIS 257963 (S.D. Tex. Dec. 9, 2020) ("where a settlement provides 'voluntary payments,' a court need not find that common *damages* issues predominate." (citing *Deepwater Horizon*)).

Application of *Comcast* (or *Cruson*) to the instant case would turn the point of class settlement on its head. "[A]fter a class action has been settled, by definition, the litigation has been resolved and the questions have been answered. For the commonality and predominance inquiries to have any meaning at all, therefore, *they must be considered independently from the resolution provided in a settlement*." *Deepwater Horizon*, 739 F.3d at 818 (emphasis added). Because predominance must be assessed based on the pre-settlement case or controversy rather than the settlement's terms, the Settlement's distribution formulas are irrelevant to the predominance inquiry. *See id.*; *Sullivan*, 667 F.3d at 304.

This Court may correctly affirm its predominance determination on the

8

common liability questions presented in support of Preliminary Approval. Doc. 283 at 41-42. AT&T's voluntary agreement to pay Settlement Class Member Benefits does not defeat predominance. *Deepwater Horizon*, 739 F.3d at 818.

## III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. The Parties Resolved the Actions at Arm's-Length and in Good Faith and the Settlement Classes Were Adequately Represented

A respected and experienced class action mediator supervised settlement negotiations with highly experienced class action litigators. As the Court considered at the Preliminary Approval stage, all known facts bear the hallmark of arm's-length negotiations for the Settlement Classes. Harrer Law's attempt to impugn the fairness of the Settlement can be disregarded for the reasons stated in separately filed, sealed responses to Objectors' Motion for In Camera Inspection. Docs. 392, 395. Weighed against the actual and admissible facts, Objectors' innuendo and speculation is no basis to deny Final Approval. Courts do not find collusion based on speculation and inflammatory rhetoric. *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) ("The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.").

It is preposterous to cast the mediation as a "ruse," "dog and pony show," "puppet mediator," and "*plato o plomo*," and Harrer Law, through its proxies (Objectors) (Doc. 368 at 4, 9-10, 21-22), offers zero evidence to overcome the

presumption against collusion. Bare claims that the Settlement is unfair or compares unfavorably to other settlements is not, by itself, evidence of collusion or reverse auction. *Smith v. Sprint Comms. Co. LP*, No. 99 C 3844, 2003 WL 715748, at *2 (N.D. Ill. Feb. 27, 2003). If it were, compromise itself would signal malfeasance. *See Negrete v. Allianz Life Ins. Inc. Co. of N.A.*, 523 F.3d 1091, 1099-1100 (9th Cir. 2008); *In re Domestic Air. Transp. Antitrust Litig.*, 148 F.R.D. 297, 337 (N.D. Ga. 1993). The proper focus of a Rule 23(e) review is on the agreement's ultimate terms, not on the negotiations leading to the agreement. *Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *Hays v. Eaton Grp. Att'ys, LLC*, Civ. No. 17-88-JWD-RLB, 2019 WL 427331, at *8 (M.D. La. Feb. 4, 2019).

There is no evidence of a collusive reverse auction, for the simple reason that AT&T negotiated with the MDL-appointed leadership in both Actions. "A reverse auction is said to occur 'when the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims.'" *Negrete*, 523 F.3d at 1099 (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002)). MDLs were created and MDL leadership was appointed for the two Data Incidents to protect the putative class members' interests, which Class Counsel have done.

Objectors incorrectly rely on *Technology Training Assoc., Inc. v. Buccaneers L.P.*, in which the Eleventh Circuit reversed preliminary approval of a class action settlement and remanded for consideration of contentions that the settlement had constituted a "reverse auction," but not because of mere complaints about the settlement's adequacy or the negotiation process. 874 F.3d 692, 697-98 (11th Cir. 2017). Rather, the objectors had smoking gun evidence of a *literally* "Machiavellian" scheme to underbid the original plaintiffs and sell out the class members' interests—emails proposing exactly that had been exchanged between an attorney (who was initially employed by a firm representing the original plaintiffs) and his new employer (the firm that later filed a competing class action and settled it within two days). *Id.* at 694-95.

The record here lacks anything remotely similar, and AT&T's common arbitration and class action waiver defense was a risk Plaintiffs and Class Counsel considered in settling the Actions on fair, reasonable, and adequate monetary terms, with narrowly tailored Releases, and a Notice Program and Claim Process that protects all Settlement Class Members Rights, including to opt-out of the Settlement to preserve claims against AT&T. Under the circumstances, the Court may "rely upon the judgment of experienced counsel for the parties." *Jones v. Singing River Health Svcs. Found.*, 865 F.3d 285, 300 (5th Cir. 2017).

Harrer Law offers only two accusations laden with overwrought rhetoric,

11

neither of which constitute evidence of collusion and all of which simply describe the process and incentives fundamental to rational settlement. First, it nefariously speculates that AT&T chose class settlement over arbitration for economic reasons. (Doc. 368 at 4). AT&T could rationally consider settling the Actions without trying to compel arbitration or enforce a class action waiver and without colluding with Class Counsel. There is no evidence Class Counsel settled "at gun point."[5] (Doc. 368 at 4-5). The Motion for Final Approval confirms the Settlement Classes faced numerous risks. Doc. 356 at 26-28. AT&T's contracts with Settlement Class Members contain mandatory arbitration clauses and class action waivers that courts have repeatedly enforced. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Klein v. AT&T Corp.*, 23 Civ. 11038 (DEH)(RFT), No. 23 Civ. 11038 (DEH) (RFT), 2024 WL3409041 (S.D.N.Y. July 15, 2024); *Trimble v. AT&T Mobility, Inc.*, Civ. No. 5:23-CV-00038-KDB-DSC, 2023 WL 549358 (W.D.N.C. Aug. 24, 2023). Beyond the common arbitration defense, the Settlement Classes faced risks that motions to dismiss would be granted, class certification could not be granted or maintained through trial, or that they would lose at trial or appeal. Doc. 356 at 25-29. Faced with these defenses, and the prospect of years of litigation that would delay any recovery or result in no recovery, the valuable and immediate

---

[5] The Court should question Harrer Law's motivations in trumping up the Objection to actually serve the interests of its arbitration claimants.

12

Settlement benefits outweighed risky, prolonged litigation.

Second, Harrer Law offers Seth McCormick's self-serving and inadmissible characterizations of the mediations, even though he only participated in the irrelevant and separate mediation solely for his arbitration clients. One disappointed lawyer's views about why his *non*-Settlement Class Member arbitration clients did not get the deal he wanted does not support upending the Settlement. Plus, Settlement Class Members and arbitration claimants are not similarly situated, and comparing their recoveries is economic nonsense. Harrer Law's attempt to leverage the inadmissible and confidential mediation settlement offer to its arbitration clients to impugn the fairness of the Settlement is both improper and illogical. Procedurally, arbitration settlements need not be approved by the Court under Rule 23. Arbitration claimants (who timely opted-out) faced no such risk because they chose a different path to assert their claims arising out of the Data Incidents. Arbitration reflects that such claimants' *own* cost/benefit analysis and risk profile in individual dispute resolution could prompt a defendant to offer a larger settlement. So too could the costs of individual arbitrations for the defendant in the face of thousands of individual proceedings.

In the end, the presence of mass arbitrations operating parallel to class action litigation is not a basis to question the fairness, reasonableness, and adequacy of the Settlement, especially given how well-received the Settlement is by the Settlement

Classes Members who did not opt-out. Over 4.1 million Claims submitted, a reasonable claims rate exceeding 4%, with fewer than 50 objections collectively demonstrates overwhelming class acceptance. Supp. Kroll Decl., ¶ 5 (averring the instant claims rate "is higher than the claims rate in the majority of data breach class action cases that Kroll has administered."). *See also, e.g., Merrell*, 2025 WL 3250873, at *8 (data breach settlement approved with 6% claims rate); *In re Wawa, Inc. Data Sec. Litig.*, Civ. No. 19-6019, 2024 WL 1557366, at *17 (E.D. Pa. 2024) (collecting cases and noting claims rate of "about 2.56% . . . compares favorably to the claims rates in other data breach class actions"); *Hesse v. Godiva Chocolatier, Inc.*, No. 19-cv-0972-LAP, 2022 WL 22895466, at *9 (S.D.N.Y. Apr. 20, 2022) (same, but 2.83% in consumer class action); *Forcellati v. Hyland's, Inc*., No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) (cleaned up) ("The prevailing rule of thumb with respect to consumer class actions is a claims rate of 3–5 percent.").

Further, the structure of the mediations is beyond reproach. The Fifth Circuit recognizes that "involvement of an experienced and well-known mediator is also a strong indicator of procedural fairness." *Jones*, 865 F.3d at 295-96 (cleaned up); *Wilson v. Frontier Comm. Parent, Inc.*, Civ. No. 3:24-cv-01418-L, 2025 WL 2421373, at *6 (N.D. Tex. June 20, 2025); *Corrente v. Charles Schwab Corp.*, Civ. No. 4:22-cv-470, 2025 WL 3270219, at *15 (E.D. Tex. Nov. 24, 2025). Courts

14

presume settlements facilitated by skilled, neutral mediators are not products of fraud or collusion in the absence of contrary evidence. *In re Chinese-Manufactured Drywall Products Liab. Litig.*, 424 F. Supp. 3d 456, 486 (E.D. La. 2020); *In re Anthem*, 327 F.R.D. at 327.

Mr. Meyer's credentials and supervision of the mediations establish procedural fairness. He's a Chambers-ranked mediator and Fellow of the American College of Trial Lawyers with nearly 40 years of litigation experience.[6] Several courts have cited Mr. Meyer's experience and role in mediation when approving a proposed settlement. *See, e.g.*, *Peterson v. Vivendi Ticketing US LLC*, No. CV 23-7498, 2024 WL 3915154, at *5 (C.D. Cal. June 20, 2024); *Deka Inv. GmbH v. Santander Consumer USA Holdings Inc.*, No. 3:15-CV-02129, 2020 WL 11577829 *1 (N.D. Tex. Aug. 13, 2020); *In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917, 2023 WL 5511513, at *7 (E.D.N.Y. Aug. 24, 2023). The Court would have to believe Mr. Meyer either participated in misconduct or was grossly incompetent, outrageous and false accusations. Harrer Law offers nothing to overcome the *Jones* presumption that Mr. Meyer stewarded successful non-collusive mediations for the Settlement Classes.

Finally, with the obvious litigation risks and fair, reasonable, and adequate Settlement terms, there is zero basis to claim Class Counsel or Plaintiffs put their

---

[6] See https://www.jamsadr.com/neutrals/meyer.

interests ahead of the Settlement Classes' interests. Instead, they adequately represented them pursuant to Fed. R. Civ. P. 23(a)(4) and (g). Class Counsel were properly appointed to MDL leadership positions and honorably performed their duties.

### B. The Requirement of Sufficient Class Participation for the Settlement to Take Effect is Permissible

AT&T has not terminated the Settlement because a threshold percentage of opt-outs occurred. The deadline for it to do so has now expired. Doc. 342 at 2. Further, the Agreement's walkaway provision was disclosed to and approved by the Court. Agreement ¶ 190. Any theoretical issue that may have lurked in the (common, in any event) walkaway provision has been mooted by the record in this case.

### C. The Court's Injunction Against Parallel Proceedings, Including Arbitrations, Is No Basis to Deny Final Approval

The Court imposed a commonly issued injunction during the Notice Program and Final Approval process. A temporary pause was justified so Settlement Class Members could make reasoned decisions about the Settlement, while protecting every Settlement Class Members' and AT&T's rights if the Settlement is not approved, including anyone seeking to arbitrate with AT&T. *See In re Diet Drugs*, 282 F.3d 220, 235-36 (3d Cir. 2002) (MDL court's "flexibility and authority to decide such complex nationwide cases" justified injunction); Anti-Injunction Act, 28 U.S.C. §2283. That injunction does not impact the Settlement's fairness,

16

reasonableness, and adequacy.

Objectors' sole citation, *Abernathy v. DoorDash, Inc*., 438 F. Supp. 3d 1062 (N.D. Cal. 2020), does not support their position. Doc. 368 at 23, 28. The movants in *Abernathy* successfully sought court intervention to compel arbitration of their individual claims, and DoorDash unsuccessfully sought a stay of such arbitrations while a sister court considered final approval of a settlement that covered the petitioning employees, the latter because the court presumed arbitration claimants would opt-out. 438 F. Supp. 3d at 1064, 1066-67. The *Abernathy* court never suggested a district court lacks discretion to order a stay. *Id.* at 1067.

Any claimant who followed the Court-approved opt-out procedures is free to pursue individual arbitration after Final Approval because the claims are not released. Agreement ¶ 157. *See also In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1093 (N.D. Ill. 2021) (rejecting similar objections and distinguishing *Abernathy*, noting "opting out is an individual right" that "must be exercised individually" and that the opt-out procedure was not unduly burdensome).

As part of final approval, courts routinely enjoin class members who do not opt-out from prosecuting released claims elsewhere—a necessary corollary of *res judicata*. *Phillips Petroleum Co v. Shutts*, 472 U.S. 797, 811-12 (1985); *Amchem*, 521 U.S. at 620-21; *Reed*, 703 F.2d at 172; *In re Target*, 892 F.3d at 974. Harrer Law's clients who opted-out protected their rights to arbitrate. Importantly,

17

Objectors chose to remain part of the Settlement and have not been negatively impacted by the injunction.

### D. The Settlement Provides Adequate Relief to the Settlement Classes

After a fair and formal mediation process, Plaintiffs and AT&T settled for $177,000,000 in two non-reversionary Settlement Funds and AT&T's security attestation regarding the reasonable steps that have or will be undertaken to further secure customer information. Agreement ¶¶ 39, 52, 138. Tens of millions of Settlement Class Members were presented with the opportunity to opt-out, object, or do nothing.[7] Only 46 objections were submitted (many procedurally improper and untimely), only 9,575 opted-out, and over 4.1 million submitted Claim Forms. Supp. Kroll Decl., ¶¶ 3-4, 9. These compelling figures show the Settlement Class Members on the whole support the Settlement and believe the relief is adequate.

Just like all of Objectors' other arguments, they claim the Settlement is inadequate without a scintilla of evidence. Determining the adequacy of the Settlement Class Member Benefits is not based on some hypothetical maximum possible recovery. The standard is whether the settlement is "fair, reasonable, and adequate" considering case strength, litigation risks, stage of proceedings, and risks of continued litigation. Fed. R. Civ. P. 23(e)(2); *Reed*, 703 F.2d at 172. The quality

---

[7] Those doing nothing will not receive any cash, but they still benefit from the security improvements to protect their information. A negotiated settlement is not inadequate because some choose not to claim compensation.

18

and experience of Class Counsel is "something of a proxy for both 'trustworthiness' and 'reasonableness'." *Jones*, 865 F.3d at 300. The Court, "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Ruiz*, 724 F.2d at 1152; *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007).

As detailed in the Motion for Final Approval, and discussed *supra* at 12-13, the Settlement Classes faced substantial litigation risks. Doc. 356 at 26-28. Any of these significant risks—justiciability, proximate causation, proof of individual damages, the risk of protracted litigation—made it reasonable to settle with AT&T for the immediate Settlement Class Member Benefits, rather than facing years of uncertainty as litigation in two MDLs carried out at the district court and appellate levels. The Court should not be induced by conflicted Objectors to second-guess the determination of experienced Class Counsel.

Merely gainsaying the evaluation the Court undertook prior to granting Preliminary Approval is also insufficient. For example, Harrer Law cites *In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010), to suggest that the Court did not ensure "that attorney's costs and administrative costs [would] not cannibalize" the settlement (Doc. 368 at 24) but provides no basis for the assumption.

The Settlement Administration Costs are justified by the gold-standard Notice

Program needed for the Settlement and necessary to protect the due process rights of Settlement Class Members (including those who opt-out) and AT&T. Following the Notice Program, the Settlement Administrator continues to do its time-consuming work to review Claims. Contrary to Objectors' inaccurate assumption about the raw value of submitted Claims for Documented Loss Cash Payments by AT&T 2 Settlement Class Members, "Kroll is still in the process of reviewing and validating Claim Forms and substantiating claimed Documented Losses." *See* Doc. 356-3, ¶ 27; Supp. Kroll Decl. ¶ 8 (Kroll continues review and validation of Claim Forms for Documented Loss Cash Payments). Claims will receive strict scrutiny in accordance with the Court-approved Claim Process, preserving the corpus of the Settlement Funds for Valid Claims and making *pro rata* adjustments as necessary. There will be available funds for Tier 1, Tier 2, and Tier 3 Cash Payments.

### E. Narrowly Tailored Releases Bind All Non-Opt-Out Settlement Class Members – That's How Class Settlements Work

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), does not stand for the proposition that releases should only bind class members who receive payment. Doc. 368 at 25-26, 30. The problems with the settlement in *Eubank* were extreme. Objectors cherry-picked Judge Posner's thoughts on the opt-out process, while ignoring the detailed litany of faults specific to *Eubank*, including conflicted counsel (753 F.3d at 721); the ethics of said counsel (*Id.* at 722); addition and removal of named plaintiffs based on their amenability to settlement favorable to counsel (*Id.*);

20

the suggestion of a quasi-bribe to counsel who was in financial straits (*Id.* at 724); complicated eligibility and claim categorization (*Id.* at 725); and claim forms *as long as 13 pages* that made "claiming benefits nearly impossible"—a "Kafkaesque" process Judge Posner described as a "cruel illusion." *Id*. at 725-28. Accordingly, the Seventh Circuit found thatsettlement fundamentally unfair. Objectors cannot point to any such maladies with the Court's evaluation of the Settlement at the Preliminary Approval stage or now. The Settlement Classes' reaction demonstrates the Settlement provides meaningful relief through user-friendly processes, not illusory benefits.

Requiring that releases only bind class members who receive payment would also eviscerate *res judicata*. Once a settlement receives final approval, it binds all class members who received adequate notice and an opportunity to opt-out. *Reed*, 703 F.2d at 175; *In re East Palestine Train Derailment*, 158 F.4th 704, 713 (6th Cir. 2025); *Richardson v. Wells Fargo Bank, N.A*., 839 F.3d 442, 452 (5th Cir. 2016); *Klein v. O'Neal, Inc.*, 7:03-CV-102-D, 2009 WL 114638, at *2 (N.D. Tex. Apr. 29, 2009). To hold otherwise would undermine the finality essential to class action settlements.

The Releases are narrowly tailored to release claims arising out of the Data Incidents. Agreement ¶ 183. The Settlement reasonably must provide finality as to claims "that in any way concern, arise out of or related to the Data Incidents."

21

Otherwise, AT&T would pay millions but remain exposed to re-litigation. Courts routinely approve releases encompassing unasserted claims. *See, e.g., In re Anthem*, 327 F.R.D. at 327. The solution to preserve the right to sue AT&T was to opt-out. Objectors should have done so instead of trying to prevent Final Approval of the fair, reasonable, and adequate Settlement.

It is specious to argue there is ambiguity in what rights an opt-out retains. Doc. 368 at 27-29. The fact that Harrer Law facilitated opt-outs for over 1,000 of its other clients before filing the Objection is telling. Opt-outs release nothing. Courts do not read opt-out provisions narrowly. *See Shutts*, 472 U.S. at 813 (discussing effect of opt-out); *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 260 (2d Cir. 2001) (en banc). *See also In re Loancare Data Sec. Breach Litig.*, 3:23-cv-01508-CRK-MCR, 2025 WL 895435, at *3 (M.D. Fla. Mar. 24, 2025) (opt-outs "do not release their claims"); *Cilluffo v. Central Refrigerated Svcs., Inc.*, ED 12-cv-00886 VAP (OPx), 2018 WL 11374960, at *3 (C.D. Cal. Apr. 3, 2018) (same).

### F. The Claim Process, Opt-Out, and Objection Procedures Are Reasonable and Necessary

Data breach settlements regularly include a claim process like the one used in this Settlement to distribute non-reversionary common funds. The Claim Process reasonably requires a showing of support for a Documented Loss Cash Payment and offers Settlement Class Members the alternative to Claim a Tiered Cash Payment with no proof of loss. Tiered Cash Payments will be paid to those Settlement Class

Members whose Claims for Documented Loss Cash Payments are denied after review by the Settlement Administrator and direct notice of the opportunity to correct a deficiency.[8] Agreement ¶¶ 127-137, 163-170. Objectors point to no law that prohibits use of a claim process to ensure the fair and equitable distribution of non-reversionary, common settlement funds in the data breach context.

The opt-out and objection procedures are reasonable and regularly approved in class action settlements. The fact that some Settlement Class Members already intended to pursue individual or mass arbitrations did not require the Court to impose different opt-out requirements. Minimal information is needed to confirm the identity of the Settlement Class Members who opt-out, and the wet signature is also not objectionable. *See, e.g., In re Deepwater Horizon*, No. 20-30617, 2021 WL 3501651, at *2–3 (5th Cir. Aug. 9, 2021). When the Motion for Final Approval was filed, it referenced procedural improprieties with the objections made to date. Doc. 356 at 33-34. Compliance with the Preliminary Approval Order to object is not unreasonable, and the substance of any objections is also being addressed herein and in the separate omnibus response filed as to all other objections.

---

[8] Objectors oddly refer to "the assertion by Defendants that they can't calculate the amount of late fees they collected from their customers," Doc. 368 at 26, but the Actions were filed for the harm allegedly caused by the Data Incidents. Plaintiffs suspect Harrer Law grabbed language relating to another lawsuit when including that statement.

23

### G. The Inclusion of Snowflake as a Released Party is Supported by Consideration

AT&T and Snowflake were both sued in the AT&T 2 Action because the AT&T 2 Data Incident involved personal information "illegally downloaded from an AT&T workspace on a third-party cloud platform hosted by Snowflake." Agreement ¶ 5. Snowflake denies liability and argues AT&T bears sole responsibility. As long as the consideration given to a settlement class is reasonable, there is nothing that prevents the Court from approving a settlement where one of the defendants funds the non-reversionary common fund for the benefit of all potentially liable parties and the settlement classes releases the non-paying defendant. *See, e.g.*, *Jones*, 865 F.3d at 302 ("A defendant may be unlikely to settle a class action if class members can later pursue unasserted claims, or claims against non-parties, that may have the effect of re-opening the litigation."); *Klein*, 705 F. Supp. 2d at 666-67 (same). This is true in hub-and-spoke data breaches, two examples of which are settlements in the Snowflake MDL. *See, e.g.*, *In re Snowflake, Inc., Data Sec. Breach Litig.*, No. 2:24-MD-3126-BMM (D. Mont.), Doc. 585 (approving release of Snowflake where common fund was paid by Advance Auto Parts, Inc. and Advance Stores Co. Inc.) and Doc. 586 (approving release of Snowflake where common fund was paid by The Neiman Marcus Group, LLC).[9]

---

[9] The definition of "Released Parties" in the Settlement Agreements in those two cases is similarly drafted to include Snowflake. *See, e.g.*, *In re Snowflake, Inc., Data Sec. Breach Litig.*, No. 2:24-MD-3126-BMM (D. Mont.), Doc. 415-1 at ¶ 61 and Doc. 413-1 at ¶ 57.

Releasing Snowflake eliminates litigation risk and is supported by AT&T's reasonable substantial financial contribution for the benefit of the Class. *See Jones*, 865 F.3d at 302.

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d. 277, 280-81, 283 (7th Cir. 2002), is factually inapposite. The Seventh Circuit reversed a settlement that followed a tortured litigation history quite suggestive of a reverse auction that released H&R Block, an alleged non-party co-conspirator that was facing its own substantial litigation risk in an unrelated class action. *Id.* at 283. Though H&R Block chipped in to the settlement, its inclusion in the release provided no benefit to the settlement class while undermining the simultaneous litigation against it. *Id.* at 283-284. Nothing here resembles the actions that gave the *Reynolds* court pause.

## H. Attorneys' Fees Are Reasonable

While Objectors do not directly challenge the requested attorneys' fees under the percentage-of-the-fund method, Class Counsel briefly supplements their reasonable attorneys' fee applications. Class Counsel did not negotiate the provision permitting them to seek attorneys' fees as a percentage of the Settlement Funds until they had completed negotiation of the Settlement terms benefiting the Settlement Classes. Doc. 356-1 at ¶ 180, 356-2 at ¶ 48.

Ultimately, the requested attorneys' fee awards are subject to the Court's approval pursuant to Fed. R. Civ. P. 23(h). Counsel undertook wholly contingent

representation of the Settlement Classes with no promise of payment and have spent their own funds to cover litigation costs to this point. Settlement approval is expressly not conditioned upon this Court's approval of any particular attorneys' fee award. Agreement ¶ 178. The Applications for Attorneys' Fees, Costs, and Service Awards contain a lengthy and rigorous analysis of the *Johnson* factors demonstrating the reasonableness of the requested attorneys' fees under the percentage-of-the-fund method and why any objection to Class Counsel's requested attorneys' fee awards should be overruled. Doc. 356, 40-51; *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974).

## IV.    CONCLUSION

Based on the foregoing, the Court should overrule the Objection in its entirety, including the untimely joinder in it.

Dated: December 18, 2025                    Respectfully Submitted,

/s/ W. Mark Lanier                          /s/ Jeff Ostrow
W. Mark Lanier                              Jeff Ostrow
THE LANIER LAW FIRM, P.C.                   KOPELOWITZ OSTROW P.A.
10940 W. Sam Houston Pkwy. N.               1 West Las Olas Blvd.
Suite 100                                   Suite 500
Houston, Texas 77064                        Fort Lauderdale, Florida 33301
Tel: (713) 659-5200                         Tel: (954) 525-4100
Mark.Lanier@lanierlawfirm.com               ostrow@kolawyers.com

*Plaintiffs' Lead and Liaison Counsel*

Shauna Itri                                 J. Devlan Geddes
SEEGER WEISS LLP                            GOETZ, GEDDES & GARDNER P.C.
55 Challenger Road                          35 N. Grand Avenue

Ridgefield Park, New Jersey 07660
Tel: (973) 639-9100
sitri@seegerweiss.com

James E. Cecchi
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
jcecchi@carellabyrne.com

Jean Sutton Martin
**MORGAN & MORGAN**                 1
201 N. Franklin Street 7th Floor
Tampa, Florida 33602
Tel: (813) 559-4908
jeanmartin@forthepeople.com

Sean S. Modjarrad
**MODJARRAD ABUSAAD & SAID**
212 W. Spring Valley Road
Richardson, Texas 75081
Tel: (972) 789-1664
smodjarrad@mas.law

*Plaintiffs' Executive Committee*

Bozeman, Montana 59715
Tel: (406) 587-0618
devlan@goetzlawfirm.com

Raph Graybill
**GRAYBILL LAW FIRM, PC**
400 4th Street North
Great Falls, Montana 59401
Tel: (406) 452-8566
raph@graybilllawfirm.com

John Heenan
**HEENAN & COOK, PLLC**
631 Zimmerman Trail
Billings, Montana 59102
Tel: (406) 839-9091
john@lawmontana.com

Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street NE
Suite 302
Washington, DC 20002
Tel. (202) 470-3520
jrathod@classlawdc.com

*AT&T 2 Class Counsel*

## CERTIFICATE OF WORD COUNT

In reliance on the word count function of the Microsoft Word software on which this Response was prepared, I hereby certify that this Response contains 6,153 words, excluding the case caption, table of contents, table of authorities, signature block, and certificates.

/s/ W. Mark Lanier
W. Mark Lanier

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served on all counsel of record via CM/ECF on December 18, 2025, in accordance with the Federal Rules of Civil Procedure.

*/s/ W. Mark Lanier*
W. Mark Lanier
