## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **IN RE: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION** | Case No. 3:24-cv-00757-E |
| | MDL DOCKET NO. 3:24-md-03114-E |
| *This Document Relates to All Cases* | |

**SECOND SUPPLEMENTAL DECLARATION OF JEANNE C. FINEGAN, APR OF KROLL SETTLEMENT ADMINISTRATION LLC IN CONNECTION WITH PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**

I, Jeanne C. Finegan, declare and state as follows:

### INTRODUCTION

1.      I am the Managing Director and Head of Kroll Notice Media Solutions

("Kroll Media"),[1] a business unit of Kroll Settlement Administration LLC ("Kroll"),

the Settlement Administrator appointed in the above-captioned case, whose principal

office is located at One World Trade Center, 285 Fulton Street, 31st Floor, New

York, New York 10007. I am over 21 years of age and am authorized to make this

declaration on behalf of Kroll and myself. This declaration is based upon my

personal knowledge as well as information provided to me by my associates and

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement and Release entered into for the Actions.

staff. This declaration is being filed in connection with Final Approval of the Settlement.

2. This declaration supplements the *Declaration of Jeanne C. Finegan of Kroll Settlement Administration LLC in Connection with Plaintiffs' Unopposed Motion for Final Approval of Settlement*, filed on November 3, 2025 (the "Initial Declaration"), and the *Supplemental Declaration of Jeanne C. Finegan of Kroll Settlement Administration LLC in Connection with Plaintiffs' Unopposed Motion for Final Approval of Settlement*, filed on December 18, 2025 (the "First Supplemental Declaration") in order to provide updated information to the Court regarding the results of the Notice Program. The Initial Declaration and First Supplemental Declaration are incorporated herein by reference in their entirety.

**Data Intake and Class Lists**

3. Following the Initial Declaration, Kroll received 50 additional data files from Defendants containing an additional 153 records for the AT&T 1 Class List. After incorporating these records, the total number of AT&T 1 Class List records received was 66,594,417, and after removing duplicates from Kroll's analysis, the total number of unique records in the AT&T 1 Class List was 63,284,676.

4. Of the 153 additional AT&T 1 Class List records received, five matched to AT&T 2 Class List records and were therefore identified as Overlap

Class Members, bringing the total number of Overlap Class Member Records to 6,282,634.

5.     As discussed in paragraph 10 of the Initial Declaration, Defendants have represented to Kroll and Class Counsel that the actual number of unique AT&T 1 Settlement Class Members is less than the 63,284,676 records described in paragraph three above as a result of duplication within the data. After receiving and analyzing additional data Defendants provided, the AT&T 1 Settlement Class includes approximately 55,949,309 members.

**The Notice Program**

6.     The total number of unique records for purposes of sending Notice is 99,763,302, consisting of 57,002,042 records for AT&T 1 only Settlement Class Members, 36,478,626 records for AT&T 2 only Settlement Class Members, and 6,282,634 Overlap Class Members.

7.     On August 4, 2025, Kroll commenced sending Email Notice to records for all Settlement Class Members which contained a valid email address. Kroll sent Email Notice to a total of 79,068,722 email addresses provided in the Settlement Class Lists. Kroll also performed an advanced search to identify email addresses for Settlement Class Members who did not have an email address in the Class Lists, resulting in an additional 7,847,454 email addresses being identified and Email Notice being sent to those addresses.

8.    For 21,030,053 records for which the Email Notice was rejected/bounced back as undeliverable, Kroll performed an advanced search to identify an alternative email address. Following the search, Email Notices were then re-sent to 8,985,259 updated email addresses.

9.    Analysis of the Email Notice effort revealed that 86,916,176 records were sent one or more emails, and 69,522,782 had at least one Email Notice sent which was not rejected/bounced back as undeliverable.

10.    Therefore, following the completion of the initial Email Notice campaign, Kroll commenced sending Postcard Notice to all records for AT&T 1 Settlement Class Members for which no email address was available or where all Email Notices for that record were rejected/bounced back as undeliverable and where a valid postal address was available. Prior to mailing, Kroll ran these records through the USPS's National Change of Address ("NCOA") database and updated the records with address changes received from the NCOA.

11.    Postcard Notice was sent to 17,906,765 AT&T 1 Settlement Class Member records. As of December 23, 2025, 98 Postcard Notices were returned by the USPS with a forwarding address. Of those, 94 Postcard Notices were automatically re-mailed to the updated addresses provided by the USPS.

12.    As of December 23, 2025, 189,484 Postcard Notices were returned by the USPS as undeliverable as addressed, without a forwarding address. No further action will be taken with respect to these records.

| Direct Notice Program Dissemination & Direct Reach | | |
|---|---|---|
| Description | Class Member Records | Percentage of Class Member Records |
| Settlement Class Member Records | 99,763,302 | 100.0% |
| Email Notice | | |
| (+) Records To Which Email Notice Was Attempted | 86,916,176 | 87.1% |
| (-) Records to Which All Email Notices Were Undeliverable | (17,393,394) | (17.4%) |
| Post Card Notice | | |
| (+) Postcard Notices Mailed | 17,906,765 | 17.9% |
| (-) Postcard Notices Returned as Not Delivered | (189,488) | (0.2%) |
| Direct Notice Program Reach | | |
| (=) Likely Received Direct Notice | 87,240,059 | 87.4% |

13.    Commencing on November 21, 2025, Kroll sent the Reminder Notice to 61,172,725 Settlement Class Member records which had a valid email address and which had not yet filed a Claim or an opt-out request.

14.    Based on the foregoing, following the completion of the Notice Program, Kroll has reason to believe that direct Notice alone likely reached 87,240,059 of the 99,763,302 Settlement Class Member records, approximately 87.4%.

15.    In addition to the extensive direct notice outreach, Kroll implemented a supplemental media campaign to further increase awareness of the Settlement, which is detailed in the Initial Declaration.  The supplemental media campaign

delivered over 28,075,000 impressions to targeted Settlement Class Members. Combined, the direct notice and supplemental media campaign is estimated to have reached over 90% of the Settlement Class Members.

16.    In my opinion, this robust Notice Program is a particularly appropriate, highly targeted, and contemporary approach to provide Notice to Settlement Class Members. The Notice Program was specifically designed to satisfy applicable due process requirements and was reasonably calculated to provide the best notice practicable under the circumstances. Furthermore, it is consistent with court-approved notice programs in similar class actions settlements, including data breach class actions, and the Federal Judicial Center's guidelines concerning appropriate reach.[2]

**Case Activity Updates**

17.    As of December 30, 2025 there were 13,000,000 visits to the Settlement Website and 18,540,000 webpages viewed.

18.    As of December 30, 2025, the IVR system has received 1,115,660 calls, and 138,252 callers have been connected to live operators.

---

[2] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%. *See id*. at pp. 1, 3.

19.    As of December 30, 2025, Kroll has received 4,163,811 Claim Forms submitted electronically through the Settlement Website and 217,748 Claim Forms submitted through the mail.

20.    Based on the total number of unique Settlement Class Members, this represents a 4.8% claims rate. This claims rate is higher than the claims rate in the majority of data breach class action cases that Kroll has administered.

## CERTIFICATION

I declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge and that this declaration was executed on December 31, 2025, in Tigard, Oregon

_____
Jeanne C. Finegan