# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| IN RE: AT&T Inc. CUSTOMER DATA SECURITY BREACH LITIGATION | § § § § § § § § § § § |
| | CASE NO. 3:24-cv-00757-E |
| | MDL DOCKET NO. 3:24-md-03114-E |
| This Document Relates to All Cases | |

## STATUS REPORT DECLARATION OF
## SPECIAL CLAIMS ADMINISTATION MASTER RICHARD J. ARSENAULT

I, Richard J. Arsenault, declare and state as follows:

1.  I am the court-appointed Special Claims Administration Master in the captioned proceedings.

2.  This declaration is based upon my personal knowledge, as well as information provided to me by my associates, staff, and the court-approved expert consultant.

3.  This is a Status Report as contemplated by Case Management Orders 15 and 17.

4.  On August 15, 2025, the Parties moved the Court to appoint me to serve as the Special Claims Administration Master in the captioned litigation. *See* ECF Doc. 313.

5.  Shortly thereafter, the Court provided notice to the Parties of its intent to appoint me as the Special Claims Administration Master and attached a copy of my curriculum vitae which substantially outlined my professional credentials and experience. *See* ECF Docs. 326 (CMO #15) and 326-1.

6.  Those professional credentials include: over three decades of national complex trial and litigation experience; extensive leadership positions in numerous multidistrict and class action

litigations; authorship of treatises and other publications on multidistrict litigation and class actions including co-author of the American Bar Association Treatise, *A Practitioner's Guide to Class Actions*, chapter on "Multidistrict Litigation"; hosting, coordinating, moderating and speaking at numerous continuing education seminars and conferences which have included the nation's preeminent complex litigation jurists, litigators, scholars, and industry professionals; as well as lecturing at various law schools; along with service on boards and governing committees or commissions for national organizations relative to matters of complex litigation, professionalism, ethics, and certifications of legal professionals.

7. I have been appointed by the Louisiana Supreme Court to serve on the Rules of Professional Conduct Class Action Committee. This committee was tasked with examining Louisiana's Rules of Professional Conduct as they relate to representation of parties involved in class actions, mass torts, and other multi-client representations. I was also appointed by the Louisiana Supreme Court to serve on a committee to revise the Complex Litigation Bench Book.

8. I have served on to the Complex Litigation Specialty Program Commission in connection with the development of board certification for complex litigation as part of a program under the National Board of Trial Advocacy..

9. Professor Arthur Miller has described me as one of the "leaders in the area of complex litigation." Similarly, Professor Edward Sherman, former Dean of Tulane Law School, has described me as one of the "experts in class actions."

10. I was also recently selected to serve, and currently serve, as the Abuse Claims Reviewer relating to the settlement reached in *In re: The Roman Catholic Church of the Archdiocese of New Orleans* bankruptcy proceedings before Judge Meredith S. Grabill in the United States Bankruptcy Court for the Eastern District of Louisiana. *See In re: The Roman*

*Catholic Church of the Archdiocese of New Orleans*, No. 20-10846, Order entered October 14, 2025, ECF. Doc. 4488 (Bankr. E.D. La., 10/14/2025).

11. Following the Court's notice to the Parties of its intent to appoint me as the Special Claims Administration Master, and as ordered by the Court, I filed my affidavit with the requisite disclosures pursuant to 28 U.S.C. § 455. *See* ECF Doc. 331.

12. All Parties consented to my appointment as Special Claims Administration Master. *See* ECF Docs. 328 and 329.

13. Thereafter, the Court entered an order confirming my appointment as Special Claims Administration Master. *See* ECF Doc. 335 (CMO #17).

14. My duties and role as Special Claims Administration Master are to: (1) serve as a Liaison to the Court, the other Special Masters, and the Settlement Administrator; (2) provide the Court with regular status reports regarding administration of the class action settlement; and (3) make recommendations to the Court concerning any issues that may require resolution to administer, facilitate, and effectively manage the class action settlement. *See* ECF Doc. 326 (CMO #15), at p. 3.

15. As Special Claims Administration Master I have the authority to (1) supervise and monitor class action settlement administration (including steps taken by the Claims Administrator to prevent, detect, and eliminate fraudulent claims), and (2) decide any challenges asserted by a class action settlement claimant concerning the rejection or reduction of a claim. *See* ECF Doc. 326 (CMO #15), at p. 3.

16. My Team consists of myself, several senior complex litigation attorneys with my law firm, my most senior litigation paralegal whose been with my firm for nearly three decades,

and a complex data management and processing expert consultant whose engagement was approved by the Court as noted herein.

17. My appointment as Special Claims Administration Master occurred after the class action settlement notice program was designed, preliminarily approved by the Court, and implemented by the Settlement Administrator. Consequently, the focus of my work as Special Claims Administration Master has been, and will continue to be, on other aspects of the class action settlement and claims administration processes.

18. My Team and I have consistently conferred, coordinated, and worked in cooperation with Special Master Royal Furgeson, Special Master Craig Ball, Class Counsel, AT&T Counsel, the Settlement Administrator, and their various team members and representatives, concerning the scope of my assignments as Special Claims Administration Master.

19. My Team and I have actively participated in and contributed to regular and recurring weekly meetings with the Settlement Administrator, Counsel, and other Special Masters.

20. Since my appointment, I have been in regular communication with the Court and have provided periodic status reports.

21. Kroll was appointed as the Settlement Administrator to provide notification and claims administration services in connection with the Class Action Settlement Agreement in this case. *See* ECF Doc. 298 (Preliminary Approval Order), at p. 7; *see also* ECF Doc. 356-3 (November 3, 2025 Declaration of Jeanne C. Finegan), at p. 3.

22. Kroll has extensive experience in class action matters, having provided services in class action settlements involving privacy, antitrust, securities fraud, labor and employment, consumer, and government enforcement matters. Kroll has provided class action services in over

3,000 settlements varying in size and complexity over the past 50 years. *See* ECF Doc. 356-3, at p. 3 (November 3, 2025 Declaration of Jeanne C. Finegan).

23. Counsel for AT&T has advised that they have identified 31 data breach settlements since 2017 involving more than half-a-billion class members that were successfully administered by Kroll, including the following:

| Case Name | Year Final Approval | Case Number | Class Size |
|---|---|---|---|
| *In re Arthur J. Gallagher Data Breach Litigation* | 2025 | No. 1:22-cv-00137 | 2,200,000 |
| *Rodriguez v. Professional Finance Company, Inc.* | 2025 | 1:22-cv-01679 | 2,162,498 |
| *In re Fred Hutchinson Cancer Center Data Breach Litigation* | 2025 | No. 2:23-cv-01893 | 2,100,000 |
| *Kleeberg v. St. Joseph's/Candler Health System, Inc.* | 2025 | Civil Action No. STCV21-01638 | 1,200,000 |
| *In Re UNITE HERE Data Security Incident Litigation* | 2025 | No. 24-cv-01565 | 800,000 |
| *In re Lansing Community College Data Breach Litigation* | 2025 | No. 1:23-cv-00738 | 760,000 |
| *In re Luxottica of America Inc. Data Security Breach Litigation* | 2025 | No. 1:20-cv-00908 | 673,074 |
| *Gilbert et al v. BioPlus Specialty Pharmacy Services, LLC* | 2025 | No. 6:21-cv-02158 | 380,783 |
| *Cain v. CGM, L.L.C.* | 2025 | No. 23-cv-02604 | 314,857 |
| *Hightower v. Receivables Performance Management LLC* | 2024 | No. 2:22-cv-01683 | 3,800,000 |
| *Lincare Holdings, Inc. Settlement Administration* | 2024 | No. 22-cv-01472 | 2,387,436 |
| *In re Great Expressions Data Security Incident Litigation* | 2024 | No. 2:23-cv-11185 | 2,000,000 |
| *In re Tenet Healthcare Corporation Data Breach Litigation* | 2024 | No. DC-22-07513 | 1,200,000 |
| *In re MCG Health Data Security Issue Litigation* | 2024 | No. 2:22-cv-00849 | 1,100,000 |
| *In re CorrectCare Data Breach Litigation* | 2024 | No. 5:22-cv-00319 | 650,000 |
| *Andreoni v. Radiology Associates of Albuquerque* | 2024 | No. D-202-CV-2022-05463 | 612,632 |
| *In re Sovos Compliance Data Security Incident Litigation* | 2024 | No. 1:23-cv-12100 | 497,145 |

| | | | |
|---|---|---|---|
| *Weigand v. Group 1001 Insurance Holdings, LLC* | 2024 | No. 1:23-cv-01452 | 475,000 |
| *Molinari et al. v. Welfare & Pension Administration Service, Inc.* | 2024 | No. 22-2-04023-8 | 211,822 |
| *Google Referrer Header Privacy Litigation* | 2023 | No. 5:10-cv-4809 | 193,000,000 |
| *In Re: T-Mobile Customer Data Security Breach Litigation* | 2023 | No. 4:21-md-03019 | 76,600,000 |
| *Ulucan v. East Tennessee Children's Hospital* | 2023 | No. C2LA0081 | 422,531 |
| *Charlie v. Rehoboth McKinley Christian Health Care Servs.* | 2023 | No. 1:21-cv-652 | 191,000 |
| *In re UKG Inc. Cybersecurity Breach Litigation (Kronos Data Breach)* | 2023 | No. 22-cv-346 | 40,000 |
| *Summers v. Sea Mar Community Health Centers* | 2022 | No. 22-2-00773-7 | 1,200,000 |
| *Martinez, et al. v. Presbyterian Healthcare Services* | 2022 | No. D-202-CV-2020-01578 | 897,332 |
| *Jowharah Hameed-Bolden et al v. Forever 21 Retail, Inc.* | 2022 | No. 2:18-cv-3019 | 500,000 |
| *Bahnmaier v. Wichita State University* | 2021 | No.2:20-cv-2246 | 443,000 |
| *Dumay v. Episcopal Health Servs.* | 2021 | No. 1:19-cv-6213 | 178,000 |
| *Yahoo! Inc. Customer Data Security Breach Litigation* | 2020 | No. 5:16-md-2752 | 200,000,000 |
| *Orr v. Intercontinental Hotels Group, PLC* | 2020 | No. 1:17-cv-1622 | 2,250,000 |
| *Rodriguez v. University Property & Casualty Insurance Co.* | 2017 | No. 0:16-cv-60442 | 1,390,000 |

24. Counsel for AT&T has likewise advised that in the related Snowflake MDL 3126, Kroll is administering the Advanced Auto Parts Settlement and that on October 23, 2025, Chief Judge Morris granted final approval of that Settlement, finding that Kroll "has complied with the approved Notice Program" and that "the Claims Process set forth in the Agreement was followed and that the process was the best practicable procedure under the circumstances." *See In re: Snowflake, Inc., Data Security Breach Litig.*, No: 2:24-MD-3126-BMM, ECF Doc. No. 585, p. 6 (D. Mont. Oct. 23, 2025).

25. My Team (as described above) and I communicate regularly with the Kroll Team led by Scott Baird (Senior Manager, Kroll Settlement Administration). Since the inception of my appointment, Scott Baird has been and continues to be cooperative and responsive with excellent availability.

26. Recurring weekly meetings ("Kroll Team Meetings") are scheduled along with others as needed.

27. The Kroll Team Meetings have tight agendas and regularly include input from all the attendees, which typically include representatives from Kroll (Scott Baird, Tara Trapani, Lucas Meyer, Frank Ballard), AT&T 1 and AT&T 2 Class Counsel (including Evan Janush, Jeff Ostrow, and Shauna Itri), Counsel for AT&T Defendants (Lisa Ghannoum and Kimberly Morris), Special Master Craig Ball, Marcellene Malouf, and members of my Team. That input and participation generally occurs in the form of questions, observations, and comments; as well as robust discussion and resolution of any issues affecting claims administration. Productive dialogues ensue along with important updates on the status and progress of the settlement administration.

28. The meetings have facilitated considerable progress in my, along with my Team's, understanding of Kroll's settlement administration processes and controlling data flow documents.

29. Prior to the weekly Kroll Team Meetings, Kroll circulates to all attendees a detailed tracking report containing key claims administration metrics. I, along with my Team, carefully analyze these reports and related metrics, and as necessary, pose questions to Kroll and raise issues as needed during the Kroll Team Meetings.

30. In addition to my efforts, Special Master Furgeson has suggested potential monitoring protocols for the group to consider. He also suggested that regarding the interface with Kroll, that Special Master Craig Ball and Marcellene Malouf be involved based on their experience

and expertise. Accordingly, he asked that they be added to the Kroll Team Meetings and related communications. That has occurred and they, along with Special Master Furgeson have meaningfully participated in the task to which I have been assigned by the Court. I have welcomed their input and included them in my efforts.

31.     There are also recurring Special Master Case Management meetings conducted by Special Master Furgeson. I, and some members of my Team, attend those meetings, and topics associated with my special master duties are included on the agenda and discussed during the meetings. Other attendees include Special Master Ball, Marcelene Malouf, along with Class Counsel and AT&T Counsel. The detailed agendas are submitted prior to the meetings and include my input as needed. I also separately meet with Special Master Furgeson as needed.

32.     I, along with my Team, regularly review class member communications and filings to monitor the issues being raised and confer with Kroll to determine if there are any systemic issues that need to be addressed. Periodically, I am contacted directly by class members and coordinate addressing the issues raised with Kroll and/or Class Counsel and AT&T Counsel.

33.     My Team and I review all new filings on the case dockets, and confer amongst ourselves and Special Master Furgeson, Counsel, and/or Kroll as necessary to address any issues raised by the filings that pertain to my assigned duties and responsibilities.

34.     In terms of preventing and detecting fraud, given the constant technological advancements that help facilitate fraud in the class settlement environment, I was pleased to learn Kroll has engaged a well-respected vendor to assist in the fraud detection effort. My Team and I continue to monitor that activity.

35.     In connection with my assigned duties, I monitored and made inquiries regarding prior Kroll activity, including in the East Palestine Train Derailment litigation pending in the

United States District Court for the Northern District of Ohio, Eastern Division (Case No. 4:23-cv-00242-BYP). I considered prior activity in tandem with Kroll's credentials as noted above. However, and most importantly, my focus is on Kroll's activity in this matter.

36. Shortly following my appointment and pursuant to my authority under CMO 15 and 17 and with the Court's approval, I engaged the professional services of Expert Consultant John Koehl, of Koehl Consulting LLC, to assist in the performance of my duties as Special Claims Administration Master. *See* ECF Docs. 346 and 347.

37. John Koehl is an experienced information technology consultant and specialist in several matters, including but not limited to, IT project management, information systems and standards, software design and architecture, agile software development processes, software development and coding standards, extract transform and load (ETL) operations, big data processing, normalized and denormalized database design and implementation, database schema and data auditing, and software and data security. *See* ECF Docs. 346 and 346-1.

38. As anticipated, John Koehl has been invaluable and has actively participated in the above described recurring Kroll Team Meetings. He has and continues to provide critical input and has been available to answer questions as needed from the Special Masters, Kroll, and all Counsel.

39. The Court's Order approving my request to retain expert consultant John Koehl, was entered on October 21, 2025. Within 6 days, and with John Koehl's capable input, I identified initial data my Team anticipated needing at that juncture. I then made John Koehl available to address questions and comments regarding what those items were and why they were being requested. That protocol has been regularly repeated as my Team makes additional data requests based on the progression of the settlement administration. As the settlement administration

proceeds through various phases, my Team and I will continue this process, with the input from others identified herein, including the other Special Masters, until the conclusion of this settlement's administration.

40. More specifically, Senior Manager Scott Baird explained that Kroll is now transitioning towards the claims determination and calculation stage (having previously been at the claim notice and intake stage). As such, I requested and have been provided with the initial iteration of Kroll's calculation functional requirements. I, along with my Team, have carefully reviewed same and plan to interact with Kroll and all stakeholders to discuss our comments and observations.

41. The administration of this Class Action Settlement has meaningfully progressed in a satisfactory manner, and I currently have no reason to doubt that it will continue to do so in the future.

42. As noted herein, Kroll and its representatives, namely Senior Manager Scott Baird, have been extraordinarily prompt and responsive to my many and regular inquiries.

43. With Kroll's cooperation, along with the Court's continued supervision and input by Special Master Furgeson and assistance of Special Master Ball and Marcellene Malouf, I am optimistic, tempered with measured caution, that the claims administration of this settlement will proceed appropriately.

44. Obviously, no settlement administrator is perfect and challenges are inherent in any settlement administration. The goal, however, is to the extent reasonably possible, anticipate and eliminate as many potential issues as possible in a proactive, rather than reactive, manner. That is precisely the foundation this Honorable Court has wisely created, with the collaborative effort described herein, all under the Court's watchful eye.

## **CERTIFICATION**

I declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge, information, and belief, and that this Declaration was executed on January 8, 2026, in Baton Rouge, Louisiana.

_____
Richard J. Arsenault