**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|   |   |
|---|---|
| IN RES: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION | CASE NO. 3:24-CV-00757-E<br><br>MDL DOCKET NO. 3:24-MD-03114-E |

**ATTORNEY POTTER HANDY LLP OPPOSITION TO AT&T DEFENDANTS' POSITION ON ALL OPT-OUT REQUESTS**

On February 20, 2026, Defendant's AT&T filed a motion requesting this Court invalidate thousands of opt-outs. Included in those are 1,609 opt-outs filed by Potter Handy LLP (Hereinafter Potter Handy). The defendant seeks to invalidate 1,255 of Potter Handy opt-outs based on allegations that they were submitted in response to misleading communications. Potter Handy opposes the motion and requests the court not invalidate the otherwise complaint opt-outs submitted by Potter Handy clients.

I.   FACTS

Potter Handy represents over 6,000 clients with potential claims against AT&T for multiple data breaches. On or about June 20th. 2025 the court issued its Preliminary Approval Order (ECF Document #298), which set forth the process and requirements for potential class members to opt-out of the class settlement.  In accordance with the court's order, Potter Handy communicated with clients regarding the class settlement.

On or about September 19, 2025, Potter Handy, sent out a direct communication to their clients (A true and correct copy is Attached to the Declaration of Attorney Krista R. Hemming as "Exhibit A"). This communication indicated that the firm was reaching out due to "a class case settlement in the case *In Re: AT&T inc. customer data security breach litigation* in the Northern District of Texas, Dallas Division, MDL Docket No. 3:24-md-03114-E". It went on to inform the client of their options including 1. Opting out, 2. Filing an objection, 3. Filing a claim, and 4. Doing nothing,

and the consequences of each. The communication outlined the process to submit an opt-out which required the document be signed in ink. The firm gave the opt-out deadline and finally directed clients to the official AT&T settlement website.

On or about October 7, 2025, Potter Handy sent a follow-up communication to their AT&T clients informing them of the extended deadline (A true and correct copy is Attached to the Declaration of Attorney Krista R. Hemming as "Exhibit B"). This communication was mostly identical to the September 19, 2025, communication, with some minor adjustments, as discussed below. As a result of their efforts, Potter Handy was able to retain over 1,200 valid and compliant opt-outs.

## II.     ARGUMENT

AT&T's only argument for invalidating the opt-out from Potter Handy clients was that the communications were misleading. AT&T claims that Potter Handy's communication "misled its clients into believing that the firm would "bring a **lawsuit** against AT&T" and proceed "through the **litigation process**," thereby concealing intent to pursue **arbitration** against AT&T." However, Potter Handy's client communications were through, informative, and compliant.

> a. <u>Potter Handy's Messaging To Clients Regarding The AT&T Class Settlement Was Not Misleading, Coercive, or Factually Inaccurate.</u>

It is undisputed that communications to clients from attorneys should be factually accurate and should not be misleading or coercive. *See Matson v. NIBCO Inc.*, No. 5-19-CV-00717-RBF, 2021 WL 2374312, (W.D. Tex. June 10, 2021) "[A] statement is actually or inherently misleading when it deceives or is inherently likely to deceive." *Joe Conte Toyota, Inc. v. La. Motor Vehicle Comm'n*, 24 F.3d 754, 756 (5th Cir.1994).

In *Matson*, the Court invalidated hundreds of opt-out after it found that the opt-outs were solicited through misleading, coercive, and factually inaccurate advertisements. Advertisement. WL 2374312 at. 4 (W.D. Tex. June 10, 2021). In that case the communications misrepresented that "every single class member's plumbing system "is defective"**;** mischaracterizes the settlement as involving "less than $1,000 per home."; and misrepresented that class members' homes will suffer a declination in value because of the "defect". *Matson v. NIBCO Inc.*, No. 5-19-CV-00717-RBF, 2021 WL 2374312, at 5-8 (W.D. Tex. June 10, 2021).

Unlike in *Matson*, Potter Handy's communications did not misrepresent or mislead their clients. Here, AT&T's sole contention is that by stating if the client were to opt-out it would "maintain your right to bring a lawsuit" and that Pottery Handy was "dedicated to advocating for you through the litigation process" which included "possible discovery and a final hearing on the merits" (Hemming Decl. "Exhibit A") was misleading to their clients.

Informing clients that by opting out of the class settlement they are "maintain[ing][their] … right to bring a lawsuit" is not factually inaccurate or misleading. First, if a class member opts-out of the class settlement, they have, by means of "opting out", maintained their right to pursue their claims through the legal process. They could choose to file their matter in court. That action may be subject to a Motion to Compel Arbitration, but still the consumer could possibly decide to "bring a lawsuit". Second, arbitration is a recognized form of adjudicative dispute resolution arising from contractual agreements between parties. Where a consumer agreement contains a binding arbitration clause—as AT&T does—the filing of an arbitration demand is the procedural mechanism through which a claimant formally initiates legal claims against the company. In this fashion, arbitration functions as an alternative forum for resolving the same substantive legal claims that could otherwise be litigated in court.

Thus, the arbitration process closely mirrors the litigation process and includes things like dispositive motions, discovery disputes and "discovery and a final hearing on the merits". Nothing in Pottery Handy's statements affirmatively represents that the claims would be filed in court rather than in arbitration.

Further, AT&T's reliance on isolated social media commentary is insufficient to demonstrate that the communications were misleading. Anecdotal online statements from unidentified individuals do not establish that the firm's statements were objectively deceptive or that a substantial portion of recipients were actually misled.

Additionally, Potter Handy attempted to remedy any ambiguity when they sent further communication to their clients. In this subsequent message, Pottery Handy included that they are "dedicated to advocating for you through the process including possible discovery and a final ***arbitration*** hearing on the merits of your case"[1] (Hemming Decl. "Exhibit B"). The addition of the

---

[1] Emphasis added.

word "arbitration" would work clear up any ambiguity which led AT&T to erroneously claim Potter Handy was misleading clients.

Finally, unlike the attorneys in *Braswell v. Bow Plumbing Grp., Inc.*, No. 2:21-CV-25-ECM, 2024 WL 1468917(M.D. Ala. Apr. 4, 2024), whose communications were found to have interfered with the Court's order by "chill…[ing] communication between class counsel and presumptive class members", Potter Handy's messages to clients facilitated communication. Potter Handy's messages always directed the client to the settlement website, by giving the web address, and directed clients to contact the claims administrator with questions. (Hemming Decl. "Exhibit A" and "Exhibit B").

### III.    CONCLUSION.

Potter Handy has shown that their client messaging was not misleading. The communications were accurate in their core representation: Potter Handy offered to represent individuals who opted out of the class action and to pursue claims directly against AT&T on their behalf. Arbitration does not negate that representation; it simply reflects the procedural forum mandated by the parties' contractual agreement. Because the communications truthfully conveyed the firm's intent to assert claims against AT&T and advocate for clients through the applicable dispute-resolution process, they cannot reasonably be characterized as deceptive or misleading. For the forgoing reasons we request the court deny AT&T's motion to invalidate Potter Handy's opt-out.

Respectfully submitted,

Dated: March 4, 2026

Krista R. Hemming
POTTER HANDY, LLP
KRISTA HEMMING, ESQ. SBN 304213
100 Pine St., Ste 1250
San Francisco, CA 94111
(858) 375-7385; (888) 422-5191 fax
att@potterhandy.com;
kristah@potterhandy.com