# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION | § § § § § § § § § § | CASE NO. 3:24-cv-00757-E<br><br>MDL DOCKET NO. 3:24-md-03114-E |

## AT&T DEFENDANTS' ADDITIONAL OPT-OUT BRIEFING

## TABLE OF CONTENTS

**Page**

Introduction .................................................................................... 1

Background ..................................................................................... 2

Argument ........................................................................................ 4

    A.    The Court Should Confirm That the Opt-Out
         Requirements Are Necessary and Reasonable ...................... 4

    B.    The Court Should Confirm That Kroll Remains the
         Final Arbiter of the Sufficiency of Opt-Outs ........................ 6

    C.    The Court Should Accept the Opt-Out Requests That
         Comply with the Court's Requirements ................................ 8

    D.    The Court Should Reject Materially Deficient Opt-Outs ....... 8

    E.    The Court Should Require Counsel Who Procured Opt-
         Out Requests Through Misleading Communications to
         Issue Curative Notices ...................................................... 11

Conclusion ................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Davis v. CenturyLink, Inc.*,
No. 24-40381, 2025 WL 1009556, at *5 (5th Cir. Apr. 4,
2025)...................................................................................................5

*In re Deepwater Horizon*,
819 F.3d 190 (5th Cir. 2016)...............................................................3

*In re Deepwater Horizon*,
No. 20-30617, 2021 WL 3501651 (5th Cir. Aug. 9, 2021)
(per curiam)........................................................................................4

*In re Diet Drugs*,
282 F.3d 220 (3d Cir. 2002) ...............................................................8

*In re: Fortra File Transfer Software Data Security Breach
Litig.*,
No. 24-md-03090-RAR (S.D. Fla.), ECF 198-1 ..................................7

*Matson v. NIBCO Inc.*,
2021 WL 2374312 (W.D. Tex. June 10, 2021) ...................................13

*In Re MGM Int'l Resorts Data Breach Litig.*,
No. 2:20-cv-00376-GMN (D. Nev.), ECF 257-1 ..................................7

*In Re: Snowflake, Inc., Data Security Breach Litig. (Neiman
Marcus Group Settlement)*,
No. 2:24-MD-3126-BMM (D. Mt.), ECF 544-1 ...................................7

*In re TikTok, Inc., Consumer Privacy Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021)................................................5

## Introduction

The Settlement Administrator, Kroll Settlement Administration LLC ("Kroll"), recently concluded its review of 10,740 requests to opt-out of the Settlement and prepared a declaration concerning that review—the Declaration of Tara Trapani filed concurrently herewith (the "Kroll Declaration")—pursuant to the Court's Order on Additional Opt-Out Briefing (ECF No. 497). Kroll's opt-out review confirms the correctness of the positions set forth by AT&T in its Amended Position On All Opt-Out Requests (ECF 463), specifically, that the Court should:

1.  Approve the compliant opt-out requests listed in Exhibit A to the Kroll Declaration;

2.  Reject the non-compliant opt-out submissions listed in Exhibit B to the Kroll Declaration;

3.  Confirm that individuals who submitted non-compliant opt-outs remain members of the Settlement Class and are bound by the Settlement and Release; and

4.  Conditionally invalidate opt-outs procured through misleading communications as reflected on Exhibit C to the

Kroll Declaration and authorize the curative procedures described in this submission.

## Background

On June 20, 2025, this Court preliminarily approved the Class Action Settlement Agreement and Release and entered a Preliminary Approval Order setting forth the requirements for any Settlement Class Members to opt-out of the Settlement Class ("Preliminary Approval Order"). ECF 298. The Preliminary Approval Order required Settlement Class Members who wished to opt-out to provide their name, address, all AT&T telephone numbers (and their current number), email address, the identification of their counsel, if represented, and for former AT&T customers, their AT&T account number(s) or an attestation that they could not obtain their AT&T account number(s). ECF 298, ¶15. The Court also required a "handwritten 'wet' signature" and "a statement clearly indicating the individual wishes to be excluded from a Settlement Class for the purposes of the Settlement." *Id.*

On July 30, 2025, counsel seeking to pursue mass arbitrations against AT&T sought an emergency stay of the Settlement, arguing the opt-out requirements were overly burdensome for their purported clients.

2

ECF 305.[1] This Court disagreed, concluding that the Settlement's opt-out requirements, including handwritten wet-ink signatures, are commonplace and routinely approved. ECF 336 at 4. The Court also reasoned that "the types of limitations that Claimants challenge" are "appropriate to guard against collusion and ensure that individual circumstances can be considered." *Id.* at 5. The Court added: "As the Fifth Circuit recognized almost a decade ago, an individual opt-out requirement of precisely the type in the preliminary approval order here is a 'common and practical requirement' that falls within this Court's 'especially strong and flexible managerial power in this highly complex MDL.'" *Id.* at 4 (quoting *In re Deepwater Horizon*, 819 F.3d 190, 197–98 (5th Cir. 2016)).

---

[1] As explained *supra*, the vast majority of the timely opt-out requests at issue here were submitted by three firms threatening to pursue mass arbitration proceedings—Swigart Law Group, Potter Handy, LLP, and Harrer Law, P.C. Each firm's submissions contained serious deficiencies. Swigart's submissions lacked the required wet signatures and included opt-out requests that were purportedly e-signed by individuals after their deaths. Potter Handy and Harrer's submissions—which were procured by misleading class members about the relief available under the Settlement—contained numerous deficiencies demonstrating that these firms' opt-out solicitations confused consumers. Those deficiencies included submission of blank, incomplete or unsigned forms; forms submitted by Settlement Class Members who had already released their claims or who had submitted a Claim Form; and forms submitted by individuals who are not Settlement Class Members.

## Argument

### A.   The Court Should Confirm That the Opt-Out Requirements Are Necessary and Reasonable.

The Court's Preliminary Approval Order established clear, reasonable requirements governing exclusion from the Settlement. Nearly 500 individuals, a significant number of whom were not represented by counsel, submitted compliant and timely opt-out requests accepted by the Settlement Administrator. That demonstrates that the opt-out requirements were straightforward and neither confusing nor burdensome. Kroll Declaration, Exhibit A. The Court has already considered and rejected challenges to those requirements, recognizing that individualized opt-out procedures—including wet-signature requirements—are "common and practical" tools well within a court's authority in complex MDL proceedings. ECF 336 at 4.

That conclusion aligns with settled law, including several orders by the Court in this very matter. *See* ECF 298, 307, 336, 487. In the past five years, the Fifth Circuit has enforced opt-out requirements like those here—including "wet ink" signature requirements—at least twice. *See In re Deepwater Horizon*, No. 20-30617, 2021 WL 3501651, at *2 (5th Cir. Aug. 9, 2021) (per curiam) (enforcing "wet ink" requirement to opt-out);

4

*Davis v. CenturyLink, Inc.*, No. 24-40381, 2025 WL 1009556, at \*5 (5th Cir. April 4, 2025) (affirming rejection of an unsigned "equivocal" claim form with attached complaint because it "fail[ed] under the Preliminary Approval Order, which requires that opt outs be signed by the class member and state 'the requestor does not wish to participate in the Settlement'"). Such opt-out requirements are common in class litigation, and their necessity has been recognized where defendants also face mass arbitration claims. *See In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1092–93 (N.D. Ill. 2021) (rejecting challenge to individualized opt-out requirements made by counsel pursuing parallel mass arbitration because such requirements, including individual signatures, are "'vital' to ensuring" class members are "individually consenting to opt out" and noting "courts have routinely enforced the requirement that class members individually sign and return a paper opt-out form").[2] These requirements serve critical functions: they confirm authenticity, prevent unauthorized submissions, and protect the integrity of the class settlement process.

---

[2] Tactics employed by firms seeking to bring mass arbitrations often raise serious consumer protection issues, including misleading solicitations and claims brought without client authorization or awareness. *See* ECF 463-1 at 10–12.

Here, the record demonstrates that the safeguards ordered by the Court were necessary to protect the integrity of the opt-out process and to ensure individuals had the opportunity to make informed decisions. For example, on November 12, 2025, Kroll received 5,999 electronically-signed opt-out requests from the Swigart law firm. This bulk submission included submissions from at least six individuals who died *before* Kroll received the opt-out requests and three that were purportedly electronically signed *after* the claimant's date of death. *See* ECF 463-1 at 8.

For these reasons, the Court should not deviate from its prior holdings and should reject any attempts to circumvent the Court's approved opt-out procedures.

## B.    The Court Should Confirm That Kroll Remains the Final Arbiter of the Sufficiency of Opt-Outs.

In its Preliminary Approval Order, the Court directed that opt-out requests should be sent to Kroll for review for compliance with the Court's procedures and that Kroll would then advise the Court of the number of valid opt-outs. ECF 298, ¶¶ 15, 26. It is common for claims administrators like Kroll to review opt-outs for compliance with court-ordered procedures as part of their claims administration duties. It is also

6

uncommon for class action settlements to include an objection or appeal process for opt-outs deemed non-compliant by the settlement administrator. *See, e.g., In re: Fortra File Transfer Software Data Security Breach Litig.*, No. 24-md-03090-RAR (S.D. Fla.), ECF 198-1; *In Re: Snowflake, Inc., Data Security Breach Litig. (Neiman Marcus Group Settlement)*, No. 2:24-MD-3126-BMM (D. Mt.), ECF 544-1; and *In Re MGM Int'l Resorts Data Breach Litig.*, No. 2:20-cv-00376-GMN (D. Nev.), ECF 257-1.

Kroll has now conducted a comprehensive second opt-out review to ensure that its compliance determinations reflect a careful and good-faith application of the Court-approved criteria that errs in favor of accepting opt-outs with technical deficiencies while ensuring the integrity of the opt-out process. For example, Kroll is recommending acceptance of opt-outs that include an incorrect "name and number of the case" from which the Settlement Class Member is opting out, so long as the intent to opt-out of the Settlement is otherwise made clear in the opt-out submission. Nor is Kroll rejecting opt-outs if the Settlement Class Member did not send the opt-out to Class Counsel in addition to Kroll (as the Court's procedures require).

7

The Court should thus confirm that Kroll's determinations as to the validity of any opt-out submissions are final and binding and should approve and reject opt-out submissions accordingly.

### C.    The Court Should Accept the Opt-Out Requests That Comply with the Court's Requirements.

Nearly 500 Settlement Class Members, a substantial number of whom are not represented by counsel, successfully submitted timely opt-out requests that complied with all of the Court's requirements in the Preliminary Approval Order. The Court should approve these timely and compliant opt-out requests identified in Exhibit A to the Kroll Declaration. *See* ECF 298, ¶15; *see also In re Diet Drugs*, 282 F.3d 220, 241 (3d Cir. 2002) (district court has "indisputable authority to determine the opt-out rules for the plaintiff class before it, and to determine who had properly opted out under those rules").

### D.    The Court Should Reject Materially Deficient Opt-Outs.

AT&T respectfully suggests that the Court reject the opt-out requests contained in Exhibit B to the Kroll Declaration, which Kroll determined did not comply with the Court's Preliminary Approval Order or were untimely.

8

Kroll's review shows that almost 92% of all timely opt-out requests were generated by a small number of law firms that had already threatened to pursue mass arbitration proceedings. These firms—Swigart, Potter Handy, and Harrer—submitted thousands of opt-out requests in bulk using standardized forms and processes designed for scale rather than compliance. The material deficiencies in these submissions, which are detailed more fully in AT&T's March 4 filing, include: (1) failure to comply with the Court's requirements, including the wet-ink signature requirement; (2) opt-out requests submitted for individuals who were not Settlement Class Members; (3) opt-out requests submitted by individuals who had already released their claims or simultaneously submitted Claim Forms; (4) blank, incomplete, or duplicative submissions; and (5) opt-out requests purportedly executed after the signatory death, including instances where electronic signatures post-date the individual's death. *See* ECF 463-1 at 3–6, 8, 10–11.

The overwhelming majority of the deficient opt-out requests on Exhibit B, almost 6,000, were submitted by one law firm, Swigart, which intentionally chose to ignore the Court's submission procedures. The

9

Swigart opt-out requests were submitted with electronic signatures, notwithstanding the Court's explicit requirement of a handwritten, wet-ink signature. The use of electronic signatures reflects a calculated choice by counsel to disregard the Court's requirement in order to generate opt-outs in bulk, not a misunderstanding. The requirement was clear, repeatedly emphasized, and successfully followed by hundreds of individual Settlement Class Members who were not represented by counsel.

The remaining non-compliant opt-outs on Exhibit B, after accounting for duplicates and released claims, account for less than 5% of the non-compliant group. This confirms that non-compliance was overwhelmingly the product of deliberate choice by experienced counsel, and not by confusion or inability to comply with the Court's straightforward requirements. For these reasons, the Court should reject the deficient opt-out requests identified in Exhibit B to the Kroll Declaration as non-compliant with the Court's Preliminary Approval Order.

10

**E.   The Court Should Require Counsel Who Procured Opt-Out Requests Through Misleading Communications to Issue Curative Notices.**

As AT&T's March 4, 2026 filing demonstrates, the thousands of opt-out requests submitted by Harrer and Potter Handy appear to have been procured by providing Settlement Class Members with incomplete or misleading information in order to induce them to opt-out of the Settlement. *See* ECF 463-1 at 4–6. Courts have routinely held that such misleading communications with class members undermine court-approved notice plans and have invalidated opt-outs that are procured by such statements. *See id.* at 14–16.

Harrer did not respond to the issues presented in AT&T's March 4, 2026 filing. Any response Harrer gives to this filing should not cure the concern that Settlement Class Members were misled and deserve curative notice.

Potter Handy submitted a response in which it sought to characterize its misleading communications as neutral descriptions of opt-out rights and attached purported subsequent communications to their clients that they claim "attempted to remedy any ambiguity." *See* ECF 464 at 1–4; ECF 464-1. These subsequent communications confirm

11

AT&T's concerns. Contrary to its opposition, Potter Handy continued to conceal its intent to pursue arbitrations against AT&T, stating that clients who opt-out will be represented by the firm "through the litigation process including possible discovery and a final hearing on the merits of your case" which it characterizes as "a lawsuit." ECF 464-1. Each communication further "encourage[d]" consumers to opt-out so they could "maintain [their] right to **bring a lawsuit** against AT&T for their violations." ECF 464-1 (emphasis added). The first email communication attached to their opposition does not contain any mention of arbitration, and the second email communication buries a single reference to a "final arbitration hearing on the merits" at the end of the email. *Id.*

Potter Handy further created a false sense of urgency and mischaracterized the class settlement process, stating that "if we fail to act quickly, your rights will be waived in a court case you never had a chance to actively participate in." *Id.* Nor does Potter Handy contend with the consumer confusion following Potter Handy's misleading communications as shown in AT&T's March 4, 2026 filing, which further confirms that consumers were misled.

12

Accordingly, the Court should conditionally invalidate the opt-out requests submitted by Harrer and Potter Handy identified in Exhibit C to the Kroll Declaration. But this limited subset of potential Settlement Class Members should not be foreclosed from making an informed decision regarding participation in the Settlement, including by submitting a Claim Form. The Court should instead authorize the Settlement Administrator to provide curative notice to these Settlement Class Members and re-open the opt-out period to allow affected individuals to submit a Claim Form or a valid opt-out request. *See Matson v. NIBCO Inc.*, 2021 WL 2374312, at *8 (W.D. Tex. June 10, 2021) ("[I]f these class members did, in fact, make a free and unfettered decision in choosing to withdraw, then they will do so again during the re-opened opt-out period.") (citation omitted).

## Conclusion

The Court's opt-out requirements are reasonable, clear, and easily satisfied, as demonstrated by the fact that hundreds of unrepresented Settlement Class Members successfully complied with them. The overwhelming majority of deficient opt-outs were generated by law firms that deliberately disregarded the Court's requirements or misled class

13

members in an effort to advance mass arbitration. The Court should not reward that conduct.

Accordingly, AT&T respectfully requests that the Court:

1. Approve all compliant opt-out requests as reflected on Exhibit A to the Kroll Declaration;

2. Reject all non-compliant opt-out submissions as reflected on Exhibit B to the Kroll Declaration;

3. Confirm that individuals who submitted invalid opt-outs remain Settlement Class Members and are bound by the Settlement and Release; and

4. Conditionally invalidate opt-outs procured through misleading communications as reflected on Exhibit C to the Kroll Declaration, authorize appropriate curative notice in the form of the attached **Exhibit 1** within fourteen days of the Court's Final Approval Order to those individuals, and re-open the opt-out and Claim Form deadline for a period of twenty-one days from the curative notice date for that limited subset of Settlement Class Members.

14

Respectfully submitted,

Dated: June 22, 2026

*/s/ Gilbert S. Keteltas*
Gilbert S. Keteltas
BAKER HOSTETLER LLP
1050 Connecticut Ave., NW,
Suite 1100
Washington, DC 20036
Tel: (202) 861-1530
Fax: (202) 861-1783
gketeltas@bakerlaw.com

Michael W. McTigue Jr.
Meredith C. Slawe
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
Fax: (212) 735-2000
michael.mctigue@skadden.com
meredith.slawe@skadden.com

C. Shawn Cleveland
Texas Bar No. 24012433
Tamara D. Baggett
Texas Bar No. 24058573
BAKER HOSTETLER LLP
2850 N. Harwood Street, Suite 1100
Dallas, TX 75201
Tel: (214) 210-1200
Fax: (214) 210-1201
scleveland@bakerlaw.com
tbaggett@bakerlaw.com

15

Gregg J. Costa
GIBSON DUNN
811 Main St., Suite 3000
Houston, TX 77002
Tel: (346) 718.6649
gcosta@gibsondunn.com

**ATTORNEYS FOR
DEFENDANT AT&T INC.**

16

## CERTIFICATE OF WORD COUNT

I hereby certify the word count for this filing (excluding case caption, table of contents, table of authorities, signature block, and certificates) is 2,669 words.

*/s/ Gilbert S. Keteltas*
Gilbert S. Keteltas

17

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2026, the foregoing was

electronically filed and served via ECF.

*/s/ Gilbert S. Keteltas*
Gilbert S. Keteltas

18