IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE: AT&T INC. CUSTOMER DATA SECURITY BREACH LITIGATION** | § § § § § § § § | CASE NO. 3:24-cv-00757-E<br><br>MDL DOCKET NO. 3:24-md-03114-E |
| This Document Relates to All Cases | | |

## UDELL OBJECTORS' RESPONSE TO AT&T'S ADDITIONAL OPT-OUT BRIEFING

**BEIGHLEY, MYRICK & UDELL, PA**

By: */s/ Maury L. Udell*
Maury L. Udell, Esq.
Fla. Bar No. 121673
mudell@bmulaw.com
2601 S. Bayshore Drive, Suite 770
Miami, Florida 33133
Tele: (305) 349-3930
Fax: (305) 349-3931

**ATTORNEYS FOR OBJECTORS SCOTT GHERMAN, BRADLEY JOHNSON, BRITTANI KAYE, ROB CARUSO, AND BRITTANY BONNER**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................3

ARGUMENT ........................................................................................................3

    I.  BEFORE ANY OPT-OUT ANALYSIS CAN BEGIN, THE COURT CANNOT IGNORE THE FACT THAT THESE CLASS MEMBERS ALREADY OPTED OUT.....................................................................................3

    II.  THE WET-INK REQUIREMENT LACKS ANY FRAUD-PREVENTION RATIONALE IN THIS CONTEXT, AND IN RE DEEPWATER HORIZON DOES NOT COMPEL A DIFFERENT RESULT. ...............................................6

      A.  The Deepwater Horizon Wet-Ink Requirement Addressed a Specific Fraud Risk That Does Not Exist Here. .................................................................6

      B.  The Cases AT&T Relies on Are Distinguishable .........................................8

      C.  The Downstream Adjudicative Forums Provide an Independent Verification Mechanism. ...................................................................11

    III. THE DEFICIENCIES AT&T ATTRIBUTES TO OTHER COUNSEL'S ALLEGED MISCONDUCT ARE AT LEAST PARTLY ATTRIBUTABLE TO THE OPT-OUT REQUIREMENT ITSELF. ...............................................12

CONCLUSION.....................................................................................................13

CERTIFICATE OF WORD COUNT....................................................................15

CERTIFICATE OF SERVICE ..............................................................................16

## INTRODUCTION

The Udell Objectors—Scott Gherman, Bradley Johnson, Brittani Kaye, Rob Caruso, and Brittany Bonner, respond to AT&T's Additional Opt-Out Briefing (ECF No. 499) in which AT&T asks this Court to make a signature format dispositive of whether multiple class members forfeit their ability to pursue individual claims they already contractually preserved. That request exposes the central tension in this litigation.

After years of enforcing contractual class-action waivers against its customers, AT&T now seeks to bind those same customers to a class settlement worth less than two dollars per person by disqualifying authentic opt-outs solely because they were signed electronically rather than in wet-ink. The Udell Objectors respectfully submit that a procedural formality cannot override substantive contractual rights, particularly where AT&T's own records and the agreed upon downstream case adjudication process provide independent safeguards against fraud.

## ARGUMENT

I.    **BEFORE ANY OPT-OUT ANALYSIS CAN BEGIN, THE COURT CANNOT IGNORE THE FACT THAT THESE CLASS MEMBERS ALREADY OPTED OUT.**

Every putative class member who executed AT&T's Customer Service Agreement agreed bilaterally not to participate in any class actions as a plaintiff or

3

a class member. See CSA §§ 1.3.1–1.3.2.1 That agreement required no affirmative future act to remain operative, no opt-out form, no separate signature, and no submission to an administrator within a court-ordered deadline. Individual proceedings are the contractual *default*. Class proceedings were the exception that required affirmative agreement—and that exception was expressly foreclosed. Thus, all potential class members have opted out already.

The settlement AT&T now seeks to have approved reverses that contractual baseline entirely. It treats class membership as the default and individual proceedings as the exception that must be affirmatively claimed—through a wet-ink signature, mailed within a specific window, to a specific administrator, with specific identifying information, under penalty of permanent waiver of the very rights the contract already secured. AT&T's settlement requires class members to opt out of something they already contractually opted out of before this litigation.

This goes to the foundational legitimacy of the framework AT&T asks this Court to enforce. Rule 23's opt-out mechanism presumes that class membership is the legally operative default. That presumption makes sense in ordinary litigation, where absent class members have no pre-existing individual agreement governing the resolution of their dispute. It makes no sense here, where every class member specially agreed not to participate in class actions by entering the bilateral contract establishing individual arbitration or small claims court as the possible forums.

4

When a class member who signed that contract fails to submit a wet-ink opt-out form, AT&T asks this Court to treat that failure as consent to be bound by a class settlement. But silence in the face of a court-ordered deadline is not consent to abandon a contractual right—it is, at most, a failure to re-assert a right the class member already possessed. The Rules Enabling Act forbids using Rule 23 to abridge or modify substantive rights. See 28 U.S.C. § 2072. Requiring a class member to take affirmative procedural steps to reclaim a right their contract already secured— the right not to participate—is precisely the kind of abridgment the REA prohibits.

That contractual baseline changes the wet-ink inquiry. The question is not simply whether the opt-out requirement is burdensome or whether it resembles requirements upheld in *Deepwater Horizon*. The deeper question is whether it is constitutionally and contractually permissible to require individuals who contractually agreed never to be class members in the first place to satisfy procedural hurdles—under threat of permanently losing their contractual rights—to avoid being swept into a settlement AT&T now contends is preferable to the individual proceedings its own contract mandated. That question cannot be answered by pointing to the number of class members who successfully navigated the opt-out process.

## II. THE WET-INK REQUIREMENT LACKS ANY FRAUD-PREVENTION RATIONALE IN THIS CONTEXT, AND IN RE DEEPWATER HORIZON DOES NOT COMPEL A DIFFERENT RESULT.

AT&T relies heavily on *In re Deepwater Horizon*, 2021 WL 3501651 (5th Cir. Aug. 9, 2021), as authority for the proposition that wet-ink opt-out requirements are beyond challenge. Reading that decision carefully reveals why it does not apply here—and why the fraud-prevention rationale it relied upon is absent in this case.

### A. The Deepwater Horizon Wet-Ink Requirement Addressed a Specific Fraud Risk That Does Not Exist Here.

The Fifth Circuit's approval of the wet-ink requirement in *Deepwater Horizon* rested on an explicit and carefully circumscribed fraud-prevention rationale. The Medical Settlement Agreement's opt-out instructions were designed, in the court's own words, 'to streamline the process and prevent fraud.' 2021 WL 3501651, at *1 (citing *In re Deepwater Horizon*, 819 F.3d 190, 197 (5th Cir. 2016)). The MSA allowed a third party to sign an opt-out form only if the class member was (1) a minor, (2) lacking capacity or incompetent, or (3) deceased. *Id.* at *1. Every other living, competent adult was required to sign personally.

Those three narrow exceptions define the fraud the court was actually concerned about by negative implication. The MSA's drafters and the reviewing court recognized that attorneys pursuing mass litigation have a financial incentive to generate opt-outs in bulk on behalf of clients who may not fully understand or

6

individually consent to what they are doing—removing them from a valuable compensation scheme to advance someone else's litigation interests. The wet-ink, personal-signature requirement was the MSA's response to that specific risk: a hard procedural gate ensuring that each class member had individually and personally manifested their decision to forgo the settlement.

That fraud-prevention rationale was further grounded in the nature of the underlying claims. *Deepwater Horizon* involved personal-injury and medical-benefit claims arising from alleged exposure during the Gulf spill cleanup. Class membership—and the validity of any individual's claim—depended on contested, inherently difficult-to-verify facts: who was present in the affected area, for how long, under what conditions, and with what resulting health consequences. No single defendant held a database that could objectively confirm or refute any given person's membership in the class. There was no binary test. The wet-ink signature was therefore the primary, and effectively the only, mechanism for verifying that a real, identifiable person had made a genuine, individualized decision to opt out.

To the extent that the Court accepts the contractual baseline argument, every possible class member has already opted out by default. No wet-ink signature is needed to perform that verification which AT&T acknowledges by relying on and performing under the Wireless Customer Agreement. This case does not involve disputed exposure or inherently difficult-to-verify membership. The class is defined

by a single, binary, objectively verifiable criterion: a person either had an AT&T compromised account during the relevant period, or they did not. AT&T holds that information. It knows, from its own records, exactly who is and is not a member. The Preliminary Approval Order itself required opt-out submissions to include AT&T telephone numbers and account numbers—precisely because class membership is verifiable against AT&T's own data.

## B. The Other Cases AT&T Relies on Are Distinguishable

None of the other cases AT&T cites to support a wet-ink opt out requirement involve a factual baseline where the claimant had previously agreed to not participate in any class action as a plaintiff **or a class member** as per the Customer Service Agreement. In *Matson v. NIBCO Inc.*, 2021 WL 2374312 (W.D. Tex. June 10, 2021), the court struck opt-outs induced by misleading communications and re-opened the opt-out period—it did not use the opt-out rules as a permanent trap. In *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1092–93 (N.D. Ill. 2021), the court enforced individual signature requirements, but the circumstances driving that result are materially different from those present here. The *TikTok* court did not face individual class members who had submitted electronic opt-outs expressing unambiguous personal intent. It was confronted with a group of 957 unnamed individuals whose lawyers sought to opt them all out through a single, unsigned electronic filing submitted by counsel alone — precisely the kind of wholesale,

attorney-engineered mass opt-out that *In re Diet Drugs* condemned. *TikTok*, 565 F. Supp. 3d at 1092–93. The court's concern was not with the medium of delivery but with the absence of any individualized expression of consent: where a single lawyer files a single unsigned document purporting to remove nearly a thousand clients from a class simultaneously, there is no reliable basis for concluding that each affected individual made an informed, personal decision to opt out. That concern does not extend to individual class members who each submitted their own opt-out requests, however delivered, expressing their own unambiguous intent to be excluded.

The *TikTok* court's reliance on the principle that opting out is "an individual right" that "must be exercised individually," Id. at 1093, supports this distinction rather than undermining it. That principle is violated when a lawyer acts unilaterally on behalf of hundreds of clients without evidence of individual consent — which is exactly what the *TikTok* objectors sought to do. It is not violated when individual class members express their own decision to opt out through an electronic submission that is personally attributable to them. The court's citation to concerns about "mass unsigned opt outs" being "highly indicative" that "counsel did not spend very much time evaluating the merits of whether or not to opt out in light of the individual circumstances of each of their clients" confirms this reading: the evil the court identified was the absence of individualized attorney-client deliberation and

9

personal client consent, not the use of electronic means to transmit a decision the class member made. Where individual intent is unambiguous and individually expressed, the core concern of *TikTok*'s holding is not implicated. Where AT&T can independently verify that an electronic submission corresponds to an actual account holder who falls within the class definition, the verification rationale that may have reinforced the *TikTok* court's result carries no analogous weight here.

In *Davis v. CenturyLink, Inc.*, 2025 WL 1009556 (5th Cir. 2025), the class member participated in the settlement by submitting a Claim Form simultaneously with her purported opt-out, which the Preliminary Approval Order explicitly prohibited. *Id.* The court affirmed rejection of the opt-out that was not merely signed electronically but was equivocal—a fourteen-page complaint with only a conditional request for exclusion that expressly said 'if any cause of action pled herein exceeds the scope of the settlement provisions.' *Id.* at *5. None of those circumstances are present in electronic-signature submissions AT&T seeks to reject here, where opt-out intent is unambiguous.

Similarly, *In re Diet Drugs*, 282 F.3d 220 (3d Cir. 2002), confirms the limits of the opt-out management power AT&T invokes. There, the Third Circuit affirmed an injunction against a *mass* opt-out engineered by state-court counsel—one order being used to remove thousands of class members wholesale from a complex federal MDL proceeding during the final stages before settlement approval. *Id.* at 241. The

court emphasized that 'opting out is an individual right and it must be exercised individually,' and that the mass opt-out at issue posed 'a serious threat to [the] district court's ability to manage [the] final stages of litigation.' *Id.*

The individual electronic-signature submissions here—whatever their other deficiencies—are categorically unlike the court-ordered mass opt-out *Diet Drugs* addressed. They reflect individual class members expressing individual decisions; the only question is whether the form of that expression satisfies an opt-out requirement that, as argued above, is at least in tension with the contractual framework governing this litigation.

### C. The Downstream Adjudicative Forums Provide an Independent Verification Mechanism.

The fraud-prevention rationale for wet-ink is undermined by the contractual framework of AT&T's agreement confirms a claimant's agreement not to participate in class actions. AT&T cannot with a straight face argue that electronic opt out of a previously electronic agreement to not participation evokes any thought of fraudulent intent. In *Deepwater Horizon*, there was no prior agreement of any claimant not to participate in class actions and the Court noted opting out led to open-ended independent litigation with no pre-existing framework constraining how, where, or by whom a claim could be presented. The opt-out form was the entire transaction—once submitted, there was no subsequent proceeding that would independently require the claimant to appear, identify themselves, and prove their

11

claim. That structural gap is what made the fraud the court feared genuinely dangerous: a forged or unauthorized opt-out could remove a class member from the MSA's compensation scheme with no corrective mechanism downstream.

Here, every customer already opted out of class participation, and if they want to pursue a claim, they must subsequently appear in an individual arbitration or small claims court—the very forums AT&T negotiated in its Customer Service Agreement and has enforced for years.  See CSA § 1.3.1. To recover anything at all in either forum, a claimant must present their claim, authenticate their identity, demonstrate they held an AT&T account, and prove their damages. That proceeding is itself a demanding, individualized verification mechanism that exposes any fraudulent or unauthorized submission immediately.

### III.  THE DEFICIENCIES AT&T ATTRIBUTES TO OTHER COUNSEL'S ALLEGED MISCONDUCT ARE AT LEAST PARTLY ATTRIBUTABLE TO THE OPT-OUT REQUIREMENT ITSELF.

AT&T's own asymmetric treatment of electronic signatures undermines the bad-faith inference it asks the Court to draw regarding other counsel's bulk opt-outs. AT&T accepts electronic signatures to bind its customers to the Customer Service Agreement—including the arbitration clause and class-action waiver it now ignores. It accepts electronic submissions from class members who choose to participate in this settlement, whose participation permanently releases all claims. ECF No. 364 at 24. If AT&T trusts an electronic signature to extinguish a claim irrevocably, it cannot

12

credibly characterize an attorney's reliance on the same electronic signature as bad-faith circumvention of Court procedures.

Courts should be cautious about treating a litigation-strategy disagreement with a procedural ruling as sanctionable misconduct—particularly where the consequence would be forfeiture of thousands of class members' individual contractual rights. By the same reasoning, the Court should be cautious before attributing bad faith where AT&T's advanced positions virtually ignore black letter law on the enforceability and effect of mutual class-action waivers.

## CONCLUSION

The opt-out dispute cannot be resolved as a mere question of signature format. It must begin with the recognition that the individuals AT&T seeks to bind to this settlement already possessed a contractual right to individual proceedings before this litigation, which under law requires no affirmative act to preserve. The proposed settlement reverses that contractual default, imposes procedural burdens on the exercise of a preexisting right which AT&T previously acknowledged in an electronic format, and asks this Court to treat the failure to satisfy those burdens as a permanent waiver of their claims.

Notwithstanding the mutual waiver of class action participation, requiring a wet-ink signature opt out ignores the federal ESIGN Act of 2000, and the Uniform Electronic Transactions Act adopted by most states.  If electronic signatures are

13

sufficient for every federal court in the United States, virtually every U.S. financial institution, AT&T itself, and the IRS, this Court should allow a customer to opt out of participation in a class action (that it already previously agreed not to participate in) in by electronic signature.

Accordingly, the Udell Objectors respectfully request that the Court:

1. Decline to approve the settlement absent satisfaction of the adequacy requirements of Rule 23(e)(2), for all reasons previously set forth;

2. If the Court approves the settlement, modify the opt-out procedure to permit electronic signatures and require AT&T to notify all customers of the unilateral contractual change effected by the Court's approval order and provide a reasonable timeframe of five (5) months to allow customers to opt-out in electronic form.

Respectfully submitted,

**BEIGHLEY, MYRICK & UDELL, PA**

By: */s/ Maury L. Udell*
Maury L. Udell, Esq.
Fla. Bar No. 121673
mudell@bmulaw.com
2601 S. Bayshore Drive, Suite 770
Miami, Florida 33133
Tele: (305) 349-3930
Fax: (305) 349-3931

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify the word count for this filing (excluding case caption, table of contents, table of authorities, signature block, and certificates) is 2592 words.

By: <u>*/s/ Maury L. Udell*</u>
Maury L. Udell

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2026, a true and correct copy of the above was served on all counsel of record through the Court's CM/ECF system.

By: */s/ Maury L. Udell*
Maury L. Udell