UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE: AT&T INC. CUSTOMER DATA
SECURITY BREACH LITIGATION

*This Document Relates to All Cases*

Case No. 3:24-cv-00757-E

MDL DOCKET No. 3:24-md- 03114-E

DEFENDANT HARRER LAW, P.C.'S OPPOSITION TO AT&T
DEFENDANTS' REQUEST TO CONDITIONALLY
INVALIDATE OPT-OUTS AND REQUIRE CURATIVE NOTICE

Harrer Law, P.C. ("Harrer") respectfully submits this response to AT&T Defendants'

Additional Opt-Out Briefing (ECF 499) and the underlying Amended Position On All Opt-Out

Requests (ECF 463-1), and in support thereof states as follows:

## I.    Introduction

AT&T seeks to conditionally invalidate 1,079 timely and concededly compliant opt-out

requests submitted by Harrer's clients and compel curative notice based on speculative allegations

of misleading communications. (Dkt. 452 at 2, 17–18). The request conflicts with Rule 23, Fifth

Circuit authority, and core due process principles. Because the challenged opt-outs satisfy every

requirement imposed by the Court's Preliminary Approval Order (ECF 298 ¶15), they must be

honored absent proven fraud or coercion. AT&T offers neither.

## II.    Argument

### A.    Rule 23 and Fifth Circuit Precedent Require Enforcement of Facially Valid Opt-Outs

The right to opt out of a Rule 23(b)(3) class action is a constitutional safeguard. *Phillips

Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985).  Absent class members cannot be bound to

1

a damages judgment unless afforded notice and an opportunity to exclude themselves. The Fifth Circuit recognizes that Rule 23(b)(3) guarantees class members the right to exclude themselves from the class and pursue individual litigation. *In re Deepwater Horizon*, 739 F.3d 790, 811–12 (5th Cir. 2014); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 190 (5th Cir. 2010). Courts therefore may restrict communications with class members or disregard opt-out decisions only upon a clear evidentiary showing of abuse. *See Watson v. Shell Oil Co.*, 979 F.2d 1014 (5th Cir. 1992) (affirming application of *Gulf Oil* standard requiring a "clear record and specific findings" before regulating communications). Absent evidence of coercion or misleading conduct, courts decline to interfere with class members' ability to obtain legal advice and decide whether to opt out.

The Fifth Circuit has repeatedly emphasized that district courts possess broad managerial authority over class settlements, but that authority must operate within the confines of Rule 23 and due process. *In re Deepwater Horizon*, 819 F.3d 190, 197–98 (5th Cir. 2016). *Deepwater Horizo*n describes individualized opt-out requirements as a "common and practical requirement" designed to ensure authenticity of exclusion decisions. *Id.* at 197. Critically, once those safeguards are satisfied—as AT&T concedes here (Dkt. 452 at 2, 17–18)—the Fifth Circuit's framework requires enforcement, not nullification, of the exclusion. *See also Ayers v. Thompson*, 358 F.3d 356, 362 (5th Cir. 2004) (due process in Rule 23(b)(3) actions turns on adequate notice and meaningful opportunity to opt out).

Fifth Circuit precedent further demonstrates that courts enforce compliance strictly, but only according to the established rules. *In Deepwater Horizon*, the Fifth Circuit affirmed rejection of a deficient opt-out that failed to comply with a wet-signature requirement. 819 F.3d at 197. The principle cuts the other direction here: where the rule is satisfied, the exclusion stands. Nothing in

2

Fifth Circuit jurisprudence authorizes invalidation of concededly compliant opt-outs based on unproven, baseless allegations regarding attorney-client communications. To the contrary, Rule 23's structure presumes that once procedural requirements are met, the exclusion is effective.

### B.    Rule 23(d) Does Not Authorize Speculative Invalidation of Valid Opt-Outs

Rule 23(d) permits courts to regulate communications to protect the integrity of the class process. But that authority is remedial, not punitive, and must be based on a clear evidentiary record. Indeed, *Gulf Oil Co. v. Bernard*, requires specific findings before restricting communications affecting class members. 452 U.S. 89, 101–02 (1981). The Fifth Circuit applies Gulf Oil's cautionary principles, recognizing that supervisory authority must be exercised carefully to avoid infringing First Amendment and due process rights. *In re Katrina Canal Breaches Litig*., 628 F.3d 185, 196 (5th Cir. 2010).

AT&T seeks not merely regulation of future communications, but retroactive invalidation of 1,079 completed exclusions. Rule 23(d) does not authorize such relief absent demonstrated abuse supported by evidence and specific judicial findings. No evidentiary hearing has occurred. No class member has submitted a declaration claiming deception. AT&T cites claimant authored commentary on two opt out forms, not firm-authored communications. AT&T is inferring a misleading solicitation, which is not the same as proving one. Consequently, the extraordinary relief requested exceeds Rule 23(d)'s permissible scope.

### C.    Courts Reject Defendant Attempts to Invalidate Large Number of Opt-Outs on the Theory that the Opt-Outs were Coordinated By Counsel

Courts routinely reject attempts to invalidate large numbers of opt-outs on the theory that they were coordinated by counsel. The Rule 23(b)(3) opt-out right belongs to the individual class member and may be exercised with the assistance of counsel. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 344 (3d Cir. 1998) (recognizing the individual right to exclude

oneself and pursue separate litigation); *Council of Social Work Education, Inc. v. Texas Instruments,* 105 F.R.D. 68, 70 (N.D. Texas 1985) ("The decision to be in or out of a class is solely the decision of the one whose rights are to be foreclosed by class litigation.") *In re Google Assistant Privacy Litig.*, 2025 U.S. Dist. LEXIS 28913,*9 (N.D. Cal. July 2024) (refusing to invalidate more than 69,000 opt-outs submitted by a single law firm, and stating "[t]he Court sees no reason why the Arbitration Claimants may not act through their attorneys in executing those requests to opt out of the Class"); *In re Tik Tok, Inc., Consumer Privacy Litigation*, 617 F. Supp. 3d 904, 932 (N.D. Ill. July 28, 2022) (confirming 851 opt-outs submitted by arbitration counsel complied with requirements of preliminary approval order and refusing to invalidate the opt-outs stating "[t]he 'mass-opt outs' prohibited in the preliminary approval order are very different from the opt-outs at issue here")

Courts also consistently reject efforts to invalidate class-member opt-outs based merely on the involvement of counsel. Class members are entitled to consult lawyers regarding their rights and may exercise their Rule 23(b)(3) opt-out rights through counsel. See *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101–02 (1981) (restrictions on communications with class members require a clear record of abuse); *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 70 (N.D. Cal. 1976) (class members may seek advice of counsel concerning opt-out rights); *In re School Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988) (Courts must avoid interfering with class members' ability to obtain legal advice). Only where opt-outs are obtained through coercion or misleading communications will courts intervene. See *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985).

**D.    *Matson*, *Braswell* and *Georgine* are Factually and Procedurally Distinguishable**

AT&T relies heavily on *Matson v. NIBCO Inc*., 2021 U.S. Dist. LEXIS 108683* (W.D. Tex. June 10, 2021); *Braswell v. Bow Plumbing Grp., Inc*., 2024 U.S. Dist. LEXIS 62050* (M.D. Ala. May 23, 2024); and *Georgine v. Amchem Prods., Inc*., 160 F.R.D. 478 (E.D. Pa. 1995). (Dkt. 452 at 14–16.) Each involved materially different circumstances.

Courts invalidate opt-out requests only in narrow circumstances involving misleading or coercive communications that undermine the court-approved notice process, not merely because opt-out efforts are coordinated or encouraged. In *Matson v. NIBCO Inc.*, the court struck opt-out requests only after finding that a law firm who represented named plaintiffs in a competing class action circulated premature and misleading solicitation materials to all putative class members encouraging the members to opt out before they received the official settlement notice and to join his client's class. *Id*., *4-5.  Specifically, the attorneys sent a letter prior to the entry of the preliminary approval order urging clients to opt out because "the value of your home will decline with the NIBCO PEX Plumbing system partially or fully in it" and "[y]ou need your home replumbed before there are any leaks and before damages start happening to your home. The way to do that is to opt out of this settlement and into an opt-out class that will seek full compensation for you." *Id*., *4-5.

In response, the trial court conducted a hearing on the letter and ordered the competing class plaintiffs and their counsel "not to interfere with the Matson settlement." *Id*., *9. The following week, the attorney sent a second letter, which was "marked as an advertisement," encouraging all of the putative class members to opt out stating the "plumbing system in your home is defective, according to our experts," estimating the cost of replacement and stating that the amount each class member would receive was less than 10% of the cost of replacement. The

5

letter further asserted that "if you sell your home, the Texas and Alabama Seller's Disclosure forms both *require* you to advise the purchaser that you have a defective plumbing system." *Id.* (emphasis in original).

After the second letter, the *Matson* court invalidated those requests and reopened the opt-out period to protect class members' ability to make informed decisions. *Id.*, *23. The court conducted a detailed evidentiary review and found letters "misleading, coercive, factually inaccurate, or a combination of all of these things." *Id.*,*5–8. The court also emphasized that the opt-out communications were sent prior to notice of the settlement being issued. *Id.* The court made specific findings of misleading conduct. *Id.*, *16-24. No comparable evidentiary record exists here.

Likewise, in *Braswell v. Bow Plumbing Group*, the court intervened where attorneys – again who represented plaintiffs in an MDL and who were on the eve of a bellwether trial – emailed presumptive class members urging them to opt out <u>before the settlement notice issued</u> and used incorrect deadlines, creating a risk that class members would make uninformed or coerced decisions about exclusion. *Id.* *2. The court struck opt-outs after finding that counsel had provided incomplete and coercive information, undermining the integrity of the settlement process. *Id.*, *2–3. The decision followed judicial findings regarding the communications at issue.

*Georgine* also involved documented, overzealous, and misleading communications that frustrated the court-approved notice plan. 160 F.R.D. at 497. The court made express factual findings that class members had been misled.

These cases reflect the principle articulated in *Georgine v. Amchem Products*, which emphasizes that Rule 23 protects the "right of exclusion" so that absent class members are not bound without a meaningful opportunity to withdraw from the class. 160 F.R.D. at 490. Read

6

together, these authorities do not support restricting opt-outs; rather, they confirm that courts intervene only when communications distort the opt-out process itself. Where class members receive the court-approved notice and, with or without the assistance of counsel, submit opt-out requests consistent with that process, the right of exclusion remains a fundamental safeguard of Rule 23(b)(3) class actions.

Here, by contrast, AT&T relies on two references to "$2.50" among over one thousand submissions (Dkt. 452 at 5) and conjecture. There is no evidence that class members were misled and no class members have communicated that they believe they were deceived. To the contrary, even after the Final Approval Hearing, class members continue to come forward requesting late opt-outs. There has been no evidentiary hearing, no sworn testimony, and no judicial finding of deception. Without a comparable factual record, the extraordinary remedy imposed in those cases is unwarranted.

The only evidence is AT&T Class 2 Counsel's admission at the Final Approval Hearing that AT&T Class 1 Members who elected cash payments will receive "$3" and AT&T Class 2 Members electing cash payments will receive "closer to $1 for our people." A true and correct copy of excerpts of the Transcript from the Final Approval Hearing is attached hereto as Exhibit A, 75:12-21. Moreover, the Settlement Proponents still have not established that the $105 million in Tier 3 Documented Loss Cash Claims will not cause the Tier 3 Cash Claimants to receive $0.00.

Indeed, as set forth in the *Objections of Michael VonLunen and Susan Barrow to Plaintiff's Motion for Final Approval of Class Action* [ECF No. 368], and as AT&T Class 2 Counsel admitted on the record at the Final Approval Hearing, $105 million in Class 2 Documented Loss claims ($5 million of which had already been confirmed as valid) were submitted for $28 million settlement. Transcript, 73:8-23. After reduction for administrative costs, attorneys' fees and service awards,

7

that $28 million is whittled down to approximately $15 million to pay all AT&T Class 2 claims, which Documented Loss claims are paid first. *See*, Exhibit 2 (Demonstrative). Further, AT&T's counsel represented to the Court at the Final Approval Hearing that "preliminary analysis" demonstrated there would be recovery, but - although Kroll has provided a supplemental affidavit for Opt-Outs to support AT&T's efforts – six months after the Final Approval Hearing, Kroll still has not disclosed whether the 1.75 million Claimants in Class 2 who elected Cash Payments will receive even one cent.

These facts are dispositive. AT&T's primary authority, *Matson v. NIBCO Inc.*, No. 5-19-CV-00717-RBF, 2021 WL 2374312 (W.D. Tex. June 10, 2021), involved an attorney who told class members the settlement was worth "less than $1,000" when it was actually worth substantially more, a misrepresentation calculated to manufacture dissatisfaction and drive opt-outs. That is the inverse of what AT&T surmises occurred here. Indeed, here, AT&T alleges Harrer overestimated the potential recovery by 150%.  AT&T identifies no case (and Harrer is aware of none) in which opt-outs were invalidated because counsel's estimate of the settlement value proved higher than the actual *pro rata* recovery.

**E.     AT&T's Proposed Curative Notice is Prejudicial and Should Be Rejected in its Current Form**

Even if the Court were to conclude that some remedial process is warranted (which Harrer submits it should not) the specific curative notice AT&T has proposed (ECF 499-1, Exhibit 1) is not a neutral instrument. It is a prejudgment of Harrer's conduct dressed as a court notice. AT&T's proposed Harrer curative notice states: "The Court has found, however, that you and other potential Settlement Class Members represented by Harrer Law, P.C. may have received inaccurate and misleading information regarding the Settlement in communications prior to the submission of your opt-out request." ECF 499-1 at 3.

No such finding has been made. Sending a notice that opens with the statement that "the Court has found" Harrer provided "inaccurate and misleading information" before the Court has made any such determination is prejudicial on its face. It will not enable class members to make a free and unfettered decision. It will signal to them that their own attorney misled them and that the Court has said so, which is precisely the type of pressure that undermines the voluntariness the curative notice process is meant to preserve. *See Matson*, 2021 WL 2374312, at *8 ("[I]f these class members did, in fact, make a free and unfettered decision in choosing to withdraw, then they will do so again during the re-opened opt-out period").

A notice that prejudges the outcome on the face of the document is not a curative notice; it is a coercive one. If the Court orders any remedial notice over Harrer's objection, Harrer respectfully requests the opportunity to submit proposed neutral language and to be heard before any notice issues.

> **F.    Harrer's Non-Response to AT&T's Letter and Voluntary Filing Do Not Constitute Admissions and Do not Satisfy the Legal Standard for Validating Compliant Opt-Outs**

AT&T notes that Harrer did not respond to its November 20, 2025 preservation demand letter and did not respond to AT&T's March 4, 2026 position filing, and argues that "any response Harrer gives to this filing should not cure the concern." ECF 499 at 11. Harrer addresses this directly.

The November 20, 2025 letter from Skadden, Arps was a unilateral preservation demand from opposing counsel. It was one of many communications AT&T sent Harrer in an effort to quell Harrer's efforts to pursue its clients' claims. It was not a court filing. It was not a motion. It did not request a response, and none was required. Counsel is under no obligation to respond to every

letter sent by an adversary, and the absence of a response to a preservation demand is not — in law or in logic — evidence of the conduct AT&T alleges.

The March 4, 2026 position filing was AT&T's voluntary position paper submitted without request or order from the Court. The Court did not order Harrer to respond to that filing at the time it was submitted. Harrer's silence was not a concession. The filing set forth AT&T's position based on a thin record and an obvious attempt to prevent arbitration claimants from pursuing their contractual right to arbitrate disputes with AT&T. Harrer's position is set forth here, in response to the Court's order for additional opt-out briefing, which is the appropriate procedural vehicle.

AT&T cites no authority for the proposition that the failure to respond to opposing counsel's unilateral correspondence or voluntary filings (in the absence of a court order requiring a response) establishes that the non-responding party misled its clients. The legal standard for invalidating otherwise-compliant opt-out requests requires proof of misleading, coercive, or factually inaccurate communications directed to class members. That standard is not satisfied by silence in response to an adversary's correspondence.

## III.    Conclusion

For the foregoing reasons, Harrer Law, P.C. respectfully requests that the Court:

1.    Decline to conditionally invalidate the 1,079 timely and compliant opt-out requests submitted by Harrer's clients;

2.    Reject AT&T's proposed curative notice in its current form as prejudicial, inaccurate in its characterization of the Court's findings, and non-neutral;

3.    In the alternative, if the Court orders any curative process, permit Harrer to submit proposed neutral notice language and be heard before any notice issues to Harrer's clients.

Dated: July 2, 2026

Respectfully submitted,

By: s/ Seth McCormick
One of Objectors' and Joiners'
Attorneys

Seth McCormick, Esq.
Jennifer K. Lloyd, Esq.
Harrer Law, P.C. (Firm ID 102120)
650 Warrenville Road, Suite 100
Lisle, Illinois 60532
Tel: (312) 858-3240
seth@harrerlaw.com
jennifer@harrerlaw.com

## CERTIFICATE OF WORD COUNT

I hereby certify that the word count of the instant brief, not including case caption, table of contents, table of authorities, signature block, and certificates is 2,776.

# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

```
                                ) 3:24-CV-00757-E
                                ) 3:24-MD-03114-E
                                )
IN RE: AT&T INC. CUSTOMER DATA  )
SECURITY BREACH LITIGATION,     ) DALLAS, TEXAS
                                )
                                ) JANUARY 15, 2026
```

------------------------------

TRANSCRIPT OF

MDL FINAL APPROVAL HEARING

VOLUME 1

BEFORE THE HONORABLE ADA E. BROWN

UNITED STATES DISTRICT JUDGE

------------------------------

A P P E A R A N C E S

SPECIAL MASTERS:

WILLIAM ROYAL FURGESON
CRAIG D. BALL

FOR THE PLAINTIFFS:

        W. MARK LANIER
        THE LANIER LAW FIRM
        10940 W. Sam Houston Parkway N, Suite 100
        Houston, Texas 77064
        Phone: (713) 659-5200
        E-mail: Mark.lanier@lanierlawfirm.com

        JEFF OSTROW
        KOPELOWITZ OSTROW PA
        One W Las Olas Boulevard, Suite 500
        Fort Lauderdale, Florida 33301
        Phone: (954) 525-4100
        E-mail: Ostrow@kolawyers.com

        SHAUNA ITRI
        SEEGER WEISS LLP
        325 Chestnut Street, Suite 917
        Philadelphia, Pennsylvania 19106
        Phone: (215) 553-7981
        E-mail: Sitri@seegerweiss.com

FOR AT&T INC.:

        GILBERT S. KETELTAS
        BAKER & HOSTETLER LLP
        1050 Connecticut Ave. NW, Suite 1100
        Washington, D.C. 20036
        Phone: (202) 861-1530
        E-mail: Gketeltas@bakerlaw.com

        LISA M GHANNOUM
        BAKER & HOSTETLER LLP
        127 Public Square, Suite 2000
        Cleveland, Ohio 44114
        Phone: (216) 861-0200

        KIMBERLY S. MORRIS
        BAKER & HOSTETLER LLP
        600 Montgomery Street, Suite 3100
        San Francisco, CA 94111
        Phone: (415) 659-2600

        GREGG COSTA
        GIBSON DUNN & CRUTCHER
        811 Main Street, Suite 3000
        Houston, Texas 77002
        Phone: (346) 718-6649
        E-mail: Gcosta@gibsondunn.com

MEREDITH C SLAWE
MICHAEL W MCTIGUE, JR.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Phone: (212) 735-3534
E-mail: Meredith.slawe@skadden.com
E-mail: Michael.mctigue@skadden.com

FOR DIRECTV INC.:

J.T. MALATESTA
POLSINELLI PC
2100 Southbridge Parkway, Suite 650
Birmingham, Alabama 35209
Phone: (205) 963-7138
E-mail: Jtmalatesta@polsinelli.com

FOR THE OBJECTORS:

SETH BARROW MCCORMICK
HARRER LAW PC
650 Warrenville Road, Suite 100
Lisle, Illinois 60532
Phone: (312) 858-3240
E-mail: Seth@harrerlaw.com

AMANDA GARRETT TAYLOR
BUTLER SNOW LLP
1400 Lavaca Street, Suite 1000
Austin, Texas 78701
Phone: (737) 802-1800
E-mail: Amanda.taylor@butlersnow.com

KYLE V MILLER
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, Mississippi 39157
Phone: (601) 985-4514
E-mail: Kyle.miller@butlersnow.com

MAURY LORNE UDELL
BEIGHLEY, MYRICK, UDELL, LYNNE & ZEICHMAN, P.A.
2601 S. Bayshore Drive, Suite 770
Miami, Florida 33133
Phone: (305) 349-3930
E-mail: Mudell@bmulaw.com

CHRONOLOGICAL INDEX

**January 15, 2026**                                                **PAGE**

Appearances..........................................2

Proceedings..........................................5

Court in Recess....................................171

Reporter's Certificate.............................172

* * * * *

(P R O C E E D I N G S)

THE COURT:  Good morning, everyone.  We are convened today for a Rule 23(e) final approval hearing, to consider whether the proposed class action settlement in the AT&T Incorporated Customer Data Security Breach Litigation is fair, reasonable, and adequate; whether the settlement classes should be finally certified; and whether the applications for attorneys' fees, costs, and service awards should be approved.

Notice of this hearing's been issued in accordance with a Preliminary Approval Order and Notice Program, which was earlier approved by this Court.  The hearing date, time, and logistics were communicated to the settlement classes through the approved notices and website.  These proceedings will be on the record.  And attendance by class members is certainly welcome, but not required.

Let's begin with introductions and let's get on the record who's here today.

MR. LANIER:  Thank you, Your Honor.  Mark Lanier. It's an honor to be in your court again.  Thank you for your and your Court's hospitality.

I've got with me at counsel table Shauna Itri, who is another one of your appointed leads in this case.  And Jeff Ostrow, who has come to us -- we've inherited him from Montana in the AT&T 2 case.

So there's a lack of understanding of the settlement.  And I thought our papers properly addressed it.  Everybody who filed a claim for doc'd loss, that had the proper support, is going to get paid.  Every one of the people in Tier 2, Tier 3 are going to get paid.  Everyone.  It's a fundamental misunderstanding, because clearly Counsel doesn't get how claims processes work.

There are $105 million of claims that were submitted by 4.5 million people, perhaps, if they wanted, and they thought they could get the 2,500 or the $5,000.  We all know most of that unfortunately doesn't qualify.  And I don't want to say they're fraudulent claims, but they just don't have the proper support.

I will tell Your Honor, because I do have the information, that there's going to be several million dollars paid out right now, and they're still withering them down.  And this is a process that happens in every one of these claims-made settlements; where you go to final approval, and you don't know the exact number, but you get close to it.

We're about $5 million right now that's going to be paid out of actual damages that people were able to prove.  The people that elected to go for the other tiers, who don't have documented losses; which is set up in every one of these cases before I started this, perhaps when

case came.  They got breached.  We thought it was going to be similar information.  It's not even who was called.  It's what phone number, if you could identify, you know, an account and phone number to another phone number, and how long it was.

I'm not going to stand here and create a record in front of the entire Plaintiffs Bar and Defense Bar saying that those aren't good cases and there's not standing there.  But where you saw all those hurdles, ours are double the height.  And I'm not certain that AT&T 2 settles absent AT&T 1.

So when I say that this is an outstanding settlement, AT&T 1 is being dragged down a little bit by AT&T 2.  And if it was a standalone, you're looking at about $3 a person.  When we settle these cases, we do it based upon the person.  $3 is not what they get; they're going to get more.

That is outrageous of a result in this day and age.  And ours is closer to $1 for our people.  The fact that our class of people are going to get $28 million, if you approve this, is also outstanding.

So as it relates to that, it's a fundamental lack of understanding, and a critical one.  The Court probably -- you probably wanted to throw up when you heard that.  I know I did.  Because it really goes against -- it attacks the

on is that maybe a time period for final submissions while you're making your decision, Your Honor.  And so we wanted to alert you to the fact that there may be, in short order, some supplemental submissions from class counsel and AT&T's counsel.

THE COURT:  And I welcome that.

MR. MCTIGUE:  Thank you.

THE COURT:  Anything further from Objectors?

MR. MCCORMICK:  No, ma'am.

THE COURT:  Well, it has really been a joy to see everybody here, and to get to see such excellent advocacy. I know I said this at our last hearing.  But I feel a bit like a Super Bowl ref, getting to see everybody -- I mean, all the big cases I've read about, and all the people who did them, are right here.  And so I get to learn from you, and it's just my honor.

So you are court ordered to have a safe journey back home.  Know that this case is amazing, and it is amazing because you're here.  And so we'll give you a decision in due course.  And thank you.

Court's in recess.

(End of proceedings.)

I, BROOKE N. BARR, United States Court Reporter for the United States District Court in and for the Northern District of Texas, Dallas Division, hereby certify that the above and foregoing contains a true and correct transcription of all proceedings in the above-styled and -numbered cause.

WITNESS MY OFFICIAL HAND this the 18th of February, 2026.

/S/ BROOKE N. BARR
BROOKE N. BARR, CSR NO. 6521
CSR Expiration Date:  7/31/26
United States Court Reporter
1100 Commerce Street
Room 1376
Dallas, Texas 75252
(214) 753-2661

# Exhibit B

## AT&T Class 2 Settlement
### Members As of December 12, 2025

| | | |
|---|---|---|
| Class 2 Documented Loss Claims | 101,207 | Kroll Supp. Aff., ¶6 [ECF 407-1] |
| Overlap Documented Loss Claims | 3,120 | *Id.* |
| **Total Class 2 Documented Loss Claims** | **104,327** | |
| Class 2 Cash Payment Claims | 1,303,567 | *Id.* |
| Overlap Cash Payment Claims | 446,985 | *Id.* |
| **Total Class 2 Cash Payment Claims** | **1,750,552** | |

## AT&T Class 2 Settlement Distribution

| | | |
|---|---|---|
| Settlement Payment | $28,000,000.00 | Agreement, ¶52 [ECF 283-1] |
| Administrative Costs* | ($2,800,000.00) | Kroll Aff, ¶30 [ECF 356-3] |
| Attorneys' Fees | ($9,333,333.33) | Fee Aff, ¶9 [ECF 356-4] |
| Service Awards | ($10,500.00) | Agreement, ¶179 [ECF 283-1] |
| Class 2 Documented Loss Payment(s)** | ($42,772,382.50) | Kroll Aff, ¶26 [ECF 356-3] |
| Overlap Documented Loss Cash Payments | ($9,202,770.31) | Kroll Aff, ¶26 [ECF 356-3] |
| Taxes | $0.00 | Assumed |
| **Total:** | **(36,118,986.14)** | |
| Class 2 Documented Loss Cash Payment Claims | $137,519,917.81 | Assumes 3x from 11/3/2025 |
| Amount Available for Distribution | $15,856,166.67 | |
| **Distribution to Class 2/Overlap Documented Loss Claims** | **$0.12** | $15 mm/$137mm |
| **Distribution to Class 2/Overlap Cash Payment Claims** | **$0.00** | 1,750,552 Claimants will Receive $0.00 |

* Estimate as of 11/3/2025, which was more than double the initial estimate
** Amount for 17,926 Class 2 Documented Loss Claims as of 11/3/2025. The number of actual Class 2 Documented Class Claims as of 12/18/2025 is 101,207. No updated number was provided by Kroll, Class Counsel or Defendants.